Alan M. Fisch (*pro hac vice pending*)
alan.fisch@fischllp.com
Adam A. Allgood (SBN: 295016)
adam.allgood@fischllp.com
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
ken.fung@fischllp.com
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

Counsel for Plaintiff
Juniper Networks, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUNIPER NETWORKS, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>SWARM TECHNOLOGY LLC,<br><br>              Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Juniper Networks, Inc. ("Juniper") files this Complaint against Defendant Swarm Technology LLC ("Swarm") and hereby alleges as follows:

## NATURE OF THE ACTION

1. Juniper is a leader in the business of designing and selling high-performance networking hardware and software, including routers, gateways, associated software, and support.

2.   Swarm promotes itself as "the first company in the world" to demonstrate and obtain patents on a "scalable architecture that provides IoT [Internet of Things] networks and robots with intent-based autonomy."[1] And on its website, Swarm claims to have a portfolio of three "strategically important" patents that, according to Swarm, cover "Plug-and Play Intent-Based Networking, Heterogenous Edge Processing, Swarm Intelligence, and Intent-Based Proactive Autonomy."[2] Swarm's website further asserts that Swarm is "seeking to partner with an established company to build market share for products adopting [these three] patents."[3]

3.   Nine months ago, Swarm began a campaign aimed at securing Juniper as the first licensee of the three patents Swarm claims to own: U.S. Patent Nos. 9,146,777 (" '777 Patent"); 9,852,004 (" '004 Patent"); and 10,592,275 (" '275 Patent") (collectively, the "Patents-in-Suit").

4.   Swarm tried to couch its communications with Juniper as a "licensing opportunity," and repeatedly extolled the benefits of being Swarm's "first licensee" (e.g., favorable terms and a competitive advantage after the industry "standardize[s] around" Swarm's patents). But Swarm's communications to Juniper also included a claim chart alleging similarities between the '004 Patent and 52 specific Juniper products. And after Juniper asked for more information about Swarm's patents, then declined to license them, the implied threats behind this "licensing opportunity" escalated. Swarm directly accused Juniper of infringement, demanded that Juniper take a license, made assertions about how Juniper would fare in a lawsuit, and announced that Swarm was seeking litigation counsel and financing to enforce the patents.

5.   Accordingly, in this action Juniper seeks declaratory judgment that it is not infringing any valid claims of the Patents-in-Suit.

---

[1] https://www.swarmtechnology.us

[2] https://www.swarmtechnology.us/access-to-technology

[3] *Id*.

## PARTIES

6. Juniper is a Delaware corporation having its principal place of business at 1133 Innovation Way, Sunnyvale, California 94089.

7. Upon information and belief, Swarm is an Arizona limited liability company having its principal place of business at 732 E Lehi Road, Mesa, Arizona 85203, and the sole member of that limited liability company is the named inventor of the Patents-in-Suit.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Subject matter jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Swarm in this District. Upon information and belief, Swarm, directly or through its agents, has regularly conducted business activities in California, and this action arises out of and relates to activities that Swarm has purposefully directed at California and this District.

10. Among other things, Swarm purposefully directed allegations of patent infringement to Juniper in this District by addressing and sending patent assertion and licensing letters alleging that Juniper infringes one or more claims of the Patents-in-Suit.

11. Upon information and belief, Swarm has communicated and conducted licensing activities with other companies in this District regarding the Patents-in-Suit, including Juniper's competitors.

12. Upon information and belief, Swarm also has exhibited at a minimum of two events in Santa Clara, California, within this District. The front page of Swarm's website, swarmtechnology.us, showcases that Swarm: (1) "exhibited [its] cloud-connected swarm-intelligent robots at: IoT Tech Expo North America 2017, Santa Clara, California, November 29-30"; and (2) "exhibited [its] second generation swarm-intelligent robots at Internet of Things World

2018, Santa Clara, California, May 14-17, 2018." At the latter event, Swarm's founder and CEO, Alfonso Iniguez, appeared in a videotaped interview with the online publication *IWCE's Urgent Communications* in which he stated that Swarm went to the conference "to expand" into the consumer market. Mr. Iniguez also stated that Swarm had been issued patents for its technology, was planning on licensing those patents, and had hired a licensing consultant to do so.

