Leo R. Beus *(pro hac vice* pending*)*
Michael K. Kelly *(pro hac vice* pending*)*
K. Reed Willis *(pro hac vice* pending*)*
BEUS GILBERT PLLC
Attorneys at Law
701 North 44th Street
Phoenix, Arizona  85008-6504
Telephone:  (480) 429-3000
Facsimile:   (480) 429-3001
Email:   lbeus@beusgilbert.com
           mkelly@beusgilbert.com
           rwillis@beusgilbert.com

Allan Steyer (State Bar No. 100318)
Suneel Jain (State Bar No. 314558)
STEYER LOWENTHAL BOODROOKAS
 ALVAREZ & SMITH LLP
235 Pine Street, 15th Floor
San Francisco, California 94104
Telephone:    (415) 421-3400
Facsimile:    (415) 421-2234
E-mail:        asteyer@steyerlaw.com
              sjain@steyerlaw.com

*Attorneys for Defendant*
*Swarm Technology LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNIPER NETWORKS, INC.<br><br>Plaintiff,<br><br>v.<br><br>SWARM TECHNOLOGY LLC,<br><br>Defendant. | Case No. 5:20-cv-03137-JD<br><br>**SWARM TECHNOLOGY LLC'S MOTION TO DISMISS FOR NO CASE OR CONTROVERSY, LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND MEMORANDUM OF POINTS AND AUTHORITY**<br><br>Date:          August 20, 2020<br>Time:          10:00 a.m.<br>Location:    Courtroom 11<br>Judge:        Hon. James Donato |

1

2  PLEASE TAKE NOTICE THAT, on August 20, 2020 or as soon thereafter as the matter may be

3  heard in Courtroom 11 of the above entitled court, located at 450 Golden Gate Avenue, San

4  Francisco, California, Defendant Swarm Technology, LLC ("Swarm") will, and hereby does,

5  move under Federal Rules of Civil Procedure 12(b)(1)-(3) seeking the below specified relief.

6  RELIEF SOUGHT:  Swarm seeks an order dismissing the Complaint that Juniper Networks, Inc.

7  filed against Swarm Technology LLC on 7 May 2020.

8

9       Juniper Networks sued Swarm, seeking a declaration that Juniper did not infringe

10  Swarm's patents related to computer architecture.  But Juniper's complaint lacks a case or

11  controversy, the Court does not have personal jurisdiction over Swarm, and the Court is an

12  improper venue for this case.  Juniper's case must be dismissed. Alternatively, Swarm moves to

13  transfer this case to the District of Arizona.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITY ................................................................ 1

I.   SUMMARY OF ISSUES TO BE DECIDED.................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................................ 1

A.   SWARM DEVELOPED AN INNOVATIVE COMPUTER ARCHITECTURE. .................................. 1

B.   SWARM APPLIED FOR AND HAS BEEN ISSUED THREE PATENTS. ...................................... 2

C.   SWARM OFFERS JUNIPER A LICENSE TO SWARM'S PATENTS WITHOUT ACCUSING JUNIPER OF
INFRINGEMENT. .......................................................................................................... 3

1.   On July 5, 2019, Swarm's John Fisher sends Juniper a letter to offer a license. ............ 3

2.   On August 9, 2019, Dave Saunders of Juniper asked for more information about
Swarm's technology. ..................................................................................................... 3

3.   On August 13, 2019, John Fisher responded to Juniper's questions. .............................. 4

4.   On September 10, 2019, Dave Saunders asked follow-up questions regarding Swarm's
technology. .................................................................................................................... 4

5.   On September 13, 2019, John Fisher provided more information to Juniper. .................. 4

6.   On October 24, 2019, Dave Saunders declined Swarm's offer of a license and admits
that there was no "accusation of infringement." ............................................................. 5

7.   On November 6, 2019, John Fisher tries to continue discussions with Juniper. .............. 5

8.   On December 3, 2019, John Fisher has a follow up phone call with Juniper to further
discussions. ................................................................................................................... 6

9.   On April 6, 2020, John Fisher again tries to continue discussions with Juniper. ............ 6

10.  On May 4, 2020, John Fisher provides corrected information to Dave Saunders about
Swarm's technology. ..................................................................................................... 6

