Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Adam A. Allgood (SBN: 295016)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

Counsel for Plaintiff
Juniper Networks, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNIPER NETWORKS INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>SWARM TECHNOLOGY LLC,<br><br>    Defendant. | Case No. 3:20-cv-3137-JD<br><br>**JUNIPER'S MEMORANDUM IN OPPOSITION TO SWARM'S MOTION TO DISMISS**<br><br>Date:      September 17, 2020<br>Time:      10:00 a.m.<br>Location:  Courtroom 11, 19th Floor<br>Judge:     Hon. James Donato |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

    A.    Swarm's Repeated Accusations of Infringement Against Juniper Lead Juniper to File This Action. ...................................................................2

    B.    Post-Suit, Swarm's Infringement Accusations Have Continued. ..........................5

    C.    Despite Omitting Significant Jurisdictional Contacts from Its Motion, Swarm Refused Juniper's Request for Limited Discovery.................................5

III.  LEGAL STANDARDS .........................................................................................6

    A.    Subject Matter Jurisdiction.................................................................................6

    B.    Personal Jurisdiction and Venue ........................................................................7

IV.   ARGUMENT ......................................................................................................8

    A.    Swarm's Words and Actions Created an "Actual Controversy" Sufficient for Declaratory-Judgment Jurisdiction........................................................8

    B.    Swarm's Infringement Accusations and Other Activities Subject It to Personal Jurisdiction in This District. ...............................................................11

    C.    Venue is Proper. ..............................................................................................13

    D.    Absent Outright Denial of Swarm's Motion, Jurisdictional Discovery Should Be Permitted. ......................................................................................14

V.    CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012) ...................................................................................1, 10

*ABB Inc. v. Cooper Indus., LLC*,
   635 F.3d 1345 (Fed. Cir. 2011) ...........................................................................................1

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) ......................................................................................1, 8

*Arteris S.A.S. v. Sonics, Inc.*,
   No. 12-cv-434-SBA, 2013 WL 3052903 (N.D. Cal. June 17, 2013) ....................................1

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   837 F.3d 1249 (Fed. Cir. 2016) ...........................................................................................7

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) ...........................................................................11, 13, 15

*Californians for Renewable Energy v. E.P.A.*,
   No. 15-cv-3292-SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ..................................8

*Campbell Pet Co. v. Miale*,
   542 F.3d 879 (Fed. Cir. 2008) ...........................................................................................13

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993) .............................................................................................7

*Chrisman Mill Farms, LLC v. Blazer*,
   2017 WL 1416793 (E.D. Ky. Apr. 19, 2017) ....................................................................12

*Danisco U.S. Inc. v. Novozymes A/S*,
   744 F.3d 1325 (Fed. Cir. 2014) ...........................................................................................6

*Elecs. For Imaging, Inc. v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003) ..................................................................................7, 8, 13

*Focht v. Sol Melia, S.A.*,
   No. 10-cv-906-EMC, 2010 WL 3155826 (N.D. Cal. Aug. 9, 2010) ..................................14

*Genetic Implant Systems, Inc. v. Core–Vent Corp.*,
   123 F.3d 1455 (Fed. Cir. 1997) ...................................................................................11, 13

*Gillespie v. Prestige Royal Liquors Corp.*,
   183 F. Supp. 3d 996 (N.D. Cal. 2016)................................................................................14

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009) ..................................................................................1, 8, 10

*Hildebrand v. Steck Mfg. Co., Inc.*,
   279 F.3d 1351 (Fed. Cir. 2002) .........................................................................................13

*Hulu LLC v. Rovi Corp.*,
   No. 17-cv-2942-JD, 2017 WL 3535031 (N.D. Cal. Aug. 16, 2017)....................................2

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001) .................................................................8, 11, 13

*MedImmune Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ..............................................................................................6, 8

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.,*
    890 F.3d 995 (Fed. Cir. 2018) .........................................................................7

*North v. Samsung SDI Am., Inc.,*
    No. 5:19-cv-5621-EJD, 2020 WL 1984020 (N.D. Cal. Apr. 27, 2020) ....................8

*Panavise Prod., Inc., v. Nat'l Prod., Inc.,*
    306 F. App'x 570 (Fed. Cir. 2009) ....................................................................7

*Prasco, LLC v. Medicis Pharm. Corp.,*
    537 F.3d 1329 (Fed. Cir. 2008) ......................................................................6, 9

*RC Entm't, Inc. v. Rodriguez,*
    1999 WL 777903 (S.D.N.Y. Sept. 29, 1999) ...................................................13

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) .........................................................................7

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 (Fed. Cir. 2007) ...................................................................1, 8, 9

*Smith v. Grumman,*
    60 F. Supp. 3d 1051 (N.D. Cal. 2014) ..............................................................7

*Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.,*
    655 F.2d 938 (9th Cir. 1981) ............................................................................1

*Treehouse Avatar LLC v. Valve Corp.,*
    2017 WL 5564153 (D. Del. Nov. 20, 2017) ....................................................13

*Vasquez v. Torres Negron,*
    434 F. Supp. 2d 199 (S.D.N.Y. 2006) ..............................................................13

*Whisnant v. United States,*
    400 F.3d 1177 (9th Cir. 2005) ..........................................................................7

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG,*
    848 F.3d 1346 (Fed. Cir. 2017) .......................................................................13

