# Exhibit G

# MUTUAL NONDISCLOSURE AGREEMENT

THIS MUTUAL NONDISCLOSURE AGREEMENT (the "Agreement") is made and entered into as of this 20 day of January, 2020, by and between RPX Corporation ("RPX"), with its principal place of business at Four Embarcadero Center, Suite 4000, San Francisco, CA 94111, and Swarm Technology, LLC ("Counterparty"), with its principal place of business at 732 East Lehi Road, Mesa, AZ 85203.

1) <u>Purpose</u>.  The parties wish to explore a business opportunity of mutual interest and in connection therewith, each party may disclose to the other certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential.

2) "<u>Confidential Information</u>" means any information disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects (including without limitation documents, prototypes, samples, plans and equipment), which is designated as "Confidential," "Proprietary" or some similar designation.  Confidential Information shall also include, without limitation, terms, conditions, pricing, notes, analyses, correspondence and draft documents regarding a potential business opportunity or relationship. Information communicated orally shall be considered Confidential Information if such information is identified orally as Confidential Information at the time of disclosure.  Confidential Information may also include information disclosed to a disclosing party by third parties. Confidential Information shall not, however, include any information which: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by the disclosing party; (ii) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (iii) is already in the possession of the receiving party at the time of disclosure by the disclosing party as shown by the receiving party's files and records immediately prior to the time of disclosure; (iv) is obtained by the receiving party from a third party without a breach of such third party's obligations of confidentiality; (v) is independently developed by the receiving party without use of or reference to the disclosing party's Confidential Information, as shown by documents and other competent evidence in the receiving party's possession; or (vi) consists of patent numbers disclosed by Counterparty to RPX.  Notwithstanding the foregoing, if receiving party is requested or required to disclose Confidential Information of the disclosing party by a governmental, judicial or regulatory authority or by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or other legally binding process, it is agreed that the receiving party will provide to the disclosing party prompt notice of any such request or requirement and provide reasonable cooperation to the disclosing party (at the disclosing party's expense) to enable the disclosing party the ability to seek an appropriate protective order or other appropriate remedy or to waive compliance with the provisions of this Agreement.  In the event that such protective order or other remedy is not obtained, or the disclosing party grants a waiver hereunder, the receiving party subject to the disclosure requirement may furnish that portion (and only that portion) of the Confidential Information which it determines, with the advice of its counsel, it is legally compelled to disclose and will use reasonable efforts to obtain reliable assurance that confidential treatment will be maintained. Notwithstanding the foregoing, except in connection with an action for a breach of this Agreement, Counterparty agrees not to seek or cause to issue governmental, judicial or regulatory requests either by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or other legally binding process for information regarding the parties' discussions of a business opportunity, the parties' discussions of patents, RPX's evaluation of the patents, RPX's engagement in discussions concerning the contemplated business opportunity with any current or prospective RPX members and/or their current or future affiliates ("<u>RPX Members</u>"), or RPX Members' evaluation of the patents or related materials in connection with the contemplated business opportunity.

3) <u>Non-use and Non-disclosure</u>.

   a) Each party agrees not to use any Confidential Information of the other party for any purpose except to evaluate and engage in discussions concerning a potential business opportunity or relationship between the parties.  Each party agrees not to disclose any Confidential Information of the other party to third parties or to such party's employees or agents, except to those employees or agents of the receiving party who are required to have the information in order to evaluate or engage in discussions concerning the contemplated business opportunity or relationship.

b) The Confidential Information, together with: (i) any preceding or subsequent submissions, correspondence, negotiations or discussions between Counterparty and RPX relating to the Purpose, (ii) RPX's potential or actual communications with any RPX Members relating to the Purpose, as well as (iii) RPX's or RPX Member's independent review of any information relating to the Purpose (all of the foregoing collectively, "Evaluation Information") shall not constitute notice or knowledge of any patent or claim of patent infringement to RPX or any RPX Member. Counterparty agrees not to use, and waives the right to use, the Evaluation Information as evidence in any judicial, administrative, or other proceeding to establish or to refer to any such notice or knowledge, including without limitation in connection with establishing any claim of willful infringement, of indirect infringement, or for damages in connection with any claim of patent infringement. Counterparty agrees that any transfer by Counterparty of patent assets that are part of the Purpose of this Agreement will be subject to the provisions of this paragraph with respect to all subsequent owners or exclusive licensees.

