Leo R. Beus *(pro hac vice)*
Michael K. Kelly *(pro hac vice)*
BEUS GILBERT MCGRODER PLLC
Attorneys at Law
701 North 44th Street
Phoenix, Arizona  85008-6504
Telephone:  (480) 429-3000
Facsimile:   (480) 429-3001
Email:  lbeus@beusgilbert.com
           mkelly@beusgilbert.com

Allan Steyer (State Bar No. 100318)
Donald Scott Macrae (State Bar No. 104663)
Jill K. Cohoe (State Bar No. 296844)
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
235 Pine Street, 15th Floor
San Francisco, California 94104
Telephone:    (415) 421-3400
Facsimile:    (415) 421-2234
E-mail:       asteyer@steyerlaw.com
              smacrae@steyerlaw.com
              jcohoe@steyerlaw.com

*Attorneys for Defendant*
*Swarm Technology LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNIPER NETWORKS, INC. and APSTRA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SWARM TECHNOLOGY LLC, <br><br> Defendant. | Case No. 5:20-cv-03137-JD <br><br> **SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:          May 20, 2021 <br> Time:          10:00 a.m. <br> Location:      Courtroom 11 <br> Judge:         Hon. James Donato |

PLEASE TAKE NOTICE THAT, on 20 May 2021, or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Swarm Technology, LLC ("Swarm") will, and hereby does, move under Federal Rules of Civil Procedure 12(b)(2) and (3) seeking the below specified relief.

RELIEF SOUGHT:  Swarm seeks an order dismissing the Amended Complaint filed by Juniper Networks, Inc. and Apstra, Inc. against Swarm Technology LLC on 2 April 2021; alternatively, Swarm seeks an order transferring this matter to the Arizona District Court, where personal jurisdiction and venue properly extend to all parties.

ISSUES TO BE DECIDED: This Court should dismiss the Amended Complaint for Declaratory Judgment of Non-Infringement filed 2 April 2021, because the Court lacks personal jurisdiction over Swarm, and because venue is improper in this District.  Swarm respectfully requests this Court to decide the following two issues:

**1.       Swarm is an Arizona LLC with its only office in Mesa, Arizona. Plaintiffs Juniper and Apstra allege personal jurisdiction based on licensing letters Swarm sent to Juniper and Apstra in this District, and Swarm's attendance at trade shows wholly unrelated to patent enforcement. However, personal jurisdiction in a declaratory judgment action for noninfringement exists only when a defendant has also engaged in "other activities" involving enforcement of the patent in the forum. Are the licensing letters and trade shows sufficient to support personal jurisdiction over Swarm in this District?**

**2. In a declaratory judgment action for noninfringement, venue is proper in the forum in which the patent holder resides, and not in a forum into which the patent owner has sent licensing letters. Juniper and Apstra argue that venue is proper because a substantial part of events took place in this District and because Swarm is allegedly subject to personal jurisdiction in this District.  Is venue proper in this Court when Swarm and its patents reside in Arizona, and where this Court lacks personal jurisdiction over Swarm?**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................................1

    A.      PROCEDURAL POSTURE ...........................................................................................1

    B.      SUMMARY OF ARGUMENT .......................................................................................1

II.     FACTUAL BACKGROUND ...........................................................................................3

    A.      SWARM PIONEERED A NEW COMPUTER ARCHITECTURE .........................................3

    B.      SWARM HAS BEEN AWARDED THREE U.S. PATENTS ...............................................4

    C.      SWARM OFFERS TO LICENSE ITS PATENTS...............................................................4

    D.      SWARM ATTENDED THREE – AND ONLY THREE - TRADE SHOWS IN CALIFORNIA ...................6

    E.      JUNIPER FILES SUIT AGAINST SWARM .....................................................................7

III.    ARGUMENT ....................................................................................................................8

    A.      PERSONAL JURISDICTION REQUIRES ENFORCEMENT ACTION..................................8

    B.      SWARM'S ACTIONS DO NOT SUPPORT PERSONAL JURISDICTION...........................11

    C.      VENUE IS IMPROPER IN THIS DISTRICT...................................................................12

IV.     CONCLUSION ...............................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adobe Sys. Inc. v. Tejas Research, LLC.*,
(N.D. Cal. Nov. 13, 2009).................................................................1, 2, 9, 10

