Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Adam A. Allgood (SBN: 295016)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

Counsel for Plaintiffs
Juniper Networks, Inc. and
Apstra Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNIPER NETWORKS INC., and APSTRA INC., <br><br> Plaintiff, <br><br> v. <br><br> SWARM TECHNOLOGY LLC, <br><br> Defendant. | Case No. 3:20-cv-3137-JD <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SWARM'S MOTION TO DISMISS** <br><br> Date: June 10, 2021 <br> Time: 10:00 a.m. <br> Location: Courtroom 11, 19th Floor <br> Judge: Hon. James Donato |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

        A.      Swarm's Contacts with Juniper ...............................................................2

        B.      Juniper's Investigation and Acquisition of Apstra Confirmed That Swarm's
                Licensing Efforts Were Directed at Northern California. .......................4

        C.      Venue Discovery Confirms That Swarm Focused on California. ............5

III.    LEGAL STANDARDS ........................................................................................8

IV.     ARGUMENT .....................................................................................................10

        A.      *Trimble* Confirms That Swarm Relies on Outdated Law. .....................10

        B.      Under *Trimble*, Swarm Is Subject to Personal Jurisdiction...................12

        C.      Venue is Proper. .....................................................................................15

V.      CONCLUSION .................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arris Grp., Inc. v. Brit. Telecommc'ns PLC*,
    639 F.3d 1368 (Fed. Cir. 2011) ............................................................................13

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008) ......................................................................10, 12

*Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006) ............................................................................10

*Bristol-Myers Squibb Co. v. California*,
    137 S. Ct. 1773 (2017) ......................................................................................9, 11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...............................................................................................9

*Californians for Renewable Energy v. E.P.A.*,
    No. 15-cv-3292, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ...........................9

*Campbell Pet Co. v. Miale*,
    542 F.3d 879 (Fed. Cir. 2008) ..............................................................................14

*Chrisman Mill Farms, LLC v. Blazer*,
    No. 5:17-cv-11, 2017 WL 1416793 (E.D. Ky. Apr. 19, 2017) .............................14

*Elecs. For Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003) ..............................................................................9

*Ford Motor Co. v. Montana*,
    141 S. Ct. 1017 (2021) ..................................................................................1, 9, 11

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
    933 F.3d 1302 (Fed. Cir. 2019) ............................................................................11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...............................................................................................9

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*,
    910 F.3d 1199 (Fed. Cir. 2018) ......................................................................11, 14

*Juniper Networks, Inc. v. SSL Servs., LLC*,
    No. 08-cv-5758, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009) ..........................10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
    890 F.3d 995 (Fed. Cir. 2018) ................................................................................8

*North v. Samsung SDI Am., Inc.*,
    No. 5:19-cv-5621, 2020 WL 1984020 (N.D. Cal. Apr. 27, 2020) .........................9

*RC Entm't, Inc. v. Rodriguez*,
    No. 98-cv-8585, 1999 WL 777903 (S.D.N.Y. Sept. 29, 1999) .............................14

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) ...................................................................10, 11, 12

*SanDisk Corp. v. STMicroelecs., Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) .................................................................................13

*SCA Hygiene Prod. v. First Quality Baby Prod., LLC*,
    137 S. Ct. 954 (2017) .................................................................................................11

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003) .................................................................................10

*South Dakota v. Wayfair, Inc.*,
    138 S. Ct. 2080 (2018) ...............................................................................................11

*Treehouse Avatar LLC v. Valve Corp.*,
    No. 15-cv-427, 2017 WL 5564153 (D. Del. Nov. 20, 2017) ....................................15

*Trimble Inc. v. PerDiemCo LLC.*,
    No. 2019-2164, 2021 WL 1898127 (Fed. Cir. May 12, 2021)....................1, 8, 9, 14

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
    848 F.3d 1346 (Fed. Cir. 2017) .................................................................................14

*Zoove Corp. v. StarPound Corp.*,
    No. 10-cv-6131, 2012 WL 3580526 (N.D. Cal. Aug. 17, 2012)................................12

**Statutes**

28 U.S.C. § 1391 ....................................................................................................................15

1

## I.    INTRODUCTION

2       Nine days ago, the Federal Circuit decided *Trimble Inc. v. PerDiemCo LLC*. That opinion

3   confirms that Swarm premised its motion to dismiss on outdated law. The *Trimble* district court

4   had relied on a line of Federal Circuit decisions extending back two decades—the cases Swarm

5   relies on here—to hold that the sending of demand letters didn't create personal jurisdiction.[1] But

6   the Federal Circuit reversed, explaining that recent developments in Supreme Court precedent

7   required it to reexamine these cases. And instead of applying the "other activities" test that

8   Swarm urges, the Federal Circuit applied the "specific" personal jurisdiction test first promul-

9   gated 75 years ago in *International Shoe*. This test focuses "on the nature and extent of 'the de-

10  fendant's relationship to the forum State,'" and whether requiring the defendant to litigate there

11  comports with due process.[2] And in applying it, *Trimble* found that the declaratory-judgment de-

12  fendant was subject to personal jurisdiction in this District because it had "exchanged twenty-

13  two communications" relating to licensing and infringement accusations with the plaintiff in Cal-

14  ifornia (satisfying "minimum contacts"), and didn't make a "compelling" showing of unreasona-

15  bleness (satisfying "fair play and substantial justice").[3]

16      Under *Trimble*, it would likewise be fair to Swarm and comport with due process to allow

17  this case to proceed in this Court. Swarm purposefully engaged in a campaign of licensing de-

18  mands, infringement allegations, and litigation threats against Juniper and Apstra in this state.

