1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    JUNIPER NETWORKS INC., et al.,           Case No.  3:20-cv-03137-JD

8                  Plaintiffs,
                                              **ORDER RE MOTION TO DISMISS**
9          v.
                                              Re: Dkt. No. 39
10   SWARM TECHNOLOGY LLC,

11                 Defendant.

12         Juniper Networks, Inc. and Apstra, Inc., seek a declaration of noninfringement of patents

13   owned by Swarm Technology LLC.  Dkt. No. 38.  Swarm is an Arizona limited liability company

14   with a principal place of business in Arizona.  *Id*. at ¶ 9.  Juniper and Apstra are Delaware

15   corporations with principal places of business in California.  *Id*. at ¶¶ 7-8.  Apstra is a wholly

16   owned subsidiary of Juniper.  *Id*. at ¶ 8.

17         Swarm has asked to dismiss the first amended complaint, Dkt. No. 38, under Federal Rules

18   of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue).  Dkt.

19   No. 39.  In the alternative, Swarm asks for a transfer to the District of Arizona.  Dkt. No. 39 at 13.

20   The parties have engaged in venue and jurisdictional discovery in connection with Swarm's

21   motion.  Dkt. No. 42.  Dismissal and transfer are denied.

22                                    **BACKGROUND**

23         The salient facts are straightforward.  In July 2019, Swarm sent a letter to Juniper in

24   California to "highlight a licensing opportunity" for U.S. Patent Nos. 9,852,004 (the '004 patent)

25   and 9,146,777 (the '777 patent), with the disclaimer that this was "not and should not be construed

26   as an accusation of infringement."  Dkt. No. 18-4 at ECF 3.  Even so, the letter presented a claim

27   chart to "demonstrate the correlation between claim 1 of the '004 patent and [Juniper's] Zero

28

United States District Court
Northern District of California

1   Touch Provisioning." *Id.*  Juniper and Swarm exchanged several emails discussing their stances
2   on the claim chart.  *Id*. at ECF 6-18.

3         In September 2019, Swarm sent a draft licensing agreement to Jupiter in California.  *Id*. at
4   ECF 18-23.  Juniper told Swarm that it did not believe a license was necessary.  Swarm disagreed,
5   and Juniper and Swarm had a call in December 2019 to discuss the situation.  *Id*. at ECF 25-27;
6   Dkt. No. 26-1 at ¶ 5.  Nothing appears to have happened after that until April 2020, when Swarm
7   advised Juniper about Swarm's newly issued U.S. Patent No. 10,592,275 (the '275 patent).  Dkt.
8   No. 18-4 at ECF 29.  Swarm reiterated its belief that Juniper needed a license for the '004 patent
9   and attached a new claim chart comparing the '275 patent to Juniper's products.  *Id*.  Swarm also
10  sent Juniper a revised claim chart that presented additional claim elements.  *Id*. at ECF 31.  This
11  declaratory relief action ensued.

12        Swarm had similar communications with Apstra in California.  *See* Dkt. No. 36-3.  Apstra
13  was joined as a party to this action following Juniper's acquisition of Apstra.  *See* Dkt. Nos. 36
14  and 38.

15                                    **DISCUSSION**

16  **I.    PERSONAL JURISDICTION**

17        The Federal Circuit has concluded that the question of personal jurisdiction is "intimately
18  involved with the substance of the patent laws," and so Federal Circuit case law applies rather than
19  the case law of the regional circuits.  *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152
20  (Fed. Cir. 2021) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016
21  (Fed. Cir. 2009).  When a claim of personal jurisdiction "is based on affidavits and other written
22  materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie*
23  showing that defendants are subject to personal jurisdiction."  *Elecs. for Imaging, Inc. v. Coyle*,
24  340 F.3d 1344, 1349 (Fed. Cir. 2003).  For a motion to dismiss, "a district court must accept the
25  uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in
26  the affidavits in the plaintiff's favor."  *Id*.