13. Venue is proper in this District based on 28 U.S.C. §§ 1391(b)-(c).

## INTRADISTRICT ASSIGNMENT

14. This case is an Intellectual Property Action under Civil Local Rule 3-2(c) and, pursuant to Civil Local Rule 3-5(b), shall be assigned on a district-wide basis.

## THE PATENTS-IN-SUIT

15. The '777 Patent, entitled "Parallel Processing with Solidarity Cells by Proactively Retrieving from a Task Pool a Matching Task for the Solidarity Cell to Process," states that it issued on September 29, 2015 to Alfonso Iniguez of Mesa, Arizona, and that the initial assignee was Swarm Technology LLC of Mesa, Arizona.

16. The '004 Patent, entitled "System and Method for Parallel Processing Using Dynamically Configurable Proactive Co-processing Cells," states that it issued on December 26, 2017 to Alfonso Iniguez of Mesa, Arizona, and that the initial assignee was Swarm Technology LLC of Mesa, Arizona.

17. The '275 Patent, entitled "System and Method for Swarm Collaborative Intelligence Using Dynamically Configurable Proactive Autonomous Agents," states that it issued on March 17, 2020 to Alfonso Iniguez of Mesa, Arizona, and that the initial assignee was Swarm Technology LLC of Mesa, Arizona.

**THE DISPUTE BETWEEN JUNIPER AND SWARM**

18. On July 5, 2019, Juniper received a letter from an "IP Licensing Consultant" claiming to act on Swarm's behalf. The letter asserted that Swarm owned the '777 and '004 Patents and was seeking to license them "to a number of hardware and software providers," with "more favorable terms … available to the first licensee."

19. Swarm's July 5, 2019 letter further asserted its purpose was "to highlight a licensing opportunity" and it "should not be construed as an accusation of infringement." But it enclosed a copy of the '004 Patent and a claim chart purporting to "demonstrate[] the correlation between claim 1 of [that patent] and [Juniper's] Zero-Touch Provisioning." The claim chart also purported to list Juniper products "currently using Zero Touch Provisioning," with a "complete list of model numbers" in an attached appendix.

20. In particular, Swarm's '004 Patent claim chart accused the following Juniper products based on the Zero Touch Provisioning feature: EX Series (EX2200, EX2200-C, EX2300, EX2300-VC, EX3300, EX3400, EX3400-VC, EX4200, EX4300, EX4300 Multigigabit, EX4500, EX4550, EX4650-48Y), Network Director, MX Series (MX5, MX10, MX40, MX80, MX104, MX150, MX204, MX240, MX480, MX960, MX2010, MX2020, MX100003), NFX250, OCX1100, PTX Series (PTX1000, PTX 3000, PTX5000, PTX10002-60V, PTX 10008, PTX 10016), QFX Series (QFX3500, QFX3600, QFX5100, QFX5110, QFX5120-48Y, QFX5200, QFX5210-64C, QFX10002, QFX10008, QFX10016, QFX10002-60C) and SRX Series (SRX300, SRX320, SRX340, SRX345, SRX550 HM, SRX1500) (collectively, along with associated software that Swarm listed next to each product, the "Juniper Accused Products").

21. On August 9, 2019, Juniper responded to Swarm's initial letter, stating: "As an innovator, Juniper takes intellectual property rights seriously—both its own and the valid and enforceable rights of others." Juniper also explained that it had begun analyzing Swarm's patents

and claim chart, and in that regard asked Swarm to clarify the definitions of several claim terms and further explain the basis for its belief that Juniper practices claim 1 of the '004 Patent.

22.  Four days later, Swarm emailed back responses to Juniper's questions. Swarm also expressed confidence that Juniper's "technical people" would "confirm the correlation between the Juniper devices and Swarm's '004 patent," and suggested that the parties further discuss "this licensing opportunity."