D.   JUNIPER FILED SUIT AGAINST SWARM ON MAY 7, 2020 SEEKING A DECLARATORY
JUDGMENT THAT IT DOES NOT INFRINGE SWARM'S PATENTS. ......................................... 6

E.   ON JUNE 6, 2020, SWARM'S COUNSEL, LEO BEUS, TOLD JUNIPER THAT SWARM HAD NO
INTENTION TO SUE JUNIPER. ........................................................................................ 7

III. ARGUMENT ................................................................................................................ 7

A.   JUNIPER HAS NOT SHOWN THAT A "CASE OR CONTROVERSY" EXISTS. .................................. 7

1.   Legal Background. ........................................................................................................ 7

2.   No "case or controversy" exists between the parties. ..................................................... 8

B.    SWARM IS AN ARIZONA BASED COMPANY THAT IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT. ............................................................................................................... 9

1.    Legal Background. .......................................................................................... 9

2.    Swarm has insufficient contacts with the Northern District of California to establish personal jurisdiction. ...................................................................................... 10

C.    THE NORTHERN DISTRICT OF CALIFORNIA IS AN IMPROPER VENUE................................. 11

1.    Legal Background. ........................................................................................ 11

2.    A substantial part of the events did not occur in the Northern District of California. ... 12

3.    Swarm is not subject to the Court's personal jurisdiction.............................................. 13

4.    Venue is proper in the District of Arizona. .................................................... 13

IV.   CONCLUSION. ................................................................................................................. 13

1

2

## TABLE OF AUTHORITIES

Page

3

4

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) .........................9

5

6

*Akeena Solar, Inc. v. Zep Solar Inc.*, No. C 09-05040 JSW, 2010 WL 519838, at *4 (N.D. Cal. Feb. 9, 2010) ........................................................................................................................8

7

APL Co. Pte v. Intergro Inc, No. 14-CV-00488-JD, 2014 WL 4744410, at *4 (N.D. Cal. Sept. 22, 2014) ...............................................................................................................................12

8

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) .............11

9

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)..............10, 11

10

11

*Broadway Nat'l Bank v. Plano Encryption Techs.*, LLC, 173 F. Supp. 3d 469, 479 (W.D. Tex. 2016)........................................................................................................................................13

12

Cepheid v. Roche Molecular Sys., Inc., No. C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013) ..........................................................................................................8

13

14

*Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp. 1216, 1225 (D.N.J. 1993) ..........................................................................................................................................13

15

*Elecs. for Imaging, Inc. v. RAH Color Techs. LLC*, No. 18-CV-01612-WHO, 2018 WL 5304838, at *4 (N.D. Cal. Oct. 24, 2018)....................................................................................9

16

*Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002) ..........................10, 11

17

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1381-82 (Fed. Cir. 2010) ...........................................................................................................................................9

18

19

*Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 572 (Fed. Cir. 2009)....................7

20

*Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 943 (Fed. Cir. 2015)........................10

21

*PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, No. 15-CV-04711-JD, 2016 WL 1588270, at *2 (N.D. Cal. Apr. 20, 2016)..........................................................12

22

*Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)* ...............12

23

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338-41 (Fed. Cir. 2008) ......................9

24

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)......10

25

*Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014) ................................................7

26

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)..........................9

27

28

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................................12, 14

iii

28 U.S.C. § 1406(a) ........................................................................................................... 13, 14

28 U.S.C. § 1631 ...................................................................................................................... 12

28 U.S.C. § 2201 ........................................................................................................................ 7

1

<u>**MEMORANDUM OF POINTS AND AUTHORITY**</u>

## I.   <u>SUMMARY OF ISSUES TO BE DECIDED</u>

This Court should dismiss Juniper Networks, Inc.'s ("Juniper") Complaint for a Declaratory Judgment of Non-Infringement because there is no "case or controversy" between the parties, the Court lacks personal jurisdiction over Swarm, and Juniper filed in an improper venue. There are three issues for the court to decide.

1. Juniper is seeking a declaratory judgment that it does not infringe Swarm's patents.  Juniper must show that there is a "case or controversy" with Swarm by demonstrating an injury in fact traceable to Swarm.  Swarm offered a license to its patents and Juniper admits that Swarm does not accuse Juniper of infringement.  Does the Court have declaratory judgment jurisdiction when Swarm offered a license without accusing Juniper of infringement?