*Zithromia Ltd. v. Gazeus Negocios De Internet SA,*
    No. 3:17-cv-6475-JD, 2018 WL 6340875 (N.D. Cal. Dec. 5, 2018) ......................14

*Zoove Corp. v. StarPound Corp.,*
    No. 10-cv-6131-EJD, 2012 WL 3580526 (N.D. Cal. Aug. 17, 2012) ................2, 10

1

## I.   INTRODUCTION

Congress enacted the Declaratory Judgment Act to protect those confronted with an accuser using the threat of litigation as a negotiating tactic. As the Ninth Circuit has explained, the Act "was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never."[1] And under the Act, when a patent owner tells a company that its products infringe and that it needs a license, that company is entitled to seek a declaration of its rights, rather than sell its products under threat of a later infringement suit.[2] This is the very relief Juniper seeks here.

Juniper brought this suit after Swarm accused Juniper of infringing Swarm's patents no less than six times. Indeed, Swarm's first letter attached a claim chart comparing 52 Juniper products to Swarm's patents. And Swarm has continued to pressure Juniper to take a license ever since, including expressly disagreeing with Juniper on whether Juniper needed a license. Swarm also told Juniper that it had hired an expert to analyze Juniper's products, was in contact with litigation firms (and has now hired one), and was seeking litigation financing to enforce the patents.

Yet Swarm suggests this Court cannot exercise declaratory-judgment jurisdiction because Swarm did not say it would sue Juniper and couched its entreaties as a "licensing opportunity." But the Declaratory Judgment Act's purpose would be ill-served if a patent owner could avoid suit by using such labels and disclaimers that contradict its other words and actions. That is why the Federal Circuit has "repeatedly held" that a "declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'"[3] Nor can a declaratory judgment action be defeated by "unequivocal" statements that a defendant "has absolutely no plan whatsoever to sue," when the facts suggest otherwise.[4]

---

[1] *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (quotation omitted); *see also Arteris S.A.S. v. Sonics, Inc.*, No. 12-cv-434-SBA, 2013 WL 3052903, at *6 (N.D. Cal. June 17, 2013) (The Act was intended "to prevent avoidable damages from being incurred by a person … threatened with damage by delayed adjudication.").

[2] *E.g.*, *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

[3] *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011) (quoting *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009))); *accord 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1379 (Fed. Cir. 2012).

[4] *E.g.*, *SanDisk*, 480 F.3d at 1382.

And consistent with this precedent, this Court has regularly rejected arguments for dismissal similar to Swarm's.[5] It should once again do so here.

Swarm's prior actions likewise undermine its personal jurisdiction and venue arguments. Beyond its campaign against Juniper, Swarm has conducted a host of other patent-licensing and enforcement activities within the Northern District, based on Juniper's investigation thus far. This includes attending trade shows in the district, where it displayed a sign saying "PATENTS AVAILABLE FOR LICENSING"; engaging in licensing discussions with Juniper's competitors, including at least San Jose-based Cisco Systems and Santa Clara-based Arista Networks; and signing an agreement with RPX, a San Francisco-based organization that licenses patents, providing that this Court and Superior Court in San Francisco are the only venues for hearing any disputes. Further investigation is likely to uncover additional evidence of Swarm's activities in this forum, but Swarm has refused Juniper's request for a half-day deposition on this topic.[6]

At bottom then, Juniper's uncontradicted allegations and evidence sufficiently establish declaratory-judgment jurisdiction, personal jurisdiction, and proper venue. Accordingly, the Court should deny Swarm's motion to dismiss.

## II.   FACTUAL BACKGROUND

### A.   SWARM'S REPEATED ACCUSATIONS OF INFRINGEMENT AGAINST JUNIPER LEAD JUNIPER TO FILE THIS ACTION.

Swarm began communicating with Juniper about a year ago, ostensibly to secure Juniper as the first licensee of its three patents.[7] Although Swarm tried to couch it as a "licensing opportunity," Swarm's first letter to Juniper included claim charts that alleged similarities between Swarm's '004 patent and 52 specific Juniper products. The implied threats behind Swarm's "licensing opportunity" escalated from there.[8]

---

[5] *See, e.g., Hulu LLC v. Rovi Corp.*, No. 17-cv-2942-JD, 2017 WL 3535031, at *1 (N.D. Cal. Aug. 16, 2017) (Donato, J.) (denying motion to dismiss where defendant's letters did not make express infringement accusations); *Zoove Corp. v. StarPound Corp.*, No. 10-cv-6131-EJD, 2012 WL 3580526, at *4–5 (N.D. Cal. Aug. 17, 2012) (similar).

[6] As further detailed below, Juniper's investigation has uncovered communications between Swarm and targets in this district that Swarm does not mention in its motion or declarations.

[7] *See generally* Dkt. #1 (challenging the '777, '004, and '275 patents).

[8] *E.g., id.* at ¶¶ 3–4, 18–29.