4) <u>Maintenance of Confidentiality</u>. Each party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party. Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information and shall ensure that its employees and agents who have access to Confidential Information of the other party have signed a non-use and non-disclosure agreement in content similar to the provisions hereof (or are bound by similar professional obligations), prior to any disclosure of Confidential Information to such employees or agents. Each party shall reproduce the other party's proprietary rights notices on any such approved copies, in the same manner in which such notices were set forth in or on the original.

5) <u>Anonymized Data</u>. Notwithstanding Sections 3, 4 and 9 of this Agreement, each party may use the Confidential Information of the other party (except for any list of any potential licensee(s) provided by RPX) for the purposes of its internal research and development, and any data generated from such Confidential Information shall not be shared or otherwise disclosed to third parties in any manner except in an aggregated and anonymized form only; provided, that such sharing or disclosure does not allow for any Confidential Information to be traced back to identify the other party in any way.

6) <u>No Obligation</u>. Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity or potential business relationship. Counterparty acknowledges and agrees that it is free to discuss and negotiate any business opportunity (without disclosing RPX's Confidential Information) directly with RPX Members. Unless and until the parties execute a definitive written agreement regarding the Purpose, neither party will be under any legal obligation of any kind whatsoever with respect to the Purpose except for those obligations specifically agreed to in this Agreement. Without limiting the foregoing, in no event will either party allege that any oral discussions, emails, texts or the like constitute a binding agreement.

7) <u>No Warranty</u>. ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". EACH PARTY MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

8) <u>Return of Materials</u>. All documents and other tangible objects containing or representing Confidential Information which have been disclosed by either party to the other party, and all copies thereof which are in the possession of the other party, shall be and remain the property of the disclosing party and shall be promptly returned to the disclosing party or destroyed, upon the disclosing party's written request.

9) <u>No License</u>. Nothing in this Agreement is intended to grant any implied rights or licenses to either party under any patent, trade secret, trademark, mask work right, copyright or any other intellectual property right in the applicable jurisdiction of the other party, nor shall this Agreement grant any party any rights in or to the Confidential Information of the other party except as expressly set forth herein.

10) <u>Term</u>. Except as set forth in Sections 2 and 3(b), both of which shall survive indefinitely, the obligations of each party hereunder shall survive for the lesser of: (i) five (5) years from the date of disclosure; or (ii) until such time as all Confidential Information of the disclosing party becomes publicly known and made generally available through no action or inaction of the receiving party.

11) <u>Remedies</u>. Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to all legal remedies.

12) <u>Representation and Warranty</u>. Counterparty represents and warrants that Counterparty (i) is the sole owner of any patent assets identified in connection with the Purpose of this Agreement, or (ii) has proper written authority from the owner(s) of such patent assets to agree to the terms of this Agreement, in which case Counterparty is agreeing to such terms on behalf of such owner(s).

13) <u>Miscellaneous</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their successors and assigns (including without limitation all subsequent owners or exclusive licensees of any patent assets identified in connection with the Purpose of this Agreement); provided that RPX Members are intended third party beneficiaries of, and entitled to enforce the rights of, RPX with respect to Section 3(b) of this Agreement. This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. All actions arising out of or relating to this Agreement, including the formation of this Agreement, shall be heard and determined exclusively by the Superior Court of the State of California for the County of San Francisco or the United States District Court for the Northern District of California located in the County of San Francisco. This document contains the entire agreement between the parties with respect to the subject matter hereof, and neither party shall have any obligation, express or implied by law, with respect to trade secret or proprietary information of the other party except as set forth herein. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto.

Please confirm your agreement with the foregoing by signing and returning one copy of this Agreement to RPX, whereupon, when countersigned by RPX, this Agreement shall become a binding Agreement between RPX and the undersigned Counterparty. This Agreement may be executed by a facsimile signature or PDF copy of the original signature.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**RPX CORPORATION**

By: *Ryan Hanneken*

Printed Name: __Ryan Hanneken__

Title: __Director__

E-mail address: rhanneken@rpxcorp.com

**Swarm Technology, LLC ("COUNTERPARTY")**

By: _____

Printed Name: *Alfonso Iniguez*

Title: CEO

E-mail address: alfonso@swarmtechnology.us