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012) ...................................................................9

*APL Co. Pte v. Intergro Inc*,
2014 WL 4744410 (N.D. Cal. Sept. 22, 2014) ...........................................11

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) ...................................................................9

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,
2008 WL 7071464 (C.D. Cal. Jan. 17, 2008) ............................................10

*Autonomy, Inc. v. Adiscov, LLC*,
*2011 WL 2175551 (N.D.Cal. June 3, 2011)* .........................................1, 10

*Avocent Huntsville Corp.*,
552 F.3d 1324 (Fed. Cir. 2008) ...........................................................Passim

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
444 F.3d 1356 (Fed. Cir. 2006) .................................................................10

*Broadway Nat'l Bank v. Plano Encryption Techs.*, LLC,
173 F. Supp. 3d 469 (W.D. Tex. 2016) ......................................................13

*Campbell Pet Co. v. Miale*,
542 F.3d 879 (Fed. Cir. 2008) ...................................................................10

*Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*,
825 F. Supp. 1216 (D.N.J. 1993) ................................................................13

*Juniper Networks, Inc. v. SSL Services, LLC*,
(N.D. Cal. Nov. 13, 2009)..........................................................................1, 2, 8

*PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*,
2016 WL 1588270 (N.D. Cal. Apr. 20, 2016) ...........................................12

*Pieczenik v. Dyax Corp.*,
265 F.3d 1329 (Fed. Cir. 2001) ...............................................................8, 9

*Piedmont Label Co. v. Sun Garden Packing Co.*,
*598 F.2d 491 (9th Cir. 1979)* ....................................................................12

*Radio Sys. Corp. v. Accession, Inc.*,
638 F.3d 785 (Fed. Cir. 2011) .....................................................................9

*Square, Inc. v. Morales*,
2013 WL 6199281 ........................................................................................9

Statutes

28 U.S.C. § 1391(b) .........................................................................................12
28 U.S.C. § 1406(a) ..................................................................................12, 13
28 U.S.C. § 1631 ..............................................................................................11
28 U.S.C. § 1391(b)(3)......................................................................................13

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

#### A.   PROCEDURAL POSTURE

Juniper filed its initial Complaint with this Court on 7 May 2020, seeking a declaration of noninfringement.[1]   On 7 July 2020, Swarm filed a Motion to Dismiss the Complaint (or transfer it to Arizona) for, *inter alia*, lack of personal jurisdiction and improper venue.[2]   On 14 September 2020, this Court found the Motion to Dismiss (the "Motion") suitable for decision without oral argument, and vacated the hearing on the Motion as well as the case management conference then scheduled for 17 September 2020.[3]

On 2 April 2021, prior to this Court ruling on the Motion, Juniper and Apstra filed an Amended Complaint again seeking a declaratory judgment of noninfringement, and naming Apstra, Inc. as an additional plaintiff.[4]   Swarm hereby moves to dismiss the Amended Complaint or, alternatively, to transfer this case to Arizona, based on essentially the same factual predicate and legal analyses set forth in Swarm's original Motion.

#### B.   SUMMARY OF ARGUMENT

In declaratory judgment actions for non-infringement, this Court has consistently and unambiguously held that conducting licensing discussions with a forum resident, even when those discussions involve sending cease and desist letters into the forum[5] or actually *threatening* an infringement action against a forum resident,[6] are insufficient to support

---

[1] Dkt. #1.

[2] Dkt. #18.

[3] Dkt. #29.

[4] Dkt. #38.

[5] *Juniper Networks, Inc. v. SSL Services, LLC*, Case No: C 08-5758 SBA at Page 3 (N.D. Cal. Nov. 13, 2009) ("In *Avocent*, the Federal Circuit held that sending cease and desist letters to an alleged infringer within the forum, standing alone, is insufficient to establish personal jurisdiction); citing *Avocent Huntsville Corp.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008).