19  Juniper's and Apstra's claims arise directly from those contacts. And exercising jurisdiction over

20  Swarm would be reasonable in light of Swarm's choices and actions. Indeed, Swarm accused Ju-

21  niper of infringing six times before this suit, with Swarm's first letter attaching a claim chart

22  comparing 52 Juniper products to Swarm's patents. And Swarm subjected Apstra to similar de-

23  mands. All told, Swarm exchanged 20 pre-suit communications with Juniper and Apstra. And the

24  communications' content also is similar to those in *Trimble*, with Swarm sending a draft licens-

25  ing agreement to Juniper and amplifying its threats as time went on, including by accusing more

26

27  [1] No. 2019-2164, 2021 WL 1898127, at *4 (Fed. Cir. May 12, 2021).

    [2] *Id*. at *3 (quoting *Ford Motor Co. v. Montana*, 141 S. Ct. 1017, 1024 (2021)).

28  [3] *Id*. at *7–8.

products and telling Juniper that it "required" a license.

And other facts justify jurisdiction here even more strongly than in *Trimble*. The *Trimble* defendant argued that none of its officers or employees had ever traveled to the District for business and that it hadn't engaged in similar communications with other District residents.[4] By contrast, Silicon Valley is where Swarm has focused its sales, funding, and licensing efforts.[5] The ███████████████████████████████████████████, where over the course of nine days Swarm demonstrated its products, sought potential investors, and displayed a sign saying "PATENTS AVAILABLE FOR LICENSING." Swarm also engaged in licensing, enforcement, and validity-related communications with ██████████████████. Swarm's communications with San Jose-based Cisco alone ████████████████████, and ████████████████████████████████████ are in this District. The ████████████████████—Juniper—is here as well. So too are all █████████████████████████████████ And through its attempts to monetize its patents and secure capital, Swarm has ███████████████████████

Thus, it'd be fair and reasonable to hold Swarm subject to personal jurisdiction in this District. And Swarm's tacked-on Rule 12(b)(3) venue argument, copied nearly verbatim from its prior motion to dismiss, continues to lack merit because venue is proper under § 1391(b)(1).

## II.   FACTUAL BACKGROUND

### A.   SWARM'S CONTACTS WITH JUNIPER

July 5, 2019: Swarm's First Infringement Accusation:[6] On July 5, 2019, Juniper received a letter from John Fisher, Swarm's IP Licensing Consultant, asserting that Swarm was seeking to license its '777 and '004 patents "to a number of hardware and software providers."[7] The letter

---

[4] *E.g.*, Fed. Cir. No. 2019-2164, Doc. 58-2 at Appx754, Appx770–71 (¶ 7).

[5] The limited discovery that Swarm has provided confirms the complaint's allegations of this. *See* Dkt. #38 at ¶ 18.

[6] About a year earlier, on July 16, 2018, Swarm also sent Juniper a letter ███████████ ████████ Ex. A. Juniper didn't respond at that time. (Unless otherwise specified, citations to "Ex. _" refer to exhibits attached to the accompanying declaration of R. William Sigler.)

[7] Dkt. #18-4 at 3 (Ex. 1 to 7-14-20 Fisher Decl.).

asserted that this was a "licensing opportunity" that "should not be construed as an accusation of infringement," but it also enclosed a claim chart purporting to "demonstrate[] the correlation between claim 1 of the '004 patent and your [Juniper's] Zero-Touch Provisioning."[8] And the claim chart listed 52 Juniper products allegedly "using Zero Touch Provisioning," with a "complete list of model numbers" in an attached appendix.[9]

August 13, 2019: Swarm's Second Infringement Accusation: On August 9, 2019, Juniper's Director of Litigation, David Saunders, responded to Swarm and explained that Juniper had begun analyzing Swarm's patents and claim chart.[10] Juniper also asked Swarm to clarify the definitions of several claim terms and further explain the basis for its belief that Juniper practices claim 1 of the '004 patent. Four days later, Swarm responded to Juniper's questions, and predicted that Juniper's "technical people" would "confirm the correlation between the Juniper devices and Swarm's '004 patent," as Swarm's previously sent claim chart purportedly showed.[11]

September 13, 2019: Swarm's Third Infringement Accusation: Juniper then asked additional questions about certain claims.[12] But Swarm's September 13, 2019 reply included an unsolicited, draft licensing agreement, with a section purporting to release Juniper from liability for infringement.[13] And in a follow-up email referencing this draft agreement, Swarm further attempted to pressure Juniper into taking a license.[14]

November 6, 2019: Swarm's Fourth Infringement Accusation: After evaluating the materials Swarm had provided, on October 24, 2019, Juniper told Swarm that it did not "believe that a license is required because our products do not use the technology claimed by Swarm Technology's patents."[15] Swarm's November 6, 2019 reply email argued that Swarm had answered all of

---

[8] *Id.*; Dkt. #26-2 (enclosed claim chart).