27        "Determining whether jurisdiction exists over an out-of-state defendant involves two
28  inquiries:  whether a forum state's long arm statute permits service of process and whether

United States District Court
Northern District of California

2

assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017.  The Federal Circuit has concluded that California's long-arm statute is coextensive with the limits of due process.  *See* Cal. Gov. Code § 410.10; *see also Trimble*, 997 F.3d at 1152; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  Consequently, the "two inquiries collapse into a single inquiry:  whether jurisdiction comports with due process." *Inamed*, 249 F.3d at 1360.

The Federal Circuit has adopted a three-factor test to determine if jurisdiction over an out-of-state defendant comports with due process: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (citing *Inamed*, 249 F.3d at 1360).  "The first two factors correspond with the minimum contacts prong of the *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) analysis, and the third factor corresponds with the fair play and substantial justice prong of the analysis." *Xilinx*, 848 F.3d at 1352 (quoting *Inamed*, 249 F.3d at 1360).

In the declaratory judgment context, warning letters satisfy the requirement of minimum contacts, but "such letters cannot satisfy the fairness prong of the Due Process inquiry." *Id.* at 1357 (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)).  Even so, the Federal Circuit has cautioned that its decisions should not be read to create a "general rule that demand letters can never create specific personal jurisdiction." *Trimble*, 997 F.3d at 1156.

Swarm's main objection to minimum contacts is that the full scope of its licensing conduct in California should be ignored because only actions enforcing or defending a patent can give rise to specific jurisdiction.  Dkt. No. 47 at 4-5 (citing *Adobe Sys. Inc. v. Tejas Research, LLC*, No. 14-cv-868-EMC, 2014 WL 4651654, at *3 (N.D. Cal. Sep. 17, 2014)).  This goes too far.  The Supreme Court and the Federal Circuit have been clear that a party's broader contacts with a forum are relevant to personal jurisdiction inquiries, without limitation to patent enforcement conduct.  *See Ford Motor Co. v. Montana Eight Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) ("[O]ur most common formulation of the rule demands that the suit 'arise out of *or relate to* the

defendant's contacts with the forum.'") (emphasis in original); *Trimble*, 997 F.3d at 1156 ("[T]he Supreme Court's recent decision in *Ford* has established that a broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis."). A party's overall contacts with a forum can demonstrate that "there is a strong relationship among the defendant, the forum, and the litigation -- the essential foundation of specific jurisdiction." *Trimble*, 997 F.3d at 1156 (quotations omitted). In some circumstances, nonexclusive patent licensing activity in a forum can establish personal jurisdiction. *Id*.

The record demonstrates that Swarm had sufficient contacts in California to warrant a finding of jurisdiction. In keeping with its tunnel vision view of jurisdiction, Swarm says that its communications with Juniper were licensing discussions that cannot rise to the level of enforcement actions giving rise to personal jurisdiction in California. Dkt. No. 39 at 11. But "a specific threat of infringement litigation by the patentee is not required to establish jurisdiction and a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as litigation or infringement." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (quotations omitted) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). Swarm's July 2019 letter was careful to say that it "should not be construed as an accusation of infringement," and that it was simply "demonstrat[ing] the correlation between claim 1 of the '004 patent and [Juniper's] Zero-Touch Provisioning," Dkt. No. 18-4 at ECF 3, but the claim chart it included in the letter sent a much more contentious message. This message was amplified in Swarm's subsequent communications to the effect that Juniper required a license to continue to operate. *Id*. at ECF 3, 29. Swarm also told Juniper that it "failed to express any position that would prevail in a Markman hearing." *Id*. at ECF 27. This conduct evidences an intent to fight, not just talk, as Swarm would have it. *See, e.g.*, *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1380 (Fed. Cir. 2012) (declaratory judgment defendant's indication that it had analyzed the plaintiff's product and would send claim charts "signaled its intent to escalate the dispute"); *Hewlett-Packard*, 587 F.3d at 1361 (identification of specific claims and claim charts, or lack thereof, were factors in determining whether the district court had jurisdiction over the dispute).