23.  Juniper then asked follow-up questions about certain claim limitations. But when Swarm emailed its responses on September 13, 2019, Swarm also attached a draft licensing agreement with a section releasing Juniper from "all claims or liability for acts of infringement or alleged infringement" of Swarm's patents. Swarm's email further stated that the payment terms were "to be the subject of negotiation," and warned that "a much more favorable settlement is available to early licensees." Swarm thereafter continued to contact Juniper about a possible license, including in a follow-up email in October 2019.

24.  On October 23, 2019, after evaluating the materials Swarm had provided, Juniper emailed its conclusions to Swarm. Juniper explained in support of these conclusions that it did not "believe that a license is required because our products do not use the technology claimed by Swarm Technology's patents."

25.  On November 6, 2019, Swarm emailed Juniper, arguing that Swarm had answered all of Juniper's questions about claim terms and that Juniper had so far "failed to express any position that would prevail in a Markman hearing." In the same email, Swarm also: (1) stated its belief that "the industry will standardize around" Swarm's patents; (2) claimed to be "in communication with several other companies – [Juniper's] competitors"; and (3) stressed that Swarm's "first licensee will enjoy much more favorable licensing terms" and a "competitive advantage."

26. Swarm's November 6, 2019 email also directly accused Juniper of infringing Swarm's patents. In that email, Swarm's consultant stated: "Although you have said that Juniper does not require a license, I have to disagree."

27. In the same email, Swarm proposed a phone call to discuss "options" for Juniper. Juniper agreed to the call, which took place on December 3, 2019. During the call, Swarm again extolled the advantage that its first licensee would have and claimed to be in talks with Juniper's competitors. Swarm also stated that it was in contact with litigation firms and was attempting to secure litigation financing to enforce its patents. But Juniper still did not take a license, and for a few months after did not receive any further communications from Swarm on the issue.

28. On April 6, 2020, however, Swarm again emailed Juniper, reiterating Swarm's belief that Juniper required a license and notifying Juniper of Swarm's recently issued '275 Patent (i.e., the third Patent-in-Suit). Swarm also attached a new claim chart alleging similarities between the '275 Patent and Juniper's products. And again, Swarm emphasized that "the most favorable terms will be available to an early licensee."

29. On May 4, 2020, Swarm again emailed Juniper, this time stating that Swarm had mistakenly omitted a portion of the '275 Patent claim chart that Swarm had provided on April 6, 2020. Swarm attached a revised claim chart, identical to the prior claim chart but adding two previously omitted claim elements and their alleged similarities to Juniper's products.

30. Thus, an actual and justiciable controversy exists between Juniper and Swarm concerning whether Juniper infringes one or more claims of the Patents-in-Suit. Juniper now seeks a declaratory judgment that it does not infringe the claims of the Patents-in-Suit.

## FIRST CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '777 PATENT

31. This is a claim for declaratory judgment of non-infringement of the '777 Patent. The allegations of paragraphs 1 through 30 above are repeated as though fully set forth herein.

32. Juniper is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '777 Patent.

33. The Zero Touch Provisioning feature used in the Juniper Accused Products has been available at least since September 2012, four months before the filing date of the '777 Patent.

34. The Juniper Accused Products utilize two interoperable methods for Zero Touch Provisioning of a new device: the DHCP-Based method and the Phone-Home Client method.

35. The DHCP-Based Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '777 Patent.

36. The DHCP-Based Zero Touch Provisioning method requires direct communication between a new Juniper device and a Dynamic Host Configuration Protocol (DHCP) server, while the '777 Patent requires a solidarity cell to retrieve tasks from a task pool "without requiring an instruction from the CPU."

37. The Phone-Home Client Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '777 Patent.

38. The Phone-Home Client Zero Touch Provisioning method requires direct communication between a new Juniper device and a Phone-Home Server, while the '777 Patent requires a solidarity cell to retrieve tasks from a task pool "without requiring an instruction from the CPU."

39. Because the facts, including but not limited to those set forth in paragraphs 31 through 38 above, show that Juniper's products do not infringe any claims of the '777 Patent, Juniper is entitled to a judicial declaration and order that it does not infringe and has not infringed any claim of the '777 Patent.

## SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '004 PATENT

40. This is a claim for declaratory judgment of non-infringement of the '004 Patent. The allegations of paragraphs 1 through 30 above are repeated as though fully set forth herein.