2. Swarm is an Arizona based company with its only office in Mesa, Arizona.  Juniper alleges personal jurisdiction because Swarm sent letters to Juniper in the Northern District of California and attended trade shows in Santa Clara, California unrelated to enforcing its patents. Personal jurisdiction in a noninfringement declaratory judgment exists based on a defendant's forum-related actions to enforce its patents.  Does the Court have personal jurisdiction over Swarm based on its letters offering a license?

3. Juniper alleges venue is proper because a substantial part of events took place in this District and because Swarm is subject to personal jurisdiction.   A substantial part of events in noninfringement declaratory judgment actions is based on where the patent holder resides and not where the patent holder sends a letter.  Is venue proper in this Court when Swarm and its patents resides in Arizona?

## II.   <u>FACTUAL BACKGROUND</u>

**A.   SWARM DEVELOPED AN INNOVATIVE COMPUTER ARCHITECTURE.**

Alfonso Iniguez is the founder of Swarm Technology LLC, an Arizona limited liability corporation based in Mesa, Arizona.  Iniguez has a Master of Science in electrical engineering with almost 30 years of experience working with computer chips.  When Iniguez first began working with computers, the architecture (or the rules and methods that describe the functionality and organization of a computer processing or network system) used a primary and secondary

1

system where one device controls one or more subordinate devices or processes.[1]  A typical example is a computer (or a network system) with one central processing unit (CPU) that directs the rest of the processes and functions.[2]

Over time, the basic architecture expanded to include a CPU, a co-processor and the rest of the system.  The hope was that by reducing the workload on the CPU the system's speed would then increase.  The CPU directs the work of the co-processor, which is secondary to the CPU.  The co-processor then directs processes and tasks within the system.[3]

Iniguez realized that there was still a bottleneck in the system that caused the system to be slow, directed too many resources to the CPU, and frequently left co-processors idle.  Iniguez envisioned a multiprocessor architecture that has a central controller that populates a task pool with tasks for the co-processors (or "agents") to complete.  Iniguez' invention does not require the central controller to communicate directly with the co-processors.  Because the central controller can offload tasks, it can allocate its bandwidth to other tasks or processes.  The co-processors do not have to wait idly for the central controller to direct what the co-processors are to do.  In essence, the co-processors can act autonomously, processing tasks intended to be executed by the CPU (or the controller).  This invention increases the speed and processing capacity of the system.[4]

Iniguez formed Swarm on January 17, 2014 to develop and commercialize the novel architecture.

**B.**     **SWARM APPLIED FOR AND HAS BEEN ISSUED THREE PATENTS.**

Iniguez applied for patents in the United States, the European Union, Japan, India, China, and Hong Kong under the Patent Cooperation Treaty.  The United States Patent and Trademark Office has thus far issued three patents to Swarm: United States Pat. No. 9,146,777; Pat. No.

---

[1] This system is also called a master/slave relationship though the complaint will be referring to primary or secondary based on the December 2017 Internet Systems Consortium decision.

[2] A diagram of this system can be found at https://vimeo.com/150745850.

[3] A diagram of this system can be found at https://vimeo.com/150748582.

[4] A simple diagram of Swarm's invention is found at https://vimeo.com/150450660 and https://vimeo.com/150743111.

9,852,004; and Pat No. 10,592,275.  The patents protect Swarm's multiprocessor systems.  The patents have many applications to computers, networks, cloud computing, and internet of things devices.[5]

## C.   SWARM OFFERED JUNIPER A LICENSE TO SWARM'S PATENTS WITHOUT ACCUSING JUNIPER OF INFRINGEMENT.

Swarm decided to license its patents as it continued to develop its technology and applications for the technology.  To help license the technology, Swarm hired John Fisher, an intellectual property licensing specialist with over thirty years' experience in the industry.  One of the companies that Fisher contacted about a potential licensing opportunity was Juniper.