**July 5, 2019: Swarm's First Infringement Accusation:** On July 5, 2019, Juniper received a letter from John Fisher, Swarm's IP Licensing Consultant, asserting that Swarm was seeking to license its '777 and '004 patents "to a number of hardware and software providers."[9] Although this letter stated that its purpose was to "highlight a licensing opportunity" and that it "should not be construed as an accusation of infringement," it enclosed a claim chart purporting to "demonstrate[] the correlation between claim 1 of the '004 patent and your [i.e., Juniper's] Zero-Touch Provisioning."[10] The claim chart also listed 52 Juniper products allegedly "using Zero Touch Provisioning," with a "complete list of model numbers" in an attached appendix.[11]

**August 13, 2019: Swarm's Second Infringement Accusation:** On August 9, 2019, Juniper's Director of Litigation, David Saunders, responded to Swarm and explained that Juniper had begun analyzing Swarm's patents and claim chart.[12] Juniper also asked Swarm to clarify the definitions of several claim terms and further explain the basis for its belief that Juniper practices claim 1 of the '004 patent. Four days later, Swarm responded to Juniper's questions, and predicted that Juniper's "technical people" would "confirm the correlation between the Juniper devices and Swarm's '004 patent," as Swarm's previously sent claim chart purportedly showed.[13]

**September 13, 2019: Swarm's Third Infringement Accusation:** Juniper then asked additional questions about certain claims.[14] But Swarm's September 13, 2019 reply included an unsolicited, draft licensing agreement, with a section purporting to release Juniper from liability for infringement.[15] And in a follow-up email referencing this draft agreement, Swarm further attempted to pressure Juniper into taking a license.[16]

---

[9] Dkt. #1 at ¶ 18; Dkt. #18-4 at 3 (Swarm Ex. 1).

[10] Dkt. #1 at ¶ 19; Ex. A (claim chart enclosed with Swarm's July 5, 2019 letter). References to Ex. [letter] are to exhibits attached to the accompanying Declaration of David M. Saunders ("Saunders Decl.") and Declaration of R. William Sigler ("Sigler Decl.").

[11] Dkt. #1 at ¶ 19; Ex. A; *see also* Dkt. #1 at ¶ 20 (listing products).

[12] Dkt. #1 at ¶ 21; Dkt. #18-4 at 6–7 (Swarm Ex. 2).

[13] Dkt. #1 at ¶ 22; Dkt. #18-4 at 9 (Swarm Ex. 3).

[14] Dkt. #1 at ¶ 23; Dkt. #18-4 at 14 (Swarm Ex. 4).

[15] Dkt. #1 at ¶ 23; Dkt. #18-4 at 20 (Swarm Ex. 5).

[16] Dkt. #1 at ¶ 23; Ex. B ("It has now been five weeks since my email of September 13 that answered the last of your questions. That email also included a draft licensing agreement.").

**November 6, 2019: Swarm's Fourth Infringement Accusation:** After evaluating the materials Swarm had provided, on October 24, 2019, Juniper told Swarm that it did not "believe that a license is required because our products do not use the technology claimed by Swarm Technology's patents."[17] Swarm's November 6, 2019 reply email argued that Swarm had answered all of Juniper's questions about claim terms, and asserted that Juniper had so far "failed to express any position that would prevail in a Markman hearing."[18] Swarm also noted that it had been in licensing communications with "several other companies – your competitors."[19] And Swarm expressly disagreed with Juniper's belief that a license was not required. Mr. Fisher stated: "Although you have said that Juniper does not require a license, I have to disagree."[20]

**December 3, 2019: Swarm's Fifth Infringement Accusation:** Juniper agreed to discuss Swarm's accusations on a call. And on that December 3, 2019 call between Messrs. Saunders and Fisher, Mr. Fisher again claimed Swarm was talking with Juniper's competitors. Mr. Fisher also reiterated the threat of an infringement action, as he stated that Swarm was in contact with litigation firms and was attempting to secure litigation financing to enforce its patents.[21]

**April 6, 2020: Swarm's Sixth Infringement Accusation:** On April 6, 2020, Swarm again emailed Juniper, repeating its belief that Juniper was required to license Swarm's patents and identifying Swarm's recently issued '275 patent.[22] Swarm also attached another claim chart, this time alleging similarities between the '275 patent and Juniper's products.[23] And on May 4, 2020, Swarm resent a revised version that charted two additional claim elements.[24] Three days later, due to Swarm's continued insistence that Juniper's products practice Swarm's patents, Juniper filed this declaratory judgment action.

---

[17] Dkt. #1 at ¶ 24; Dkt. #18-4 at 25 (Swarm Ex. 6). Juniper also noted that this belief was consistent with Swarm's earlier statement that it was not accusing Juniper of infringement. *Id*; *see also* Ex. B (showing Juniper's October 24, 2019 email and Swarm email it replied to).

[18] Dkt. #1 at ¶ 25; Dkt. # 18-4 at 27 (Swarm Ex. 7).

[19] *Id*.

[20] Dkt. #1 at ¶ 26; Dkt. # 18-4 at 27 (Swarm Ex. 7).

[21] Dkt. #1 at ¶ 27; Saunders Decl. at ¶ 5.

[22] Dkt. #1 at ¶ 28; Dkt. # 18-4 at 29 (Swarm Ex. 8).

[23] Dkt. #1 at ¶ 28; Ex. C.

[24] Dkt. #1 at ¶ 29; Ex. D.