[6] *Adobe Sys. Inc. v. Tejas Research, Llc.*, No. C-14-0868 EMC (N.D. Cal. Sep. 17, 2014) at Page 3, Citing *Autonomy, Inc. v. Adiscov, LLC, No. C11-0420 SBA, 2011 WL 2175551, at *3 (N.D.Cal. June 3, 2011)* ("[T]he act of threatening a party with an infringement lawsuit is,

personal jurisdiction over the patent holder.  Instead, due process requires the patent holder to have also engaged in "other activities"[7] demonstrating patent enforcement.  In the context of a declaratory judgment action for non-infringement, the plaintiff must establish that the patent holder either: i) initiated judicial or extra-judicial patent enforcement actions within the forum; or ii) otherwise imposed enforcement obligations upon a forum resident.[8] Swarm has done neither; nor have Plaintiffs alleged such activities.

More particularly, the entirety of Swarm's contacts in California comprise patent licensing discussions – and nothing more.  Swarm's licensing overtures to Juniper and Apstra included claim charts which map Swarm's patent claims to Juniper's and Apstra's respective products.  These claim charts underscore Swarm's diligence and good faith efforts to avoid litigation in favor of a licensing arrangement. Swarm never sent a cease and desist letter,[9] never issued an oral or written demand,[10] never commenced an enforcement action (judicial or otherwise),[11] and never engaged in any predicate activity whatsoever of the type required by this Court to confer personal jurisdiction.

---

standing alone, insufficient to establish personal jurisdiction.").

[7] *Juniper Networks v. SSL Services* at 3 citing *Avocent* at 1333 ("Rather, the court observed that the Federal Circuit has 'consistently required the defendant to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents.'").

[8] *Adobe v. Tejas at 3,* citing *Avocent at 1334* ("In *Avocent*, the court noted that these 'other activities' include 'initiating judicial or extra-judicial patent enforcement within the forum.'"); See also *Juniper Networks v. SSL Services* at 3 citing *Avocent* at 1334 ("Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement *within the forum*, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business *in the forum*.") (Emphasis in original).

[9] Declaration of John A. Fisher ¶ 6, attached as Exhibit "A"; Declaration of Alfonso Iniguez ¶ 13, attached as Exhibit B.

[10] Fisher Decl. ¶ 5; Iniguez Decl. ¶ 12.

[11] Fisher Decl. ¶ 5; at Iniguez Decl. ¶12.

2

Indeed, Plaintiffs cannot credibly argue that Swarm's licensing offers to California residents somehow constitute the type of "other activities" which this Court has recognized as supporting personal jurisdiction. Swarm's licensing activities simply do not. As detailed below, regardless of the *extent* to which Swarm may have sought licensees in California, those efforts are insufficient to confer personal jurisdiction unless Swarm *also engaged in "other activities."* Because Swarm did not engage in "other activities," Plaintiffs have not established and cannot establish a *prima facie* case of personal jurisdiction over Swarm. No amount of jurisdictional discovery can change this conclusion.

For the foregoing reasons and as discussed more fully below, this Court lacks personal jurisdiction over Swarm, and Plaintiff's Amended Complaint for Declaratory Judgment of Non-Infringement should therefore be dismissed. In the alternative, Swarm requests this Court to exercise its plenary authority to transfer this matter to the District of Arizona, where Swarm resides and personal jurisdiction extends to all parties.

## II.     FACTUAL BACKGROUND

### A.     <u>SWARM PIONEERED A NEW COMPUTER ARCHITECTURE</u>

Alfonso Iñiguez ("Iñiguez") is the founder of Swarm Technology LLC, an Arizona limited liability corporation based in Mesa, Arizona.  Iñiguez holds a Master of Science in electrical engineering and has 30 years' experience working with computer chips.  When Iñiguez first began working with computers, the typical architecture (the protocols that describe the operation of a computer system) involved a central processing unit (CPU) configured to directly control one or more secondary processors.

Iñiguez realized that existing architectures overburdened the CPU and frequently left co-processors idle.  Iñiguez envisioned a revolutionary new architecture having a central controller configured to populate a task pool with a plurality of discrete tasks to be

3

1  performed by the co-processors (or "agents").  In this new paradigm, the central controller

2  need not communicate directly with the co-processors, and the co-processors need not wait

3  for instructions from the central controller (the co-processors operate autonomously).  This

4  dramatically increases the speed, scalability, and processing capacity of the system.[12]

5  Iñiguez formed Swarm on 17 January 2014 to develop and commercialize his new

6  architecture.