[9] Dkt. #26-2; *see also* Dkt. #38 at ¶ 26 (listing accused Juniper products).

[10] Dkt. #18-4 at 6–7 (Ex. 2 to 7-14-20 Fisher Decl.).

[11] *Id.* at 9 (Ex. 3 to 7-14-20 Fisher Decl.).

[12] *Id.* at 14 (Ex. 4 to 7-14-20 Fisher Decl.).

[13] *Id.* at 20 (Ex. 5 to 7-14-20 Fisher Decl.).

[14] Dkt. #26-3.

[15] Dkt. #18-4 at 25 (Ex. 6 to 7-14-20 Fisher Decl.); *see also* Dkt. #26-3 (Juniper noting this belief was consistent with Swarm's earlier statement that it wasn't accusing Juniper of infringement).

Juniper's questions about claim terms, and asserted that Juniper had so far "failed to express any position that would prevail in a Markman hearing."[16] Swarm also noted that it had been in licensing communications with "several other companies – your competitors."[17] And Swarm expressly disagreed with Juniper's belief that a license was not required. Mr. Fisher stated: "Although you have said that Juniper does not require a license, I have to disagree."[18]

December 3, 2019: Swarm's Fifth Infringement Accusation: Juniper agreed to discuss Swarm's accusations on a call. And on that December 3, 2019 call between Messrs. Saunders and Fisher, Mr. Fisher again claimed Swarm was talking with Juniper's competitors. Mr. Fisher also reiterated the threat of an infringement action, as he stated that Swarm was in contact with litigation firms and was attempting to secure litigation financing to enforce its patents.[19]

April 6, 2020: Swarm's Sixth Infringement Accusation: On April 6, 2020, Swarm again emailed Juniper, repeating its belief that Juniper was required to license Swarm's patents and identifying Swarm's recently issued '275 patent.[20] Swarm also attached another claim chart, this time alleging similarities between the '275 patent and Juniper's products.[21] And on May 4, 2020, Swarm resent a revised version that charted two additional claim elements.[22] Three days later, Juniper filed this declaratory judgment action.[23]

**B.  JUNIPER'S INVESTIGATION AND ACQUISITION OF APSTRA CONFIRMED THAT SWARM'S LICENSING EFFORTS WERE DIRECTED AT NORTHERN CALIFORNIA.**

In the original complaint, Juniper alleged that Swarm had "communicated and conducted licensing activities with other companies in this District," including exhibiting at trade shows in Santa Clara, where it displayed a sign saying "PATENTS AVAILABLE FOR LICENSING."[24]

---

[16] Dkt. # 18-4 at 27 (Ex. 7 to 7-14-20 Fisher Decl.).

[17] *Id.*

[18] *Id.*

[19] Dkt. #26-1 at ¶ 5.

[20] Dkt. # 18-4 at 29 (Ex. 8 to 7-14-20 Fisher Decl.).

[21] Dkt. #26-4.

[22] Dkt. #26-5.

[23] *See* Dkt. #1.

[24] *See id.* at ¶¶ 11–12 (further noting Swarm's founder gave an interview at one event where he discussed Swarm's patents, licensing, and hiring a licensing consultant).

Yet, Swarm's first motion to dismiss on jurisdictional and venue grounds, filed on July 14, 2020, omitted significant details on these and other Swarm activities directed at California residents.[25] And Swarm refused Juniper's request for venue and jurisdictional discovery.[26] Thus, Juniper's response explained that, through its own investigation, Juniper had uncovered that Swarm had attempted to pressure at least two other companies in this District into taking a license (Cisco and Arista), and had executed a non-disclosure agreement relating to licensing with a third (RPX).[27]

While that motion was pending, Juniper completed its acquisition of Menlo Park-based Apstra, and learned that Swarm had also targeted Apstra.[28] For instance, in an April 16, 2020 letter, Swarm's licensing consultant stated that he had written "on three previous occasions to bring to [Apstra's] attention the relationship between [Apstra's AOS software] and technology developed and patented by Swarm," including Swarm's '004 Patent and '275 Patent.[29] This letter also stated that Swarm had already "begun licensing discussions with other companies."[30] And it attached a claim chart purporting to correlate claim 11 of the '275 Patent and AOS.[31]

## C.   VENUE DISCOVERY CONFIRMS THAT SWARM FOCUSED ON CALIFORNIA.

On March 1, 2021, this Court granted Juniper's request to file an amended complaint adding Apstra as co-plaintiff, and terminated the previous motion to dismiss without prejudice.[32] And after the amended complaint was filed, on April 16, 2021, Swarm filed another motion to

---

[25] *See* Dkt. #18; Dkt. #18-2 (five-paragraph declaration denying any "licensing activity took place" at trade shows, ignoring allegations of complaint and other California contacts).