United States District Court
Northern District of California

1    In addition to sending these and other communications to Juniper in California, Swarm

2  was active in California in other ways.  Swarm attended trade shows in 2017 and 2018 in Santa

3  Clara, California, where its founder and CEO, Alfonso Iniguez sought to license Swarm's patents.

4  Dkt. No. 39-2 at ¶ 4.  Swarm sent to several other California companies letters similar to those it

5  sent to Juniper.  Dkt. No. 45-12.  Swarm exchanged communications with at least three other

6  California companies about whether their product was covered by the Swarm patents and whether

7  a license was necessary.  Dkt. No. 45-13.  Swarm also entered a non-disclosure agreement with a

8  California company that stipulated to disputes being adjudicated by courts located in California.

9  *See e.g.*, Dkt. No. 45-20 at ECF 4.

10    Swarm tries to downplay the scope of these contacts by saying that its licensing efforts

11  were not particularly successful in California, *see* Dkt. No. 47 at 5, but the point is of no moment

12  for jurisdictional purposes.  What matters are Swarm's substantial efforts in California to get

13  companies to take a license.  "An entity that repeatedly sends communications into a forum state

14  clearly has fair warning that its activity may subject it to the jurisdiction of a foreign sovereign."

15  *Trimble*, 997 F.3d at 1155 (cleaned up) (quoting *Quill corp. v. North Dakota*, 504 U.S. 298, 308

16  (1992)).  Swarm's overall contacts with California, in combination with its communications with

17  Juniper and Apstra, establish minimum contacts with California sufficient for personal jurisdiction

18  in this Court.

19    Swarm's suggestion that its contacts with California do not satisfy the "fair and

20  reasonable" prong of due process, Dkt. No. 47 at 5-6, does not lead to a different conclusion.  In

21  determining the reasonableness of exercising personal jurisdiction, the Federal Circuit applies the

22  factors from *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) and *World-Wide Volkswagen*

23  *Corp. v. Woodson*, 444 U.S. 286 (1980), namely:  (1) "the burden on the defendant"; (2) "the

24  forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining

25  convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most

26  efficient resolution of controversies"; and (5) "the shared interest of several states in furthering

27  fundamental substantive social policies."  *Trimble*, 997 F.3d at 1157-59.  Swarm does not address

28  these factors, and simply repeats the same myopic argument that Swarm did not initiate

5

1    enforcement actions in this forum.  Dkt. No. 47 at 6-7.  The point is no more persuasive here than

2    it was earlier.

3        That Swarm may be a small company based in Arizona also does not weigh against

4    personal jurisdiction.  In this time of remote access court hearings and electronic discovery, it is

5    hardly an undue burden on Swarm to litigate a case in this District.  *See Breckenridge Pharm., Inc.*

6    *v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006).  Moreover, as California

7    residents, Juniper and Apstra have a substantial interest in litigating this dispute in California, and

8    California has a correspondingly substantial interest in its adjudication.  *Trimble*, 997 F.3d at

9    1158-59.  There is also no "conflict between the interests of California and any other state,

10   because the same body of federal patent law would govern the patent noninfringement claim"

11   regardless of the forum.  *Id.* at 1159 (citing *Xilinx*, 848 F.3d at 1356).  Consequently, Swarm has

12   not made "a compelling case that the presence of some other considerations would render

13   jurisdiction unreasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 477).

14   **II.    VENUE**

15       Swarm's suggestion in the alternative that venue is improper in this District is not well

16   taken.  Venue is appropriate in "a judicial district where any defendant resides," and for purposes

17   of venue, a defendant is resident in "any judicial district in which such defendant is subject to the

18   court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391.

19   Because the Court finds that it can exercise personal jurisdiction over Swarm, venue is also proper

20   in the Northern District of California.

21                               **CONCLUSION**

22       Swarm's motion to dismiss for lack of personal jurisdiction and improper venue is denied.

23       **IT IS SO ORDERED.**

24   Dated:  December 21, 2021

25

26   _____

27   JAMES DONATO
     United States District Judge

28

United States District Court
Northern District of California