41. Juniper is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '004 Patent.

42. The Zero Touch Provisioning feature used in the Juniper Accused Products has been available at least since September 2012, one year and 10 months before the filing date of the '004 Patent.

43. The Juniper Accused Products utilize two interoperable methods for Zero Touch Provisioning of a new device: the DHCP-Based method and the Phone-Home Client method.

44. The DHCP-Based Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '004 Patent.

45. The DHCP-Based Zero Touch Provisioning method requires direct communication between a new Juniper device and a Dynamic Host Configuration Protocol (DHCP) server, while the '004 Patent requires a co-processor to retrieve tasks from a task pool "without any communication between the first co-processor and the controller."

46. The Phone-Home Client Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '004 Patent.

47. The Phone-Home Client Zero Touch Provisioning method requires direct communication between a new Juniper device and a Phone-Home Server, while the '004 Patent requires a co-processor to retrieve tasks from a task pool "without any communication between the first co-processor and the controller."

48. Because the facts, including but not limited to those set forth in paragraphs 40 through 47 above, show that Juniper's products do not infringe any claims of the '004 Patent, Juniper is entitled to a judicial declaration and order that it does not infringe and has not infringed any claim of the '004 Patent.

## THIRD CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '275 PATENT

49. This is a claim for declaratory judgment of non-infringement of the '275 Patent. The allegations of paragraphs 1 through 30 above are repeated as though fully set forth herein.

50. Juniper is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '275 Patent.

51. The Zero Touch Provisioning Feature used in the Juniper Accused Products has been available at least since September 2012, five years and three months before the filing date of the '275 Patent.

52. The Juniper Accused Products utilize two interoperable methods for Zero Touch Provisioning of a new device: the DHCP-Based method and the Phone-Home Client method.

53. The DHCP-Based Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '275 Patent.

54. The DHCP-Based Zero Touch Provisioning method requires direct communication between a new Juniper device and a Dynamic Host Configuration Protocol (DHCP) server, while the '275 Patent requires a co-processor to retrieve tasks from a task pool "without any communication between the first co-processor and the controller."

55. The Phone-Home Client Zero Touch Provisioning method does not place tasks into a task pool as required by the claims of the '275 Patent.

56. The Phone-Home Client Zero Touch Provisioning method requires direct communication between a new Juniper device and a Phone-Home Server, while the '275 Patent requires

a co-processor to retrieve tasks from a task pool "without any communication between the first co-processor and the controller."

57. Because the facts, including but not limited to those set forth in paragraphs 49 through 56 above, show that Juniper's products do not infringe any claims of the '275 Patent, Juniper is entitled to a judicial declaration and order that it does not infringe and has not infringed any claim of the '275 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Juniper prays for the following relief:

A. The Court enter a declaratory judgment that Juniper is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of each of the Patents-in-Suit;

B. Preliminarily and permanently enjoining Swarm, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it to receive actual notice by personal service or otherwise, from asserting or threatening to assert against Juniper or its customers, potential customers, or users of the Juniper Accused Products, any charge of infringement of any claims of the Patents-in-Suit;

C. Awarding to Juniper its costs and attorneys' fees; and

D. Granting to Juniper such and other further relief as this Court may deem just and proper.

## JURY DEMAND

Juniper demands a trial by jury on all issues so triable in this action.

| | |
|---|---|
| Dated: May 7, 2020 | Respectfully submitted, |
| | */s/ Adam A. Allgood* |
| | Alan M. Fisch (*pro hac vice pending*) |
| | alan.fisch@fischllp.com |
| | Adam A. Allgood (SBN: 295016) |
| | adam.allgood@fischllp.com |
| | FISCH SIGLER LLP |
| | 5301 Wisconsin Avenue NW |
| | Fourth Floor |
| | Washington, DC 20015 |
| | Tel: 202.362.3500 |
| | Fax: 202.362.3501 |
| | |
| | Ken K. Fung (SBN: 283854) |
| | ken.fung@fischllp.com |
| | FISCH SIGLER LLP |
| | 400 Concar Drive |
| | San Mateo, CA 94402 |
| | Tel: 650.362.8207 |
| | Fax: 202.362.3501 |