### 1.   On July 5, 2019, Swarm's John Fisher sent Juniper a letter to offer a license.

On July 5, 2019, John Fisher sent Rami Rahim, the chief executive officer of Juniper, and Brian Martin, the general counsel of Juniper, a letter to present Juniper with a chance to license Swarm's technology.[6]  Fisher stated:

> The purpose of this letter is to highlight a licensing opportunity relating to zero-touch provisioning; ***this letter is not and should not be construed as an accusation of infringement***.

Fisher also said that "Swarm is now seeking to license its patents to a number of hardware and software providers" and "would welcome an opportunity to meet with you to discuss terms of a non-exclusive license."  In an attempt to persuade Juniper to take a license, Fisher also included a copy of the '004 Patent and a claim chart that shows why Juniper should take a license.  At no time did Fisher say that Swarm was going to sue Juniper.

### 2.   On August 9, 2019, Dave Saunders of Juniper asked for more information about Swarm's technology.

Dave Saunders, Director of Litigation for Juniper, responded to Fisher's letter on August 9, 2019.[7]  Saunders wrote:

> Thank you for your July 5, 2019 letter to Messrs. Rahim and Martin, to which I am responding. As an innovator, Juniper takes

---

[5] Examples of this application can be found: https://vimeo.com/150759740; https://vimeo.com/150744874; https://vimeo.com/244579285; and https://vimeo.com/177881911.

[6] Declaration of John A. Fisher (the "Fisher Decl."), Exhibit 1.

[7] Fisher Decl., Exhibit 2.

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS                    CASE NO. 5:20-CV-03137-JD

intellectual property rights seriously- both its own and the valid and enforceable rights of others. So we have begun analyzing the patents and claim chart attached to your letter. Our analysis is ongoing, but we have some preliminary questions

Saunders further said, "The answer to the above questions will allow us to continue our evaluation of the patents and claim chart attached to your letter."

**3.       On August 13, 2019, John Fisher responded to Juniper's questions.**

Fisher responded to Saunders questions four days later on August 13, 2019.[8]  Fisher provided three pages of answers to Saunders questions, including how Juniper's products use a task pool to allow its co-processors to work.  Fisher closed his letter, "Again, Swarm would welcome an opportunity to discuss this licensing opportunity with you."  Fisher never threatened a lawsuit but invited Juniper to meet with Swarm to discuss taking a license to Swarm's innovative technology.

**4.       On September 10, 2019, Dave Saunders asked follow-up questions regarding Swarm's technology.**

About a month later, on September 10, 2019, Saunders replied to Fisher's email asking Fisher additional questions about Swarm's patents.[9]  Not once did Saunders accuse Fisher or Swarm of alleging that Juniper infringed Swarm's patents.

**5.       On September 13, 2019, John Fisher provided more information to Juniper.**

Fisher responded to Saunders' email three days later on September 13, 2019.[10]  Fisher answered Saunders' two questions in three pages.  Fisher then concluded:

I have also attached a draft licensing agreement for your consideration. In the draft Section 1.3 LICENSED PRODUCTS is left blank. I leave it to you to fill in the blank with a definition that is appropriate for Juniper products. Section 3 provides a broad license under Swarm Patents. Section 4, the payment section, also contains blanks that are to be the subject of negotiation. Although Swarm proposes a running royalty (in the range of 1%), as I have noted in the past, a much more favorable settlement is available to early licensees. Swarm is open to alternate settlements such as a lump sum payment or fixed payments over time.

---

[8] Fisher Decl., Exhibit 3.

[9] Fisher Decl., Exhibit 4.

[10] Fisher Decl., Exhibit 5.

4

Fisher never accused Juniper of infringing Swarm's patents but merely presented an opportunity

to license Swarm's patents.

> **6.      On October 24, 2019, Dave Saunders declined Swarm's offer of a license and admitted that there was no "accusation of infringement."**

On October 24, 2019, Saunders replied to Fisher, writing:[11]

> We have had a chance to review the materials that you provided. While we appreciate the offer, we are not interested in taking a license at this time. ***Nor do we believe that a license is required because our products do not use the technology claimed by Swarm Technology's patents. This conclusion is consistent with your July 5, 2019 letter's statement that it "is not and should not be construed as an accusation of infringement."*** Of course, if my understanding is incorrect, and you do allege that we infringe one or more of Swarm Technology's patents, please let me know.