### B.    POST-SUIT, SWARM'S INFRINGEMENT ACCUSATIONS HAVE CONTINUED.

Shortly thereafter, the parties discussed potential resolution. This included Juniper providing Swarm with a draft agreement that would have resolved the case, and calls between the parties' outside counsel on June 3, 6, and 9, 2020.[25] On these calls, Swarm's counsel made several statements indicating that they intended to initiate litigation against Juniper and other companies based in the Northern District of California.[26] For instance, Swarm's lead counsel, Mr. Beus, stated multiple times that his firm had been retained on a contingency basis and had the financial resources to pursue infringement actions against a lengthy list of companies.[27] Mr. Beus indicated that Juniper was on that list, although it was not one of Swarm's top few targets.[28] He also stated that Swarm had already engaged experts to analyze Juniper's products, and that they had concluded that Swarm's case was strong.[29]

### C.    DESPITE OMITTING SIGNIFICANT JURISDICTIONAL CONTACTS FROM ITS MOTION, SWARM REFUSED JUNIPER'S REQUEST FOR LIMITED DISCOVERY.

On July 14, 2020, Swarm filed the instant motion, arguing for dismissal under Federal Rule of Civil Procedure 12(b)(1)–(3) (i.e., subject matter jurisdiction, personal jurisdiction, and venue).[30] In support of its personal-jurisdiction arguments, Swarm submitted a five-paragraph declaration from its founder, Alfonso Iniguez, who denies that any "licensing activity took place" at three events in the district that Swarm participated in.[31] Because that declaration appears to omit significant details regarding Swarm's contacts with this forum,[32] Juniper requested

---

[25] Sigler Decl. at ¶ 2; *see also* Dkt. #18-1 (Declaration of K. Reed Willis) at ¶ 2 (discussing call on June 6, 2020). Leo Beus, Michael Kelly, and K. Reed Willis participated in these calls on Swarm's behalf, while Alan Fisch, Bill Sigler, and other members of Fisch Sigler participated for Juniper. Sigler Decl. at ¶ 2; *see also* Dkt. #18-1 at ¶ 2 (only mentioning Mr. Fisch).

[26] Sigler Decl. at ¶ 3.

[27] *Id.* at ¶ 4.

[28] *Id.* Mr. Beus indicated that one such top target was Cisco, a Juniper competitor located in the Northern District, and that Swarm had been in contact with Cisco. *Id.* at ¶ 5.

[29] *Id.* at ¶ 6.

[30] Dkt. #18 at 2 (notice of motion).

[31] Dkt. #18-2 (Iniguez Decl.) at ¶ 5.

[32] Although the complaint alleges that "Swarm has communicated and conducted licensing activities with other companies in this District regarding the Patents-in-Suit, including Juniper's competitors," Dkt. #1 at ¶ 11, Mr. Iniguez's declaration says nothing about that topic. Mr. Iniguez's declaration also seems to rely on a very limited definition of "licensing activity," since he does not refute the complaint's allegation that, during a video interview at the IoT Tech Expo in Santa

a half-day deposition limited to that topic. But even though Juniper provided case law showing that this Court routinely grants such discovery, Swarm declined to cooperate.[33]

Nonetheless, through its own investigation, Juniper has confirmed that Mr. Iniguez's declaration omits numerous contacts and communications in the Northern District of California. This includes repeated efforts to pressure Cisco into taking a license, similar to Swarm's communications with Juniper.[34] Swarm also sent such communications to Arista Networks,[35] and executed a non-disclosure agreement with RPX relating to the potential licensing of Swarm's patents.[36] And as further detailed below, Swarm engaged in licensing discussions during at least one of the Santa Clara trade shows it attended. But this likely does not reflect the full extent of Swarm's licensing and enforcement efforts in this district, which remain unknown due to Swarm's refusal to provide Juniper the limited discovery that Juniper requested.

## III.   LEGAL STANDARDS

### A.   SUBJECT MATTER JURISDICTION

Under 28 U.S.C. § 2201(a), federal courts may grant declaratory judgment in "a case of actual controversy within its jurisdiction." The Federal Circuit has explained that this phrase refers to the same "type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution.[37] Thus, "as long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action."[38] And as the Supreme Court held in *MedImmune Inc. v. Genentech, Inc.*, in a declaratory judgment action this depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality."[39]

---

Clara, he talked about how Swarm was looking to license its patents. *See id.* at ¶ 12.

[33] Ex. H (email chain between Juniper and Swarm counsel regarding jurisdictional discovery).

[34] *See* Ex. E (redacted copy of letter from Swarm to Cisco, dated July 5, 2019); Saunders Decl. at ¶¶ 8–10 (noting Swarm sent Cisco at least five additional letters).

[35] Ex. F (letter from Swarm to Arista, dated Aug. 15, 2019); *see also* Saunders Decl. at ¶¶ 8, 11.

[36] Ex. G; *see also* Saunders Decl. at ¶¶ 8, 12.

[37] *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014).

[38] *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

[39] 549 U.S. 118, 127 (2007) (internal quotation marks omitted).