7  **B.     SWARM HAS BEEN AWARDED THREE U.S. PATENTS**

8  Iñiguez applied for patents in the United States, the European Union, Japan, India,

9  China, Hong Kong and under the Patent Cooperation Treaty.  In addition to patents issued

10  by patent authorities in other countries, the United States Patent and Trademark Office

11  issued the following three patents: United States Patent No. 9,146,777 (the "'777 Patent");

12  United States Patent No. 9,852,004 (the "'004 Patent"); and United States Patent No.

13  10,592,275 (the "'275 Patent"), (collectively, "the Patents" or "the Patents-in-Suit")).  The

14  Patents cover many applications to computers, networks, cloud computing, and internet of

15  things devices.[13]

16  **C.     SWARM OFFERS TO LICENSE ITS PATENTS**

17  After Iñiguez assigned the Patents to Swarm[14], Swarm endeavored to license the

18  Patents while it continued to develop its multi-processor technology and related

19  applications.  To assist with these licensing efforts, Swarm enlisted John Fisher, a patent

20  agent and licensing specialist, with extensive industry experience.  Fisher contacted

21  potential licensing prospects, including Juniper and Apstra.

22

23  [12] A simple diagram of Swarm's invention is found at https://vimeo.com/150450660 and
24  https://vimeo.com/150743111.

    [13] Examples of these applications can be found: https://vimeo.com/150759740;
25  https://vimeo.com/150744874; https://vimeo.com/244579285; and https://vimeo.com/177881911.

26  [14] Iñiguez, the inventor, assigned the Patents to Swarm, as follows: the '777 Patent was filed on
    25 Jan 2013, assigned to Swarm on 08 Jul 2015, and issued 29 Sep 2015; the '004 Patent was
27  filed on 24 Jul 2014, assigned to Swarm on 10 Mar 2017, and issued 26 Dec 2017; and, the '275
    Patent was filed on 22 Dec 2017, assigned to Swarm on 22 Dec 2017, and issued 17 Mar 2020.

28

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

1    Between 16 July 2018, and 4 May 2020, Fisher corresponded with various

2  representatives at Juniper, Apstra, and other companies both within and outside this District

3  promoting license opportunities.  For example, on 5 July 2019, Fisher wrote a letter to Rami

4  Rahim (Juniper's CEO) and Brian Martin (Juniper's general counsel), [15] stating:

5              The purpose of this letter is to highlight a licensing opportunity
            relating to zero-touch provisioning; ***this letter is not and should***
6            ***not be construed as an accusation of infringement***.

7  (Emphasis added.)

8    Fisher also said that "Swarm is now seeking to license its patents to a number of

9  hardware and software providers" and "would welcome an opportunity to meet with you to

10  discuss terms of a non-exclusive license."  In an attempt to persuade Juniper to take a

11  license, Fisher also included a copy of the '004 Patent and a claim chart that demonstrated

12  why Juniper should take a license.  At no time did Fisher threaten to sue Juniper.

13    In an email dated 13 September 2019,[16] Fisher added:

14              I have also attached a draft licensing agreement for your
            consideration. In the draft, Section 1.3 LICENSED
15            PRODUCTS is left blank. I leave it to you to fill in the blank
            with a definition that is appropriate for Juniper products.
16            Section 3 provides a broad license under Swarm Patents.
            Section 4, the payment section, also contains blanks that are to
17            be the subject of negotiation. Although Swarm proposes a
            running royalty (in the range of 1%), as I have noted in the past,
18            a much more favorable settlement is available to early
            licensees. Swarm is open to alternate settlements such as a lump
19            sum payment or fixed payments over time.

20    In an email dated 6 November 2019, Fisher persisted:[17]

21              ***I was surprised and disappointed by your email of October 24***
            ***saying Juniper is not interested in taking a license at this time***.
22            In the ***interest of continuing the good faith discussions*** both
            parties have been pursuing, I would like to make a few
23            observations.

24              ***

25

26  ───────────────

[15] Dkt. #18-4 at Fisher Decl., Exhibit 1.
27
[16] Dkt. #18-4 at Fisher Decl., Exhibit 5.
28
[17] Dkt. #18-4 at Fisher Decl., Exhibit 7.

1
2
3
4

> From the very beginning **Swarm has couched its correspondence as a "licensing opportunity."** Swarm is in communication with several other companies -your competitors. As I have stated repeatedly, **the first licensee will enjoy much more favorable licensing terms.** The first licensee will therefore be at a competitive advantage with respect to other players in the parallel processing field.