[26] *See* Dkt. #26 at 14; Dkt. # 26-9 at ¶¶ 7–8; Dkt. #26-10; Dkt. #26-11.

[27] *See* Dkt. #26-6 (Swarm letter to Cisco); Dkt. #26-7 (Swarm letter to Arista); Dkt. #26-8 (RPX Agreement); Dkt. #26-1 ¶¶ 8–12 (providing further detail on results of Juniper's investigation).

[28] *See* Dkt. #38 at ¶¶ 8, 36.

[29] Dkt. #36-3. *E.g.*, Ex. B at 190 ("We sent a letter to Apstra presenting a business opportunity, and as you showed before, we sent three letters, and we got no response."). This letter also referenced a prior letter enclosing a claim chart mapping Apstra products to the '004 patent, but Swarm didn't produce that letter and Apstra hasn't located it.

[30] Dkt. #36-3.

[31] A section of the chart entitled "Products currently compatible with [AOS] 3.0" states that "AOS works with … established switch hardware vendor[s]," including Juniper, and "switch operating systems," including Junos OS.

[32] Dkt. #37; *see also* Dkt. #36 (explaining that Swarm opposed Juniper's request to amend, even though Juniper proposed a stipulation to avoid Swarm needing to refile its motion).

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

dismiss, again relying on declarations that didn't detail its contacts with California, or provide any means for comparison with any other forum.[33] But this time, Swarm agreed to limited personal-jurisdiction and venue discovery.[34] And that discovery—particularly the produced documents and the testimony of Swarm's corporate representative, Mr. Iniguez—provided a fuller picture of Swarm's extensive campaign to license its patents in this District.

Initially, Swarm provided an interrogatory response stating that it sent letters to "████████████████████████████████████████████████████████████"[35] But the documents Swarm produced and Mr. Iniguez's deposition showed that Swarm's licensing efforts went far beyond that. Rather, Swarm engaged in ███████████████████████████ in which Swarm contacted ████████████████████████████████████████ Swarm's attorneys sent letters to ████████████████████████████████████████████████, among others.[36] Each letter stated that Swarm was "████████████████████████████████████████████████████████████████████████████████[37]████████████████████████████████████████████████████[38] Swarm then expanded its list of targets to include ████████████████ All told, there were at least ████████████████

---

[33] *See* Dkt. #39 (moving under Rule 12(b)(2) and (3)); Dkt. #39-1; Dkt. #39-2.

[34] As detailed further below, Swarm redacted significant portions of certain documents, without a basis to do so, and may have withheld some information regarding its contacts with other states.

[35] *See* Ex. C at 3.

[36] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

[37] Ex. D.

[38] Ex. A (letter to Juniper); Ex. F (████████████████████████████████████).

████████████████████████████████████████, including:

- 15 letters or emails from Swarm to Juniper or Apstra, along with five letters or emails from Juniper in response, and one call, as detailed above;

- ██████████████ from Swarm to Cisco, ████████████████████████████, and ██████████████████ in response;[39]

- ██████████████████ from Swarm to Arista, and ████████████████████████;[40]

- █████████████████████████████████████████████████████████[41]

- █████████ exchanged with ████[42]

In the latter campaign, Swarm sent ████████████████████████████████████████████████[43] ██████████████████████████████████████████████████████████████████[44]

Swarm also disclosed in its interrogatory responses that RPX, a San Francisco-based company that buys and licenses patents, ████████████████████████████████████████████████████████████████████████████████████████████"[45] Again, though, Swarm's documents and deposition showed that this was inaccurate. Swarm signed a non-disclosure agreement with RPX that includes a forum-selection clause requiring any disputes relating to it to be "heard and determined exclusively by the Superior Court of the State of California for the County of San Francisco or the United States District Court for the Northern District of California located in the County of San Francisco."[46]

████████████████████████████████████████████████████████████████

---

[39] Ex. G.

[40] Ex. H.

[41] *See* Ex. I.

[42] *See* Ex. J.

[43] Ex. B at 208 ██████████████████████████████████████████████████

[44] *Id*. at 96.

[45] *See* Ex. C at 2.

[46] Dkt. #26-8 at 3.