That is, Juniper fully understood that Swarm was not accusing Juniper of patent

infringement and that it was not seeking judicial action to enforce its patents against Juniper.

> **7.      On November 6, 2019, John Fisher tried to continue discussions with Juniper.**

On November 6, 2019, Fisher tried to resurrect a deal with Juniper by emailing Saunders.

Fisher said:[12]

> ***I was surprised and disappointed by your email of October 24 saying Juniper is not interested in taking a license at this time***. In the ***interest of continuing the good faith discussions*** both parties have been pursuing, I would like to make a few observations.

Fisher also said:

> From the very beginning ***Swarm has couched its correspondence as a "licensing opportunity."*** Swarm is in communication with several other companies -your competitors. As I have stated repeatedly, ***the first licensee will enjoy much more favorable licensing terms.*** The first licensee will therefore be at a competitive advantage with respect to other players in the parallel processing field.

In sum, Fisher never said that Swarm would sue Juniper for not taking a license.  Rather,

Fisher again offered a license.

---

[11] Fisher Decl., Exhibit 6.

[12] Fisher Decl., Exhibit 7.

1

**8.     On December 3, 2019, John Fisher had a follow up phone call with Juniper.**

2

About a month later on December 3, 2019, Fisher had a phone call with Saunders to

3

follow up with Fisher's November 6, 2019 email.  During the call, Fisher again emphasized that

4

Swarm was offering a license and not threatening Juniper with a lawsuit.[13]

5

After all these discussions, Juniper did not file suit against Swarm.

6

**9.     On April 6, 2020, John Fisher again tries to continue discussions with Juniper.**

7

8

On April 6, 2020 and after the '275 Patent issued, Fisher sent Saunders another email

trying to see if Juniper had any interest in taking a license to the '275 Patent.[14]  Fisher wrote:

9

10

> When we spoke in December as a follow up to back and forth
> emails of October and November you said Juniper was not
> interested in taking a license under the Swarm patents.

11

12

> ***

> A new patent, 10,592,275, has recently been issued to Swarm.

13

> ***

14

15

> As I have said from the beginning, Swarm is willing to offer a
> license under all of its patents on terms that will be fair to all
> licensees; the most favorable terms will be available to an early
> licensee. I look forward to discussing such a licensing opportunity
> with you.

16

17

Fisher never accused Juniper of infringing Swarm's patents and never threatened a lawsuit.

18

**10.     On May 4, 2020, John Fisher provided corrected information to Dave Saunders about Swarm's technology.**

19

20

On May 4, 2020, Fisher sent Saunders another email that identified an error in the April 6,

21

2020 email.[15]  Again, Fisher never accused Juniper of infringement and only offered a license.

22

**D.     JUNIPER FILED SUIT AGAINST SWARM ON MAY 7, 2020 SEEKING A DECLARATORY JUDGMENT THAT IT DOES NOT INFRINGE SWARM'S PATENTS.**

23

24

Roughly ten months after Fisher first offered a license to Juniper and told Juniper that it

25

was not accusing Juniper of infringement, and just over six months after Saunders admitted that

26

---

27

[13] Fisher Decl., ¶ 9.

[14] Fisher Decl., Exhibit 8.

28

[15] Fisher Decl., Exhibit 9.

Swarm was not accusing Juniper of infringement, Juniper filed suit against Swarm, seeking a declaratory judgment that Juniper did not infringe the '777 patent, the '004 patent, and the '275 patent.[16]

### E.   ON JUNE 6, 2020, SWARM'S COUNSEL, LEO BEUS, TOLD JUNIPER THAT SWARM HAD NO INTENTION TO SUE JUNIPER.

A month after filing suit, Swarm's counsel and Juniper's counsel had a telephonic conference on June 6, 2020 to see if the parties could resolve the dispute.  During that call, Swarm's counsel, Leo Beus, told Juniper's counsel that Swarm did not intend to sue Juniper and that the only reason there was a suit was because Juniper filed one.[17]

### III.   ARGUMENT

### A.   JUNIPER HAS NOT SHOWN THAT A "CASE OR CONTROVERSY" EXISTS.

#### 1.   Legal Background.

Under the Declaratory Judgment Act, "[i]n a case or actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."[18] A case or actual controversy exists when "the facts alleged, under all the circumstances show that there is a substantial controversy, between arties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[19] When "declaratory judgment defendant adequately challenges jurisdiction in fact, 'the allegations in the complaint are not controlling'" and the plaintiff must demonstrate "*facts* sufficient to supports its contention regarding the court's jurisdiction."[20]

In the patent context, "all the circumstances" are assessed to determine whether a declaratory judgment plaintiff "has presented a case of sufficient 'immediacy and reality."[21]

---

[16] D.I. 1.