A challenge to declaratory-judgment jurisdiction, like other subject-matter jurisdiction challenges, may be "facial" or "factual."[40] As the Ninth Circuit has explained, if a defendant "asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact)," the attack on jurisdiction is facial, and the court takes "the allegations in the plaintiff's complaint as true."[41] If the attack is factual, the court need only take uncontroverted allegations as true.[42] Nevertheless, absent a full-fledged evidentiary hearing, the disputed facts still must be viewed in the light most favorable to the non-moving party.[43]

Here, although Swarm has submitted three short declarations and nine exhibits, none appears to directly contradict any of the complaint's factual allegations. All nine exhibits are communications with Juniper that the complaint referenced and sometimes quoted.[44] But regardless of whether Swarm's subject-matter challenge is viewed as facial or factual, for the reasons detailed below, the uncontradicted allegations and evidence are sufficient to deny that challenge.

### B.    PERSONAL JURISDICTION AND VENUE

A plaintiff need only make a prima facie case of personal jurisdiction to survive a motion to dismiss, unless the court holds an evidentiary hearing.[45] As the Federal Circuit held in *Inamed Corp. v. Kuzmak*, a plaintiff may do so under a "specific" theory of personal jurisdiction if (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim

---

[40] *E.g.*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *accord Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 572 (Fed. Cir. 2009).

[41] *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

[42] *E.g.*, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

[43] *Smith v. Grumman*, 60 F. Supp. 3d 1051, 1054–55 (N.D. Cal. 2014).

[44] *Compare* Dkt. #1 at ¶¶ 18–29 *with* Dkt. #18-4.

[45] *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)); *see also M-I Drilling*, 890 F.3d at 999 (explaining that the Federal Circuit reviews personal-jurisdiction issues in patent-infringement cases under its own precedent); *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1251 (Fed. Cir. 2016) (explaining that personal jurisdiction is assessed as of the time the declaratory-judgment action was filed).

arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair.[46] If the plaintiff satisfies its burden on the first two elements, the defendant has the burden to prove that jurisdiction would be unreasonable, for purposes of the third.[47]

And in assessing a Rule 12(b)(3) motion to dismiss for improper venue, this Court may consider facts outside of the pleadings.[48] But this Court has repeatedly held that it still "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party," much like with a factual challenge to subject-matter jurisdiction.[49] And Swarm's refusal to participate in a deposition makes the reasons for such deference especially compelling here.

## IV.   ARGUMENT

### A.   SWARM'S WORDS AND ACTIONS CREATED AN "ACTUAL CONTROVERSY" SUFFICIENT FOR DECLARATORY-JUDGMENT JURISDICTION.

Whether there is "actual controversy" depends on the totality of the patent owner's conduct.[50] This test is an objective one. So, as the Federal Circuit explained in *Hewlett-Packard Co. v. Acceleron LLC*, "conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction."[51] Specific threats and magic words are not required, and a defendant cannot escape jurisdiction by denying that it has made an infringement accusation, when the rest of the facts show its intent to enforce its patents.[52] Rather, consistent with the purpose of the Declaratory Judgment Act, the Federal Circuit explained in *SanDisk Corp. v. STMicroelectronics, Inc.* that:

> [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the

---

[46] 249 F.3d 1356, 1359–60 (Fed. Cir. 2001) (applying Federal Circuit law in declaratory-judgment action because it was "intimately involved with the substance of the patent laws").

[47] *E.g.*, *Elecs. for Imaging*, 340 F.3d at 1350. The first two requirements correspond with *International Shoe*'s "minimum contacts," while the third "corresponds with [its] 'fair play and substantial justice' prong." *Inamed*, 249 F.3d at 1360.

[48] *E.g.*, *Californians for Renewable Energy v. E.P.A.*, No. 15-cv-3292-SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018).

[49] *See, e.g., id.*; *North v. Samsung SDI Am., Inc.*, No. 5:19-cv-5621-EJD, 2020 WL 1984020, at *6 (N.D. Cal. Apr. 27, 2020).

[50] *See MedImmune*, 549 U.S. at 127.

[51] 587 F.3d at 1363 (further noting that subjective beliefs do not play a role in the analysis).

[52] *E.g.*, *Arris Grp.*, 639 F.3d at 1379; *SanDisk*, 480 F.3d at 1381–83.

right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.[53]

Here, Swarm's objective words and actions meet this standard and show its intention to enforce its patents. For instance, Swarm's initial letter contained a claim chart that alleged similarities between 52 Juniper products and 13 claim elements of the '004 patent. Swarm's November 6, 2019 email also suggested that Juniper would not fare well in litigation (i.e., "a Markman hearing") and expressly disagreed with the statement that "Juniper does not require a license." And that is precisely what the Federal Circuit said was sufficient to satisfy the case or controversy requirement in *SanDisk*, where "as part of the 'license negotiations,'" the defendant detailed how claims of its patents "read on" certain SanDisk products, and "SanDisk, on the other hand, maintained that it could proceed in its conduct without the payment of royalties."[54]

In addition, Swarm's later pre-suit communications threatened litigation by indicating that Swarm was in contact with litigation firms and seeking litigation financing, and sending Juniper claim charts alleging similarities between 52 Juniper products and the '275 patent. And Swarm has continued to press for a licensing agreement, even after this suit was filed.[55] All these facts further show "a real and immediate injury or threat of future injury" to Juniper, "caused by the defendant[]," that is sufficient to establish declaratory-judgment jurisdiction.[56]

Swarm's motion points to no facts or law warranting a different conclusion. Instead, Swarm relies on the disclaimer in its initial letter that states it was not "an accusation of infringement."[57] But as this Court and the Federal Circuit have consistently held, such a disclaimer does not allow a defendant to escape declaratory-judgment jurisdiction.[58] And Swarm's related argument that Juniper's October 24, 2019 email "admitted that Swarm was not accusing Juniper of

---

[53] 480 F.3d at 1381.