5

(Emphasis added.)

6

On 6 April 2020 and after the '275 Patent issued, Fisher wrote:

7
8

> When we spoke in December as a follow up to back and forth emails of October and November you said Juniper was not interested in taking a license under the Swarm patents.

9

> ***

10

> A new patent, 10,592,275, has recently been issued to Swarm.

11

> ***

12
13
14

> As I have said from the beginning, Swarm is willing to offer a license under all of its patents on terms that will be fair to all licensees; the most favorable terms will be available to an early licensee. I look forward to discussing such a licensing opportunity with you.

15

In a letter to Apstra dated 16 April 2020, Fisher notes that he had written "on three

16

previous occasions to bring to [Apstra's] attention the relationship between [AOS] and

17

technology developed and patented by Swarm," including Swarm's '004 Patent and '275

18

Patent.[18]   The 16 April 2020 letter included a claim chart mapping claim 11 of the '275

19

Patent to Apstra's AOS. [19]

20

**D.**   **SWARM ATTENDED THREE – AND ONLY THREE - TRADE SHOWS IN CALIFORNIA**

21

22

During 2017 and 2018, Mr. Iñiguez attended a total of three (3) trade shows in

23

California (specifically in May 2017, November 2017, and May 2018) to promote his

24

technology and to seek potential licensees.[20] Other than these three trade shows, neither Mr.

25

Iñiguez, nor any other Swarm representative, has entered the State of California on behalf

26

[18] Dkt. #38, ¶ 37.

27

[19] Dkt. #38, ¶ 38.

28

[20] Iniguez Decl. ¶4.

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

of Swarm at any time or for any purpose whatsoever.[21] Neither Mr. Iñiguez, nor anyone else representing Swarm, had any contact with Juniper or Apstra during the trade shows.[22] Despite Plaintiffs' suggestion to the contrary, no licensing activity took place during the trade shows.[23] In particular, although Swarm displayed a sign at its booth announcing that licenses were available, no licensing discussions ever took place with Juniper, Apstra, or anyone else, no draft license agreements were exchanged (none were available), and no licensing terms were proposed to or discussed with anyone.[24] Simply stated, while Mr. Iñiguez had hoped to generate some interest among potential licensees at the trade shows, his efforts were unsuccessful.[25]

### E.   JUNIPER FILES SUIT AGAINST SWARM

Significantly, not a single communication from Swarm to Juniper, Apstra, or anyone else – whether written or oral – included any demand or deadline, and Swarm never threatened any type of judicial or extra-judicial enforcement action against anyone at any time whatsoever.[26]  Nor has Swarm entered into a single license agreement – whether exclusive or non-exclusive – with anyone within or outside of California.[27]

On 7 May 2020, after abruptly terminating licensing discussions[28] and without any notice to Swarm, Juniper filed its Complaint for Declaratory Judgment of Non-Infringement.[29]

On 7 July 2020, Swarm moved to dismiss the original complaint (or transfer it to

---

[21] Iniguez Decl. ¶ 5; Fisher Decl. ¶ 1.

[22] Iniguez Decl. ¶6.

[23] Iniguez Decl. ¶7.

[24] Iniguez Decl. ¶7.

[25] Iniguez Decl. ¶8.

[26] Iniguez Decl. ¶ 12; Fisher Decl. ¶5.

[27] Iniguez Decl. ¶ 15; Fisher Decl. ¶ 8.

[28] Iniguez Decl. ¶ 9; Fisher Decl. ¶ 2.

[29] Dkt #1.

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

Arizona) based on lack of personal jurisdiction and improper venue.[30]   On 14 September 2020, this Court found the Motion to Dismiss (the "Motion") suitable for decision without oral argument, and vacated the hearing on the Motion as well as the case management conference then scheduled for 17 September 2020.[31]

On 2 April 2021, Juniper and Apstra filed an Amended Complaint, again seeking a declaration of noninfringement and naming Apstra. as an additional plaintiff.[32]   For the same reasons set forth in Swarm's Motion to Dismiss Juniper's original Complaint and as further discussed herein, Swarm hereby moves this Court to dismiss the Amended Complaint (or, in the alternative, transfer it to Arizona).