[REDACTED].[47]

Discovery also confirmed that [REDACTED]—where Swarm demonstrated its technology, talked to potential investors, and displayed a sign saying "PATENTS AVAILABLE FOR LICENSING"—[REDACTED].[48] After exhibiting at these trade shows, Swarm sent [REDACTED].[49]

[REDACTED].[50]

[REDACTED].[51]

## III.   LEGAL STANDARDS

Personal Jurisdiction: A plaintiff need only make a prima facie case of personal jurisdiction to survive a Rule 12(b)(2) motion, unless the court holds an evidentiary hearing.[52] Because Juniper filed suit in California, Swarm is subject to personal jurisdiction in this Court so long as it doesn't violate due process.[53] Thus, under *International Shoe Co. v. Washington*, it must have

---

[47] Ex. K. Swarm redacted the entire "[REDACTED]" document except for the title, due to purported confidentiality and despite there being a protective order in place.

[48] Ex. B at 168–69, 176–77. [REDACTED] *See id*. at 168–69.

[49] *Id*. at 179–80 (referring to [REDACTED]

[50] Ex. L (Pitch Deck) at 15; *see also* Ex. M (other documents Swarm [REDACTED]). Swarm also redacted significant portions of the Pitch Deck and these other documents.

[51] Ex. N. Swarm also entered an agreement with [REDACTED], but has produced only a redacted version. It too may require that disputes be heard in the District.

[52] *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda*., 890 F.3d 995, 999 (Fed. Cir. 2018) (noting Federal Circuit reviews personal jurisdiction in patent-infringement cases under its precedent).

[53] *Trimble*, 2021 WL 1898127, at *3 (explaining that whether jurisdiction exists over an out-of-state defendant involves two inquires, but because California's long-arm statute permits service

"minimum contacts" with the forum such that maintaining suit there doesn't offend "traditional notions of fair play and substantial justice."[54]

Two months ago, in *Ford Motor Co. v. Montana*, the Supreme Court further explained that the contacts required for "specific" personal jurisdiction, "often go by the name 'purposeful availment.'"[55] That is, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State,"[56] and the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum.[57] And for "fair play and substantial justice," the Supreme Court has identified five broad considerations that are relevant: (1) "the burden on the defendant," (2) "the forum State's interest," (3) "the plaintiff's interest," (4) "the interstate judicial system's interest," and (5) the "shared interest of the several States in furthering fundamental substantive social policies."[58] And to defeat jurisdiction, a defendant that purposefully directed activities at forum residents has the burden presenting a "compelling case" that such considerations would render jurisdiction unreasonable.[59]

<u>Venue</u>: A Rule 12(b)(3) motion to dismiss for improper venue hinges on the applicable venue statute.[60] This Court may consider facts outside the pleadings, but "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."[61]

---

of process to the limits of the Due Process Clauses of the U.S. Constitution, these two inquiries fold into one: whether the exercise of jurisdiction would be consistent with due process).

[54] 326 U.S. 310, 316 (1945); *accord Ford*, 141 S. Ct. at 1024.

[55] 141 S. Ct. at 1024 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[56] *Id.* (internal quotation marks and alteration omitted); *see also id.* at 1025 (The contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there.").

[57] *Id.* at 1025 (quoting *Bristol-Myers Squibb Co. v. California*, 137 S. Ct. 1773, 1786 (2017)).

[58] *Trimble*, 2021 WL 1898127, at *4 (quoting *Burger King*, 471 U.S. at 475).

[59] *Id.*; *accord Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003).

[60] *See, e.g.*, *Californians for Renewable Energy v. E.P.A.*, No. 15-cv-3292, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018).

[61] *E.g.*, *id.*; *accord North v. Samsung SDI Am., Inc.*, No. 5:19-cv-5621, 2020 WL 1984020, at *6 (N.D. Cal. Apr. 27, 2020).

1  **IV.    ARGUMENT**

2      A.    *TRIMBLE* CONFIRMS THAT SWARM RELIES ON OUTDATED LAW.

3          For two decades, in a line of cases beginning with *Red Wing Shoe Co. v. Hockerson-*

4  *Halberstadt, Inc.*, the Federal Circuit had held that letters asserting patent rights, by themselves,

5  couldn't satisfy the "fair play and substantial justice" prong of the Due Process inquiry.[62] For

6  example, in *Avocent Huntsville Corp. v. Aten International Co.* (the case Swarm principally re-

7  lies on here), the Federal Circuit had held that "letters threatening suit for patent infringement

8  sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction.'"[63]

9  And based on "policy considerations unique to the patent context," *Red Wing*, *Avocent*, and

10  other Federal Circuit cases required declaratory-judgment plaintiffs to show that a defendant

11  engaged in "'other activities' directed at the forum and related to the cause of action."[64] That is,

12  the "other activities" had to "relate in some material way to the enforcement or the defense" of

13  the same patents, though they needn't have been directed at the plaintiff.[65] And in applying this

14  requirement, courts typically limited their consideration to whether the defendant had initiated

15  "judicial or extra-judicial patent enforcement" in the forum, or had entered into an "exclusive

16  license agreement" imposing enforcement obligations on a forum resident.[66]

17          But by 2018, more recent Federal Circuit and Supreme Court cases contradicted, or at

18  least questioned, *Red Wing* and its progeny. For instance, the Federal Circuit's decision in *Jack*

19  *Henry & Associates, Inc. v. Plano Encryption Technologies LLC*, stated:

20  ───────────────────

[62] 148 F.3d 1355, 1361 (Fed. Cir. 1998).