[17] Declaration of K. Reed Willis ("Willis Decl.), ¶ 2.

[18] 28 U.S.C. § 2201.

[19] *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

[20] *Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 572 (Fed. Cir. 2009).

[21] *Sandoz Inc.*, 773 F.3d at 1277. (citations omitted).

7

1  Courts have recognized that "more is required" than sending a "communication from a patent

2  owner to another party."[22]  In assessing a case or controversy, courts in this district have used

3  thirteen factors to evaluate if there is declaratory judgment jurisdiction.[23] An actual controversy

4  requires an injury in fact traceable to the patentee.[24]

5  **2.      No "case or controversy" exists between the parties.**

6  All the communications from Swarm to Juniper made clear that Swarm was not seeking a

7  judicial remedy for infringement.  On July 5, 2019, Fisher told Juniper that "this letter is not and

8  should not be construed as an accusation of infringement."[25]  On October 24, 2019, Saunders

9  admitted that Swarm was not accusing Juniper of infringement and was merely an invitation to

10  take a license.[26]  While Swarm provided claim charts, they were solely for the purpose of

11  facilitating negotiations, and Swarm never imposed a deadline on Juniper to respond to Swarm's

12  licensing overtures.

13  The only litigation that Swarm has ever been involved in is this case and has never sought

14  judicial enforcement of its patents against any entity.

15  Swarm is a start-up company that is actively developing its technology, including

16  advanced robotics.  At the same time, Swarm wants to establish a source of revenue while it is

17  developing its technology by offering licenses to its patents.[27]

18  Importantly, Swarm's counsel, Leo Beus, told Juniper's counsel on June 6, 2020 that

19  Swarm did not intend to sue Juniper.[28]

20  Juniper has not shown or alleged any injury, such as not selling its products or that Juniper

21

22  [22] *Akeena Solar, Inc. v. Zep Solar Inc.*, No. C 09-05040 JSW, 2010 WL 519838, at *4 (N.D. Cal.
23  Feb. 9, 2010) (finding no case or controversy when patent holder made clear it wanted to avoid litigation).

24  [23] *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013).

25  [24] *Id.*

26  [25] Fisher Decl., Exhibit 1.

27  [26] Fisher Decl., Exhibit 7.

[27] Declaration of Alfonso Iniguez, ¶¶ 2-3.

28  [28] Willis Decl. ¶ 2.

will take actions to avoid infringement (should Swarm make those allegations).

Because there is no case or controversy, the Court should dismiss Juniper's complaint.[29]

## B.   SWARM IS AN ARIZONA BASED COMPANY THAT IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.

### 1.   Legal Background.

When a defendant challenges the court's exercise of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction is proper.[30] "Personal jurisdiction takes two forms: specific and general. 'Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' ... General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts.'"[31]

"The three-part test to establish specific jurisdiction is: '(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'"[32]

In a declaratory judgment action for patent noninfringement, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'"[33]  Merely sending a "cease-and-desist" letter or "infringement" letter is not enough to establish personal jurisdiction.[34]  Specific jurisdiction can only arise from cease-and-desist communications in

---

[29] *E.g.*, *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338-41 (Fed. Cir. 2008); and *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1381-82 (Fed. Cir. 2010).

[30] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[31] *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *see also*

[32] *Elecs. for Imaging, Inc. v. RAH Color Techs. LLC*, No. 18-CV-01612-WHO, 2018 WL 5304838, at *4 (N.D. Cal. Oct. 24, 2018) (citations omitted).