[54] *Id*. at 1382.

[55] As noted, Swarm's counsel said that Juniper was on Swarm's list of targets for enforcement actions (although not at the top), that Swarm had the financial resources to proceed with a campaign of enforcement, that Swarm had hired experts to examine Juniper products, and that the infringement read was good. Sigler Decl. at ¶¶ 4–6.

[56] *E.g.*, *Prasco*, 537 F.3d at 1339 (emphasis removed).

[57] *E.g.*, Dkt. #18 at 8.

[58] *E.g.*, *SanDisk*, 480 F.3d at 1382 (denying dismissal, despite "direct and unequivocal statement that '[defendant] has absolutely no plan whatsoever to sue [plaintiff],'" where defendant had

infringement" is similarly unavailing.[59] That email instead invited Swarm to clarify whether it had accused Juniper of infringement, stating:

> Nor do we believe that a license is required because our products do not use the technology claimed by Swarm Technology's patents. This conclusion is consistent with your July 5, 2019 letter's statement that it "is not and should not be construed as an accusation of infringement." Of course, if my understanding is incorrect, and you do allege that we infringe one or more of Swarm Technology's patents, please let me know.[60]

And in reply, Swarm's Mr. Fisher reiterated that Swarm did allege infringement, stating: "[a]lthough you have said that Juniper does not require a license, I have to disagree."[61] This confirmed that the disclaimer in Swarm's July 5, 2019 letter was not genuine. And as this Court held in *Zoove Corp. v. StarPound Corp.*, if a party "has actually been charged with infringement of [a] patent, there is, necessarily, a case or controversy adequate to support jurisdiction."[62]

Similarly, Swarm avers that there's no case or controversy because it never imposed a deadline on Juniper to respond, or because this is its first lawsuit. But neither fact makes the controversy here any less real or immediate.[63] And although courts may consider such facts, the Federal Circuit has held that they did not defeat declaratory-judgment jurisdiction in circumstances similar to those here.[64]

In sum, because Swarm has directly accused Juniper of infringing its patents and indicated that it intends to enforce its patents if Juniper does not pay for a license, an actual and substantial case or controversy exists between Juniper and Swarm.

---

hired licensing attorneys and experts, identified infringing claim elements, and repeatedly pressed plaintiff to take a license); *see also* notes 3 and 5, *supra* (collecting cases).

[59] Dkt. #18 at 8.

[60] Dkt. #18-4 at 25 (Swarm Ex. 6).

[61] Dkt. #18-4 at 27 (Swarm Ex. 7).

[62] 2012 WL 3580526, at *4.

[63] Indeed, Swarm's indications during its June settlement negotiation calls with Juniper's outside counsel that it intended to bring multiple infringement actions and that it had the financial resources to do so show that Swarm's litigation plans were more than fleeting hypotheticals.

[64] *See, e.g.*, *3M*, 673 F.3d at 1380 ("[W]e have found that declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines."); *Hewlett-Packard*, 587 F.3d at 1364 n.1 (finding a substantial case or controversy despite "no history of litigation" by declaratory judgment defendant regarding the relevant patent).

## B.   SWARM'S INFRINGEMENT ACCUSATIONS AND OTHER ACTIVITIES SUBJECT IT TO PERSONAL JURISDICTION IN THIS DISTRICT.

An application of the facts to the factors set forth in *Inamed Corp. v. Kuzmak*, shows that Swarm is subject to personal jurisdiction. On the first factor, it is indisputable that Swarm has "purposefully directed its activities" to a resident of the forum—i.e., Sunnyvale-based Juniper.[65] On the second factor, it is equally indisputable that Juniper seeks declaratory judgment as a result of those activities—i.e., Swarm's direction of infringement accusations towards Juniper. And the totality of Swarm's "other activities" directed toward this district satisfies the third factor.[66]

For instance, despite its sworn declaration to the contrary, Swarm has explicitly sought to license its patents during at least two events in the Northern District. At the 2018 Internet of Things World Expo in Santa Clara, Swarm's CEO and Founder, Alfonso Iniguez, appeared in a video interview with the online publication *IWCE's Urgent Communications*. He said that Swarm had been issued patents, was planning on licensing those patents, and had hired a licensing consultant to help do so.[67] At the conference itself, a screen that Swarm set up at its booth announced "PATENTS AVAILABLE FOR LICENSING."[68] In an online video from the same event, Pablo Garcia—a Swarm representative—also told a prospective customer, "we're not here to sell the hardware…we're here to sell our [inaudible], we have intellectual property on Swarm…we own the patents for Swarm."[69] And in advance of the November 2017 IoT Tech

---

[65] 249 F.3d at 1360. Specifically, Swarm addressed its initial letter to Rami Rahim, Bikash Koley, and Brian Martin at Juniper's headquarters at 1133 Innovation Way, Sunnyvale, CA, located in the Northern District. *See also* Saunders Decl. at ¶ 2 (noting ~ 2,200 employees work at Juniper's headquarters, where the vast majority of Juniper's products (including those named in Swarm's charts) are researched, designed, developed, tested, updated, marketed, and financed).