## III.   ARGUMENT

### A.   PERSONAL   JURISDICTION   REQUIRES   ENFORCEMENT ACTION

In a suit seeking a declaration of non-infringement, Federal Circuit law is applied to determine whether a district court has personal jurisdiction over a non-resident patent owner.[33] As the party seeking to invoke the court's jurisdiction, the burden of demonstrating personal jurisdiction is on the plaintiff.[34] Swarm is an Arizona LLC and operates out of a single facility in Mesa, Arizona. Swarm is therefore not subject to general jurisdiction in the Northern District of California; there is no dispute on this issue.

In a declaratory judgment action for noninfringement, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those

---

[30] Dkt. #18.

[31] Dkt. #29.

[32] Dkt. #38.

[33] *Juniper Networks, Inc. v. SSL Services, LLC*, Case No: C 08-5758 SBA (N.D. Cal. Nov. 13, 2009), citing *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1328 (Fed. Cir. 2008).

[34] *See Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1333 (Fed. Cir. 2001).

8

activities.'"[35]   Merely sending a "cease-and-desist" letter or "infringement" letter is not enough to establish personal jurisdiction.[36]

   In determining whether specific jurisdiction exists, California courts apply the three-part analysis articulated in *Adobe Sys. Inc. v. Tejas Research*:[37] (1) Whether the defendant purposefully directed activities at the forum's residents (by purposefully availing itself of the forum)[38]; (2) whether the claim arises out of (or relates to) those activities; and (3) whether assertion of personal jurisdiction is "reasonable and fair."[39]

   When applying the reasonableness factor in a declaratory judgment action for non-infringement, "not all of a patentee's activities in the forum state" [40] are relevant to personal jurisdiction. Rather, a declaratory judgment claim "'arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit.'"[41]   Consequently, "only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action."[42] The Court must therefore "examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent."[43]

   In *Juniper Networks* (citing *Avocent)*, the Federal Circuit held that cease and desist letters sent to an alleged infringer within the forum, standing alone, are insufficient to

---

[35] *Avocent* at 1332.

[36] *Id*. At 1333.

[37] *Adobe Sys. Inc. v. Tejas Research, Llc.*, No. C-14-0868 EMC (N.D. Cal. Sep. 17, 2014).

[38] *Id*., citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1020 (Fed. Cir. 2009)).

[39] *Id*., citing *AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1361 (Fed. Cir. 2012).

[40] *Id*., citing *Radio Sys. Corp. v. Accession, Inc*., 638 F.3d 785, 789 (Fed. Cir. 2011).

[41] *Id*., (quoting *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd*., 552 F.3d 1324, 1332 (Fed. Cir. 2008)).

[42] *Id*., quoting *Square, Inc. v. Morales*, No. C13-01431 SBA, 2013 WL 6199281, at *4 (N.D. Cal. Nov. 27, 2013) (citing *Avocent*, 552 F.3d 1324, 1332).

[43] *Id*., citing *Autogenomics*, 566 F.3d at 1020.

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

1  establish personal jurisdiction.[44] The Federal Circuit has also held that a patent holder who

2  merely threatens a forum resident with an infringement action is not subject to personal

3  jurisdiction.[45] Instead, the Federal Circuit has "consistently required the defendant to

4  have engaged in `other activities' that relate to the enforcement or the defense of the

5  validity of the relevant patents."[46] Such "other activities" include initiating judicial or

6  extra-judicial patent enforcement within the forum, or entering into an exclusive license

7  agreement or other undertaking which imposes enforcement obligations with a party

8  residing or regularly doing business in the forum.[47] "Extra-judicial" enforcement occurs

9  when a patentee affirmatively impedes the free movement of allegedly infringing goods

10 through commerce, for example by seeking to remove them from a trade show.[48]

11        Even where a patent owner enters into multiple license agreements with forum

12 residents, personal jurisdiction is still lacking unless the agreements also give the patent

13 owner control over the licensee's sales activities.[49] That is, even substantial licensing

14 activities resulting in multiple license agreements with forum residents are insufficient to

15 confer personal jurisdiction unless the agreements create exclusive relationships between

16 the patentee and residents of the forum.[50]

---

18 [44] *Juniper Networks* at 3, citing *Avocent* at 552 F.3d at 1333.