21  [63] 552 F.3d 1324, 1333 (Fed. Cir. 2008) (quoting *Red Wing*, 148 F.3d at 1361). *Avocent* is the
22  only case Swarm cites *passim*. And the district court cases Swarm cites rely on *Avocent* and/or
   *Red Wing. E.g.*, Dkt. #39 at 1 n.5 (quoting *Juniper Networks, Inc. v. SSL Servs., LLC*, No. 08-cv-
23  5758, 2009 WL 3837266, at *3 (N.D. Cal. Nov. 16, 2009) ("In *Avocent*, the Federal Circuit held
   that sending cease and desist letters …, standing alone, is insufficient.")).

24  [64] *Avocent*, 552 F.3d at 1333 (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194,
   1202 (Fed. Cir. 2003) ("We have decided that under [fair play and substantial justice] the send-
25  ing of letters threatening infringement litigation is not sufficient to confer personal jurisdiction")
   and citing *Red Wing*, 148 F.3d at 1361 (Fairness demands a patentee be insulated from personal
26  jurisdiction if its only contacts "were efforts to give proper notice of its patent rights.")).

   [65] *Id.* at 1334, 1337.
27
   [66] *Id.* at 1337 (concluding "mere acts" of making, selling, or importing products, even if covered
28  by relevant patent, don't qualify); *accord Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*,
   444 F.3d 1356, 1366 (Fed. Cir. 2006) (finding "multiple non-exclusive licensees" insufficient).

[Defendant] PET cites *Red Wing Shoe* and *Avocent* for the proposition that patent enforcement letters can never provide the basis for jurisdiction in a declaratory judgment action. *Red Wing Shoe* and *Avocent* did not create such a rule, and doing so would contradict the [Supreme Court's] directive to "consider a variety of interests" in assessing whether jurisdiction would be fair.[67]

And just nine days ago, in *Trimble*, the Federal Circuit issued a more sweeping abrogation of its *Red Wing* line of cases, explaining that three recent developments in Supreme Court precedent had required their reexamination. First, the Supreme Court had "made clear that the analysis of personal jurisdiction cannot rest on special patent policies."[68] Second, it had "held that communications sent into a state may create specific personal jurisdiction, depending on the nature and scope of such communications."[69] And third, it had "established that a broad set of a defendant's contacts with a forum are relevant" to this analysis.[70]

In view of these tenets, *Trimble* reaffirmed what the Federal Circuit had stated in *Jack Henry*: there's "no general rule that demand letters can never create specific personal jurisdiction."[71] And it then applied the longstanding *International Shoe* test for specific personal jurisdiction. As the Federal Circuit concluded, the "purposeful availment" portion was satisfied, since the declaratory-judgment defendant had "exchanged twenty-two communications" with the plaintiff in California, and had "amplified its threats of infringement as the communications continued, asserting more patents and accusing more of [plaintiff's and its subsidiary's] products."[72] And after analyzing the five *Burger King* factors, the Federal Circuit found that "fair play and substantial justice" also was satisfied, as the defendant hadn't made "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[73]

Thus, *Red Wing* and other cases may still be correctly decided on their particular facts,

---

[67] 910 F.3d 1199, 1206 (Fed. Cir. 2018) (quoting *Bristol-Myers*, 137 S. Ct. 1773); *accord Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1312 (Fed. Cir. 2019); *see also Jack Henry*, 910 F.3d at 1207 (Stoll, J., and Wallach, J., additional views) ("It is time for this Court to revisit *Red Wing* and its progeny.").

[68] *Id.* at *5 (citing *SCA Hygiene Prod. v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017)).

[69] *Id.* at *5 (citing *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018)).

[70] *Id.* at *6 (citing *Ford*, 141 S. Ct. 1017).

[71] *Id.*

[72] *Id.* at *7

[73] *Id.* at *8.

but the Federal Circuit abrogated them to the extent they conflict with *Trimble* and recent Supreme Court precedent.[74] To be sure, *Avocent* includes statements that run contrary to every development *Trimble* identified, since it relies on "policy considerations unique to the patent context," states that "letters threatening suit" don't create personal jurisdiction, and limits its consideration of relevant circumstances to qualifying "other activities" (instead of applying *Burger King* and requiring the defendant to make a "compelling" showing of unfairness).[75] Rather than rely on such statements, many of which Swarm quotes in its brief, this Court thus should apply the longstanding test for specific personal jurisdiction, consistent with *Trimble*.