[33] *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

[34] *Id.* at 1333.

combination with "additional activities" that "relate in some material way to the enforcement or defense of the patent" and are purposefully directed at the forum."[35]

### 2. Swarm has insufficient contacts with the Northern District of California to establish personal jurisdiction.

There is no debate that Swarm is not susceptible to general jurisdiction in California. Juniper must show that there is specific personal jurisdiction over Swarm. It cannot make this showing and therefore this case must be dismissed.

In its Complaint, Juniper argues that personal jurisdiction is proper because:

- "Swarm purposefully direct allegations of patent infringement to Juniper in this District by . . . sending patent assertion and licensing letters alleging that Juniper infringes one or more claims of the Patents-in-Suit;"[36]

- "Swarm communicated and conducted licensing activities with other companies in this District regarding the Patents-in-Suit, including Juniper's competitors;"[37] and

- "Swarm has also exhibited at a minimum of two events in Santa Clara, California, within this District."[38]

Juniper's contentions do not meet the threshold to establish personal jurisdiction. First, Swarm merely sent letters to Juniper in this forum. These letters offer a license to Juniper – nothing more. Such activities do not create personal jurisdiction over a patentee.[39]

Knowing that merely sending letters to Juniper would not be sufficient, Juniper asserts that jurisdiction is proper because it believes Swarm sent licensing letters to its competitors in this

---

[35] *Petzila, Inc. v. Anser Innovation LLC*, 620 F. App'x 941, 943 (Fed. Cir. 2015); *cf. Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002) (reversing grant of default judgment because defendant patentee was not subject to personal jurisdiction when "contacts were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum"); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (finding no personal jurisdiction when patentee sent cease-and-desist letters and collect royalties from non-exclusive licensees from forum-related activities).

[36] D.I. 1 at ¶ 10.

[37] *Id.* at ¶ 11.

[38] *Id.* at ¶ 12.

[39] *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."))

10

1   District.  But the Federal Circuit has rejected this argument, finding that a patentee who sent

2   letters to four companies in Ohio was not subject to personal jurisdiction for a declaratory

3   judgment action of noninfringement.[40]

4       Juniper then claims that Swarm's attendance at three trade shows subject's Swarm to

5   personal jurisdiction in this Court.  Swarm attended the conference to demonstrate its technology;

6   no licensing activity took place during the trade shows.[41]  Swarm's "additional" activities in the

7   forum are unrelated to the "enforcement" of its patents and do not create personal jurisdiction for

8   the purposes of a noninfringement declaratory judgment action.[42]

9       In sum, the Court does not have personal jurisdiction over Swarm and the case should be

10  dismissed.[43]

11  **C.     THE NORTHERN DISTRICT OF CALIFORNIA IS AN IMPROPER VENUE.**

12      **1.     Legal Background.**

13       "Once the defendant has challenged the propriety of venue in a given court, the plaintiff

14  bears the burden of showing that venue is proper."[44] In evaluating a Rule 12(b)(3) motion to

15  dismiss for improper venue, the pleadings need not be accepted as true, and the Court may

16  consider facts outside the pleadings.[45]

17      A case may only be filed where:

18          (1) a judicial district in which any defendant resides, if all

19

---

20  [40] *Hildebrand*, 279 F.3d at 1353, 1356.

21  [41] Declaration of Alfonso Iniguez, ¶¶ 4-5f.

22  [42] *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) (finding
    no personal jurisdiction for a noninfringement declaratory judgment action when patentee sent
23  letters to many companies in jurisdiction, had non-exclusive licensees in the district, and attended
    conferences in the forum).

24  [43] Alternatively, if the Court believes there is a "case or controversy," the Court could transfer the
    case to the District of Arizona under 28 U.S.C. § 1631. APL Co. Pte v. Intergro Inc, No. 14-CV-
25  00488-JD, 2014 WL 4744410, at *4 (N.D. Cal. Sept. 22, 2014) (Donato, J.) (transferring case
    under 28 U.S.C. § 1631 when the court lacked personal jurisdiction over the defendant).

26  [44] *E.g., Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)
    (reversing denial of motion for summary judgment of improper venue).

27  [45] *PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, No. 15-CV-04711-JD,
    2016 WL 1588270, at *2 (N.D. Cal. Apr. 20, 2016) (Donato, J.) (finding improper venue and
28  transferring the case).