[66] As the Federal Circuit has explained, notice letters alone "might be expected to support an assertion of specific jurisdiction," but for certain "policy considerations unique to the patent context." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (noting such letters satisfy the first two factors). And to comport with "fair play and substantial justice," there must be some "other activities" directed at the forum beyond the notice letter. *Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997); *Avocent*, 552 F.3d at 1333–35 (noting "other activities" include, *inter alia*, "extra-judicial patent enforcement").

[67] Donny Jackson, *Swarm Technology: Alfonso Iniguez demos 'intent-based autonomy' technology for coordinating drones*, IWCE's Urgent Communications (May 20, 2018) http://www.urgentcomm.com/2018/05/20/swarm-technology-alfonso-iniguez-demos-intent-based-autonomy-technology-for-coordinating-drones/. This video was taken down after Juniper filed this lawsuit.

[68] YouTube (May 19, 2018), https://www.youtube.com/watch?v=tRe-z6SZKnE, starting at 1:47.

[69] *Id.*, starting at 1:21.

Expo, Mr. Inguez tweeted, "#swarmtechnology will exhibit its technology at IoT Expo North America, Santa Clara" and included a promotional screenshot for the event in which Swarm described itself as a "technology licensing company."[70]

In addition to Swarm's statements at these events, which Mr. Iniguez's declaration ignores, Swarm consistently reminded Juniper that it was engaged in licensing discussions with Juniper's competitors, most of whom are located in the Northern District. On the calls between counsel, Swarm's counsel indicated that Swarm's licensing and enforcement activities were focused on San Jose-based Cisco Systems.[71] And Juniper subsequently confirmed, through its own investigation, that this was the case. Indeed, Swarm has repeatedly communicated with Cisco to pressure it into taking a license, similar to Swarm's communications with Juniper.[72] Swarm sent such communications to Arista Networks, as well, and likely other companies in this forum.[73]

Swarm also has signed a "Mutual Nondisclosure Agreement" with RPX, a San Francisco-based organization that licenses patents to protect its members from enforcement by non-practicing patent entities.[74] That agreement includes a forum-selection clause requiring any disputes relating to it to be "heard and determined exclusively by the Superior Court of the State of California for the County of San Francisco or the United States District Court for the Northern District of California located in the County of San Francisco."[75]

Thus, this district appears to be the epicenter of Swarm's enforcement and licensing efforts relating to its three patents.[76] Numerous cases confirm that those efforts constitute "other

---

[70] Alfonso Íñiguez (@iAlfonso), Twitter (Nov. 6, 2017), https://twitter.com/iAlfonso/status/927632332650979328.

[71] Sigler Decl. at ¶¶ 2–5.

[72] *See* Ex. E; Saunders Decl. at ¶¶ 8–10.

[73] *See*, *e.g.*, Ex. F. Most of Juniper's competitors (and Swarm's likely targets) are also located here in Silicon Valley. Saunders Decl. at ¶ 7.

[74] *See* Ex. G; Saunders Decl. at ¶¶ 8, 12.

[75] Ex. G at 3.

[76] *See generally Chrisman Mill Farms, LLC v. Blazer*, 2017 WL 1416793, at *8 (E.D. Ky. Apr. 19, 2017) ("This would be a closer case if Kentucky became the *de facto* center of enforcement for the '624 Patent despite a lack of an exclusive agreement, or if Blazer had traveled to Kentucky for any purpose related to … patent enforcement.").

activities" sufficient to confer jurisdiction.[77] And the full extent of Swarm's additional such efforts in this district remains unknown due to Swarm's refusal to participate in discovery.

Swarm's counterarguments are once again unavailing. *Avocent Huntsville Corp. v. Aten International Co.*, which Swam cites, actually supports personal jurisdiction here. That decision and other Federal Circuit cases state that specific jurisdiction may be found where a plaintiff has negotiated a licensing agreement in the jurisdiction, or has engaged in extra-judicial patent enforcement.[78] Swarm has done both.[79]

So Swarm is subject to personal jurisdiction because it has directed infringement accusations to Juniper in this district, Juniper seeks a declaratory judgment as a result of those accusations, and Swarm has engaged in numerous other activities in the district relating to enforcing its patents.

### C.   VENUE IS PROPER.

As Swarm acknowledges, in an action for declaratory judgment of non-infringement, venue is governed by the general venue statute, 28 U.S.C. § 1391, and not the special patent-infringement venue statute, 28 U.S.C. § 1400(b).[80] Section 1391(b) provides, in relevant part:

---

[77] *See, e.g., Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction where defendant engaged in "extra-judicial patent enforcement" at convention in district); *Elecs. for Imaging*, 340 F.3d at 1350–52 (finding jurisdiction where defendants hired attorney and called plaintiff in California to discuss the technology and patents); *Inamed*, 249 F.3d at 1361 (finding jurisdiction based on negotiating licensing agreements); *Genetic*, 123 F.3d at 1458 (finding jurisdiction where defendant engaged in marketing campaign in district); *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017) (noting "in-person visits to the forum are significant contacts in the declaratory judgment context," and finding notice letters plus in-person meeting sufficient for specific jurisdiction); *see also RC Entm't, Inc. v. Rodriguez*, 1999 WL 777903, at *3 (S.D.N.Y. Sept. 29, 1999) (finding specific jurisdiction under New York longarm statute, which does not extend as far as California's, because defendant contacted ASCAP (analogous to RPX here in all salient respects) seeking publishing royalties from songs at issue); *Vasquez v. Torres Negron*, 434 F. Supp. 2d 199, 201–02 (S.D.N.Y. 2006) (similar).