19 [45] *Id.*, citing *Autonomy, Inc. v. Adiscov*, LLC, No. C11-0420 SBA, 2011 WL 2175551, at *3

20 (N.D. Cal. June 3, 2011) ("[T]he act of threatening a party with an infringement lawsuit is, standing alone, insufficient to establish personal jurisdiction.").

21 [46] *Id.*, citing *Avocent* at 1334.

   [47] *Id.*

22 [48] *Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) ("[The patent owner] attempted to have Campbell's allegedly infringing products removed from the convention").

23 [49] See, e.g., *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356, 1366 (Fed. Cir.
24 2006) (noting no personal jurisdiction where the "defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensee's sales activities and, instead, has no dealings with those licensees
25 beyond the receipt of royalty income").

26 [50]See *Autogenomics, Inc. v. Oxford Gene Tech., Ltd*., No. SACV 07-846-MRP (ANx), 2008 WL
27 7071464 (C.D. Cal. Jan. 17, 2008), aff'd 566 F.3d 1012 (Fed. Cir. 2009) ("Extensive authority supports the proposition that other licensing activities with in-state entities, even if substantial, are generally insufficient for specific jurisdiction unless they create exclusive relationships between
28 the patentee and residents of the forum.").

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    SWARM'S    ACTIONS    DO    NOT    SUPPORT    PERSONAL
JURISDICTION**

This Court has consistently refused to exert personal jurisdiction over a patentee – regardless of the extent of his licensing efforts - who has not also either: i) initiated a judicial or extra-judicial enforcement action; ii) entered into an exclusive license agreement; or iii) otherwise imposed enforcement obligations upon a party residing in or regularly doing business  in the forum.   In the present case, the entirety of Swarm's contacts with Juniper consist of a dozen letters and emails surrounding licensing discussions. To the extent Swarm attended trade shows in California, Swarm had no contact with Juniper and no licensing discussions or enforcement activities took place.

Swarm has never signed a license agreement, sent a cease and desist letter, issued an oral or written demand, or commenced any enforcement action of any kind with anyone, inside or outside California. Because Swarm has not performed a single predicate act of the type required to support personal jurisdiction, this Court may not properly exercise personal jurisdiction over Swarm.

Notably, Juniper has not even alleged facts which purport to establish a *prima facie* case of personal jurisdiction. Rather, Juniper simply declares that Swarm's licensing efforts constitute "enforcement activities" which somehow satisfy the "other activities" requirement.  Juniper essentially argues that the extent of Swarm's licensing efforts renders them sufficient to support personal jurisdiction. However, as explained above, mere licensing activity – regardless of its extent - cannot satisfy the due process requirement for personal jurisdiction absent "other activities" which are not present here.

Because this Court lacks personal jurisdiction over Swarm, the Amended Complaint should be dismissed or transferred to Arizona.[51]

---

[51] 28 U.S.C. § 1631 authorizes this Court to transfer the case to the District of Arizona; *APL Co. Pte v. Intergro Inc*, No. 14-CV-00488-JD, 2014 WL 4744410, at *4 (N.D. Cal. Sept. 22, 2014) (Donato, J.) (transferring case under 28 U.S.C. § 1631 when the court lacked personal jurisdiction over the defendant).

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

1

## C.     VENUE IS IMPROPER IN THIS DISTRICT

2          This Court need not address venue specifically, since it lacks personal jurisdiction

3    over Swarm in any event. However, even if venue is proper in the Northern District, venue

4    is more appropriate in Arizona where Swarm resides and is subject to personal jurisdiction.

5          Moreover, "[o]nce the defendant has challenged the propriety of venue in a given

6    court, the plaintiff bears the burden of showing that venue is proper."[52] In evaluating a Rule

7    12(b)(3) motion to dismiss for improper venue, the pleadings need not be accepted as true,

8    and the Court may consider facts outside the pleadings.[53]

9          Venue is proper in:

10               (1) a judicial district in which any defendant resides, if all
                 defendants are residents of the State in which the district is
11               located;

12               (2) a judicial district in which a substantial part of the events or
                 omissions giving rise to the claim occurred, or a substantial part
13               of property that is the subject of the action is situated; or

14               (3) if there is no district in which an action may otherwise be
                 brought as provided in this section, any judicial district in which
15               any defendant is subject to the court's personal jurisdiction with
                 respect to such action.[54]

16
     If venue is improper, then the court "shall dismiss, or if it be in the interest of justice, transfer
17   such case to any district or division in which it could have been brought."[55]

18
           Plaintiffs do not contend that venue is proper under subsection 1.  Nor could they
19
     because Swarm resides only in Arizona.  Instead, Plaintiffs  argue that venue is proper
20
     because "substantial parts of the events" occurred in the Northern District of California and
21
     because Swarm is subject to the Court's personal jurisdiction.  Plaintiffs are mistaken in
22
     this regard.
23

24   _____
     [52] *E.g., Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)*
25   (reversing denial of motion for summary judgment of improper venue).