### B. UNDER *TRIMBLE*, SWARM IS SUBJECT TO PERSONAL JURISDICTION.

As this District explained in *Zoove Corp. v. StarPound Corp.*, the "central purpose of a declaratory action is often to clear the air of infringement charges."[76] Hence, such an action "relates to" a "letter implying infringement of the [relevant] patent."[77] Indeed, even before *Trimble*, Swarm's communications with Juniper and Apstra satisfied the "minimum contacts" prong of the due process inquiry, as *Avocent* explained that "[i]n many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter.'"[78] And Swarm doesn't dispute that minimum contacts are satisfied here.

Indeed, although Swarm repeatedly denies that its communications qualify as cease-and-desist letters, Swarm dropped the argument in its previous motion that there's no dispute between the parties qualifying as an Article III "case or controversy." After all, the Federal Circuit has repeatedly held that specific threats and magic words aren't required, and a defendant can't escape jurisdiction by denying that it has made an infringement accusation, when the rest of the

---

[74] *Red Wing*, in which defendant only sent three letters to the plaintiff, "remains correctly decided with respect to the limited number of communications." *Id.* (noting this is "consistent with the Supreme Court's instruction to treat 'isolated or sporadic [contacts] differently'").

[75] 552 F.3d at 1333.

[76] No. 10-cv-6131, 2012 WL 3580526, at *7 (N.D. Cal. Aug. 17, 2012).

[77] *Id.*

[78] 552 F.3d at 1337.

facts show its intent to enforce its patents.[79] Here, Swarm sent multiple claim charts to both Juniper and Apstra, suggested Juniper wouldn't fare well in "a Markman hearing," and disagreed with the statement that "Juniper does not require a license"—facts the Federal Circuit has previously found to give rise to a declaratory judgment action.[80] And, contrary to how it portrays its communications with Juniper and Apstra here, Swarm has relied on the same correspondence elsewhere as a basis for alleging notice and willful infringement. In its Arizona patent infringement action against Amazon.com, Swarm contends that a July 16, 2018 letter to Amazon—the same letter that it sent Juniper and other California companies—put Amazon on notice of Swarm's patents and provides a basis for willful infringement of those patents.[81]

Beyond that, Swarm has "purposefully directed its activities" to residents of the forum—e.g., Sunnyvale-based Juniper and Menlo Park-based Apstra.[82] Swarm also has sought to license its patents during three events in the District. During an interview with *IWCE's Urgent Communications* at the 2018 IoT Expo in Santa Clara, Mr. Iniguez said that Swarm had been issued patents, was planning on licensing them, and had hired a licensing consultant.[83] At that Expo itself, a screen that Swarm set up at its booth announced "PATENTS AVAILABLE FOR LICENSING."[84] And before the 2017 IoT Expo, Mr. Iniguez promoted Swarm as a "technology licensing company," and said that Swarm would exhibit its technology at the Expo.[85] And at his recent

[79] *E.g.*, *Arris Grp., Inc. v. Brit. Telecommc'ns PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011); *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1381–83 (Fed. Cir. 2007).

[80] *E.g.*, *SanDisk*, 480 F.3d at 1381 (also not crediting defendant's "unequivocal statement that '[it] has absolutely no plan whatsoever to sue,'" since its other actions suggested differently).

[81] *See* Dkt. #1 in *Swarm Technology, LLC v. Amazon.com, Inc.*, No. 2:21-cv-438 (D. Ariz.) at ¶¶ 96–97 (relying on July 16, 2018 letter as evidence that Amazon was "provided written notice" of Swarm's patents and thus it's "infringement may be willful").

[82] For instance, Swarm addressed its initial letter to Juniper's headquarters at 1133 Innovation Way, Sunnyvale, CA. *See also* Dkt. #26-1 at ¶ 2 (noting ~ 2,200 employees work at Juniper's headquarters, where the vast majority of Juniper's products (including those named in Swarm's charts) are researched, designed, developed, tested, updated, marketed, and financed).

[83] Previously at http://www.urgentcomm.com/2018/05/20/swarm-technology-alfonso-iniguez-demos-intent-based-autonomy-technology-for-coordinating-drones/. This video was taken down after Juniper filed this lawsuit.

[84] Ex. B at 176; *see also* YouTube, https://www.youtube.com/watch?v=tRe-z6SZKnE, at 1m47s (showing sign); *id.* at 1m21s (Pablo Garcia, another Swarm representative, telling prospective customer "we have intellectual property on Swarm…we own the patents for Swarm").

[85] *E.g.*, Twitter (Nov. 6, 2017), https://twitter.com/iAlfonso/status/927632332650979328.

deposition, as detailed above, he confirmed that Swarm ███████████████████
███████████████████████████████████████████████████

In addition, Swarm consistently reminded Juniper that it was engaged in licensing discussions with Juniper's competitors, most of whom are located in this District. ███████████
████████████████████████████████████████

███████████ Swarm also entered into contracts with RPX and ███████████, Northern California-based organizations, that include ████████████████████████████████
████████████. Thus, this District appears to be the epicenter of Swarm's licensing efforts. Even pre-*Trimble*, the law suggested such efforts would've been sufficient to confer jurisdiction.[86] Post-*Trimble*, they certainly are, given that the *Trimble* defendant denied ever traveling to this District, or engaging in similar communications with other District residents.[87]

And Swarm hasn't made "a compelling case" that jurisdiction is unreasonable.[88] Under *Burger King* factor one, this is the only district Swarm has traveled to for business, indicating the burden on the defendant isn't too great.[89] Factors two and three heavily favor exercising jurisdiction, as this District has a "definite and well-defined interests in commerce and scientific development," and "substantial interest in protecting its residents," including Juniper and Apstra, "from unwarranted claims of patent infringement."[90] And the remaining factors are neutral.