11

1    defendants are residents of the State in which the district is located;

2    (2) a judicial district in which a substantial part of the events or
     omissions giving rise to the claim occurred, or a substantial part of
3    property that is the subject of the action is situated; or

4    (3) if there is no district in which an action may otherwise be
     brought as provided in this section, any judicial district in which
5    any defendant is subject to the court's personal jurisdiction with
     respect to such action.[46]
6

     If venue is improper, then the court "shall dismiss, or if it be in the interest of justice, transfer
7
     such case to any district or division in which it could have been brought."[47]
8

9    **2.      A substantial part of the events did not occur in the Northern District of
             California.**

10          Juniper does not contend that venue is proper under subsection 1.  Nor could it do so

11   because Swarm is a resident of Arizona.  Instead, Juniper argues that venue is proper because

12   "substantial parts of the events" occurred in the Northern District of California and because

13   Swarm is subject to the Court's personal jurisdiction.  But Juniper's argument fails here.

14          In a declaratory judgment action of noninfringement, the "substantial part of events giving

15   rise to the claim" is not the "offer to negotiate a non-exclusive license . . . . Rather, 'the source of

16   the cause of action for noninfringement is the ownership and existence of the copyright or

17   patent.'"[48]  Thus, the substantial part of events is where Swarm is located.[49]

18          Swarm is an Arizona based limited liability company with its place of business in Mesa,

19   Arizona.  Iniguez developed his invention in Mesa, Arizona.  Swarm owns the patents-in-suit in

20   Arizona.  The only contact with Juniper in California is sending a series of letters to Juniper to

21   offer a license.  Thus, a substantial part of the events occurred in Arizona and not the Northern

22   District of California.  Because a substantial part of the events occurred outside the Northern

23

24   _____

     [46] 28 U.S.C. § 1391(b).
25
     [47] 28 U.S.C. § 1406(a).
26
     [48] *Broadway Nat'l Bank v. Plano Encryption Techs.*, LLC, 173 F. Supp. 3d 469, 479 (W.D. Tex.
     2016).
27
     [49] *Id.* at 479-80.; *see also Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp.
28   1216, 1225 (D.N.J. 1993) (sending a cease-and-desist letter is not a substantial activity giving rise
     to venue).

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS                    CASE NO. 5:20-CV-03137-JD

District of California, venue is improper in this District and the Court should dismiss Juniper's case.

### 3.    Swarm is not subject to the Court's personal jurisdiction.

As to the last venue provision, Section 1391(b)(3) says venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."[50]  As explained above, the Court does not have personal jurisdiction over Swarm. And therefore, this district is not a proper venue for this suit.

### 4.    Venue is proper in the District of Arizona.

It is without dispute that the suit could (and should) have been filed in the District of Arizona, where Swarm is incorporated and operates.  Iniguez and his family operate Swarm out of their home in Mesa, Arizona.  The only non-family "employee" of Swarm is John Fisher, who also lives in Arizona.  Thus, in the alternative, the Court should transfer the case to the District of Arizona.[51]

## IV.    CONCLUSION.

Juniper brought this suit against Swarm after Swarm offered a license to its innovative technology.  But Juniper's case must be dismissed because there is no case or controversy between the parties.  Further, the Court does not have jurisdiction over Swarm.  Lastly, Juniper filed its suit against Swarm in an improper venue.  Because Juniper has not made a showing in its complaint and cannot muster sufficient facts to over these defects, the Court must dismiss Juniper's complaint.

//

//

//

---

[50] 28 U.S.C. § 1391(b)(3).

[51] 28 U.S.C. § 1406(a).

13

1    Dated:  July 14, 2020                 Respectfully submitted,

2

3                                          By_____/s/ K. Reed Willis_____

4

5                                          **BEUS GILBERT PLLC**
                                               Leo R. Beus
6                                              Michael K. Kelly
                                               K. Reed Willis

7                                          **STEYER LOWENTHAL BOODROOKAS**
                                           **ALVAREZ & SMITH LLP**
8                                              Allan Steyer
                                               Suneel Jain
9
                                           *Attorneys for Defendant Swarm Technology LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS                    CASE NO. 5:20-CV-03137-JD