[78] 552 F.3d at 1334–35; *see also* note 77, *supra*.

[79] Swarm's reliance on *Hildebrand v. Steck Mfg. Co., Inc.*, is equally misguided. There, the issue was whether defendant's activities constituted transacting business in Ohio for purposes of the long-arm statute, which "does not grant Ohio courts jurisdiction to the limits of the due process clause." 279 F.3d 1351, 1534 (Fed. Cir. 2002). Ohio's higher standard doesn't apply here, as California's long-arm statute extends to Constitutional limits. *E.g.*, Cal. Code Civ. Proc., 410.10.

[80] Dkt. #18 at 11–12. The Supreme Court's 2017 decision in *TC Heartland* addressed venue for actions alleging patent infringement and thus did not alter this longstanding rule. *E.g., Treehouse Avatar LLC v. Valve Corp.*, 2017 WL 5564153, at *4 n.3 (D. Del. Nov. 20, 2017), *adopted* 2017 WL 6210506 (D. Del. Dec. 8, 2017).

A civil action may be brought in—

    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or]

    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

But Swarm incorrectly ignores the first subsection, 28 U.S.C. § 1391(b)(1), which states venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."[81] And under 28 U.S.C. § 1391(c)(2), for "all venue purposes," an entity like Swarm "shall be deemed to reside … in any judicial district in which [it] is subject to the court's personal jurisdiction." As detailed above, Swarm is subject to personal jurisdiction in the Northern District. Thus, Swarm also resides in the Northern District, and venue is proper per 28 U.S.C. § 1391(b)(1).

### D.   ABSENT OUTRIGHT DENIAL OF SWARM'S MOTION, JURISDICTIONAL DISCOVERY SHOULD BE PERMITTED.

In its motion to dismiss and supporting declarations, Swarm submitted evidence bearing on jurisdiction. And Juniper is entitled to test that evidence, especially to the extent it contradicts the complaint's allegations or is material. Indeed, this Court routinely permits jurisdictional discovery, and has explained such requests "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[82] Juniper provided Swarm with this case law during discussions about Juniper's request for discovery, but Swarm still refused to participate in a limited deposition.[83]

Discovery is likely to reveal more contacts between Swarm and the Northern District, including additional communications between Swarm and other hardware and software providers

---

[81] Swarm's sole argument here is that "Juniper does not contend that venue is proper under subsection 1. Nor could it do so because Swarm is a resident of Arizona." Dkt. #18 at 12. Swarm, however, does not cite any legal basis for ignoring the residence provision in § 1391(c)(2). And, in any event, Juniper's complaint expressly alleged that "Venue is proper in this District based on 28 U.S.C. §§ 1391(b)-(c)." Dkt. #1 at ¶ 13.

[82] *See, e.g., Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1001 (N.D. Cal. 2016); *Focht v. Sol Melia, S.A.*, No. 10-cv-906-EMC, 2010 WL 3155826, at *1–2 (N.D. Cal. Aug. 9, 2010); *Zithromia Ltd. v. Gazeus Negocios De Internet SA*, No. 3:17-cv-6475-JD, 2018 WL 6340875, at *3 (N.D. Cal. Dec. 5, 2018) (Donato, J.).

[83] Ex. H. A proposed scheduling order for jurisdictional discovery accompanies this opposition. *See* Ex. I.

in this district.[84] Many of the companies that fit that description are also headquartered in Silicon Valley. And if discovery were to show that Swarm was seeking to license its patents to those companies, this would likely constitute "other activities" sufficient to confer jurisdiction.[85]

## V.    CONCLUSION

Swarm's Damoclean threat against Juniper is exactly what Congress intended the Declaratory Judgment Act to prevent. Indeed, the law provides this Court with jurisdiction to remove the threat of infringement litigation that Juniper currently labors under. And the Court's exercise of personal jurisdiction over Swarm would also be fair, especially given Swarm's other activities in this forum. These include Swarm advertising its licensing program, engaging in licensing discussions with Juniper's competitors, and signing a licensing-related agreement with a forum-selection clause availing Swarm of this Court's jurisdiction. Thus, Juniper respectfully asks the Court to deny Swarm's motion to dismiss (Dkt. #18) and permit this matter to proceed.

---

[84] As noted, Swarm said in its November 6, 2019 email that it was "in communication with several other companies — your competitors." Swarm made similar statements during the December 3, 2019 call and in its April 6, 2020 email. And Juniper has already uncovered such communications with Cisco and Arista, through its own investigation.

[85] *E.g.*, *Avocent*, 552 F.3d at 1334–35.

Dated: August 11, 2020

By:  */s/ R. William Sigler*
Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Adam A. Allgood (SBN: 295016)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on August 11, 2020, I caused the foregoing document to be served

3

via the Court's CM/ECF system on all counsel of record per Local Rule CV-5(5).

4

*/s/ R. William Sigler*

5

R. William Sigler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28