     [53] *PHH Mortg. Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, No. 15-CV-04711-JD,
26   2016 WL 1588270, at *2 (N.D. Cal. Apr. 20, 2016) (Donato, J.) (finding improper venue and
     transferring the case).

27   [54] 28 U.S.C. § 1391(b).

28   [55] 28 U.S.C. § 1406(a).

1    In a declaratory judgment action for noninfringement, the "substantial part of events

2  giving rise to the claim" is not the "offer to negotiate a non-exclusive license . . . . Rather,

3  'the source of the cause of action for noninfringement is the ownership and existence of the

4  copyright or patent.'"[56] Thus, the substantial part of events is where Swarm is located.[57]

5    Swarm is an Arizona based limited liability company with its place of business in

6  Mesa, Arizona.  Iñiguez developed his invention in Mesa, Arizona.  Swarm owns the

7  Patents-in-Suit in Arizona.  The only contacts with Juniper and/or Apstra in California

8  surround sending a series of letters offering a license.  Thus, a "substantial part of the

9  events" for present purposes occurred in Arizona and not the Northern District of California.

10  Because a substantial part of the events occurred outside the Northern District of California,

11  venue is improper in this District and the Court should dismiss the Amended Complaint for

12  this reason also.

13    As to the last venue provision, Section 1391(b)(3) says venue is proper in "any

14  judicial district in which any defendant is subject to the court's personal jurisdiction with

15  respect to such action."[58]  As explained above, the Court may not properly exercise personal

16  jurisdiction over Swarm and, therefore, venue is improper for this reason also.

17    This action clearly could have (and should have) been filed in the District of Arizona,

18  where Swarm is incorporated.  Iñiguez and his family operate Swarm out of their home in

19  Mesa, Arizona.  The only non-family "employee" of Swarm is John Fisher, who also lives

20  in Arizona.  Thus, the Court should transfer the case to the District of Arizona.[59]

21  **IV.    CONCLUSION**

22    Plaintiffs have not established and cannot establish that Swarm initiated judicial or

23

24  ───────────────

[56] *Broadway Nat'l Bank v. Plano Encryption Techs.*, LLC, 173 F. Supp. 3d 469, 479 (W.D. Tex.
25  2016).

[57] *Id*. at 479-80.; *see also Database Am., Inc. v. Bellsouth Advert. & Pub. Corp.*, 825 F. Supp.
26  1216, 1225 (D.N.J. 1993) (sending a cease-and-desist letter is not a substantial activity giving rise
   to venue).

27  [58] 28 U.S.C. § 1391(b)(3).

28  [59] 28 U.S.C. § 1406(a)

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD

1    extra-judicial patent enforcement activities in California, or that Swarm otherwise imposed

2    enforcement obligations upon a forum resident. Because Swarm is not subject to personal

3    jurisdiction in the Northern District, this Court should either dismiss Juniper's Complaint

4    outright or, alternatively, transfer this matter to Arizona.    No amount of jurisdictional

5    discovery or re-drafting can cure the jurisdictional defects in the Amended Complaint.

6

7    Dated:  April 16, 2021                    Respectfully submitted,

8

9                                             By____/Michael K. Kelly/_____

10                                            **BEUS GILBERT McGRODER  PLLC**
                                               Leo R. Beus
11                                             Michael K. Kelly

12
                                              **STEYER LOWENTHAL BOODROOKAS**
13                                            **ALVAREZ & SMITH LLP**
                                               Allan Steyer
14                                             Donald Scott Macrae
                                               Jill K. Cohoe
15
                                              *Attorneys for Defendant Swarm Technology LLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

SWARM TECHNOLOGY LLC'S MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 5:20-CV-03137-JD