Accordingly, under *Trimble* and the Supreme Court precedents it applies, Swarm is subject to personal jurisdiction here.

---

[86] *See, e.g., Jack Henry, supra*; *Chrisman Mill Farms, LLC v. Blazer*, No. 5:17-cv-11, 2017 WL 1416793, at *8 (E.D. Ky. Apr. 19, 2017) ("This would be a closer case if Kentucky became the *de facto* center of enforcement" or defendant had traveled there, despite lack of "exclusive agreement."); *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017) (noting "in-person visits" are "significant," and finding this plus letters sufficient); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction where defendant engaged in non-judicial enforcement at convention); *RC Entm't, Inc. v. Rodriguez*, No. 98-cv-8585, 1999 WL 777903, at *3 (S.D.N.Y. Sept. 29, 1999) (finding jurisdiction under NY longarm statute because defendant contacted ASCAP (analogous to RPX here) seeking song publishing royalties).

[87] *E.g.*, Fed. Cir. No. 2019-2164, Doc. 58-2 at Appx754, Appx770–71 (¶ 7).

[88] *See generally Trimble*, 2021 WL 1898127, at *8.

[89] *See id.* (finding not dispositive where defendant was "small company with limited resources").

[90] *Id.* at *8.

1

### C.     VENUE IS PROPER.

2

As Swarm acknowledges, venue in a declaratory judgment of non-infringement action is

3

governed by the general venue statute, 28 U.S.C. § 1391.[91] It states, in § 1391(b)(1), that a civil

4

action may be brought in "a judicial district in which any defendant resides, if all defendants are

5

residents of the State in which the district is located." And as Juniper explained in response to

6

Swarm's previous motion, under 28 U.S.C. § 1391(c)(2) and for "all venue purposes," Swarm is

7

"deemed to reside … in any judicial district" in which it's subject to personal jurisdiction.

8

Nonetheless, Swarm repeats nearly verbatim the same arguments it made in its July 2020

9

motion about other subsections of the venue statute—all that's changed is that "Juniper" is re-

10

placed with "Plaintiffs." For instance, Swarm continues to assert that "Plaintiffs do not contend

11

that venue is proper under subsection 1. Nor could they because Swarm resides only in Ari-

12

zona."[92] But that wasn't true in July 2020, and it's not true now either. Consistent with the origi-

13

nal and amended complaint, venue is proper under § 1391(b)(1). And although Juniper previ-

14

ously cited § 1391(c) and corrected Swarm's mistaken assertion,[93] Swarm still provides no legal

15

basis for ignoring § 1391(c)(2)'s residence provision.

16

## V.     CONCLUSION

17

Swarm purposefully engaged in a campaign of licensing demands, infringement allega-

18

tions, and litigation threats against Juniper and Apstra, as well as ███████████████

19

██. And Swarm focused its efforts to sell product and secure funding on this District, exhibit-

20

ing at three trade shows in Santa Clara, communicating with ████████████████████████

21

████████████████████████████████████. Given all this, it'd be fair

22

and reasonable to allow this case to proceed against Swarm. Indeed, under *Trimble* and the Su-

23

preme Court precedents it applies, Swarm is subject to personal jurisdiction in this District. And

24

venue thus is proper as well. As such, Swarm's motion should be denied.

25

[91] Dkt. #39 at 12; *see also Treehouse Avatar LLC v. Valve Corp.*, No. 15-cv-427, 2017 WL

26

5564153, at n.3 (D. Del. Nov. 20, 2017) (*TC Heartland* addressed § 1400 and didn't alter this.).
[92] Dkt. #39 at 12.

27

[93] *E.g.*, Dkt. #26 at 14 n.81 ("Swarm, however, does not cite any legal basis for ignoring the resi-

28

dence provision in § 1391(c)(2). And, in any event, Juniper's complaint expressly alleged that 'Venue is proper in this District based on 28 U.S.C. §§ 1391(b)–(c).'").

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Dated: May 21, 2021

By: */s/ R. William Sigler*
Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Adam A. Allgood (SBN: 295016)
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## **CERTIFICATE OF SERVICE**

Per Local Rule CV-5(5), I hereby certify that on May 21, 2021, I caused the foregoing document to be filed under seal via the Court's CM/ECF system and served on all counsel of record by email.

> */s/ R. William Sigler*
> R. William Sigler