Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

Counsel for Plaintiffs
Juniper Networks, Inc. and
Apstra Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUNIPER NETWORKS INC., and APSTRA INC., <br><br>               Plaintiffs, <br><br>     v. <br><br> SWARM TECHNOLOGY LLC, <br><br>               Defendant. | Case No. 3:20-cv-3137-JD <br><br> **PLAINTIFFS' MOTION TO DISMISS SWARM'S COUNTERCLAIMS OR STAY THIS ACTION** <br><br> Date:      April 7, 2022 <br> Time:     10:00 a.m. <br> Location:  Courtroom 11, 19th Floor <br> Judge:    Hon. James Donato |

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 2

        A.      The District of Arizona Finds the '004 and '275 Patents Invalid. .......................... 2

        B.      All Patents-in-Suit, and the Same Claims, Allegations, and § 101 Issues, Are
                Now Pending Before the District of Arizona. .......................................................... 3

        C.      Swarm's Patents-in-Suit. .......................................................................................... 4

III.    LEGAL STANDARDS ........................................................................................ 8

        A.      Rule 12 ...................................................................................................................... 8

        B.      The *Alice* Test ....................................................................................................... 9

IV.     ARGUMENT ........................................................................................................ 9

        A.      *Alice* Step One: Swarm's Claims Are Directed to an Abstract Idea. ................... 9

        B.      *Alice* Step Two: No Inventive Concept Saves Swarm's Patent Claims. .............. 11

        C.      In the Alternative, this Court Should Stay this Action Pending Final Judgment
                or Resolution of the § 101 Issues in the *Amazon* Case. ........................................ 14

V.      CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................................. 8

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................................. 1

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................................. 1, 2, 9, 11

*Aliphcom v. Fitbit, Inc.*,
   154 F. Supp. 3d 933 (N.D. Cal. 2015) ...................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 8

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
   723 F. App'x 989 (Fed. Cir. 2018) ......................................................................... 10

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 8

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................................... 1, 9

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021) ......................................................................... 13

*Cisco Systems, Inc. v. Uniloc 2017 LLC*,
   813 F. App'x 495 (Fed. Cir. 2020) ......................................................................... 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................................. 7, 9

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) ................................................................................... 14

*Data Scape Ltd. v. W. Digital Corp.*,
   816 F. App'x 461 (Fed. Cir. 2020) ......................................................................... 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ................................................................................. 9

*Ely Holdings Ltd. v. O'Keeffe's, Inc.*,
   No. 18-cv-6721-JCS, 2019 WL 4071028 (N.D. Cal. Mar. 5, 2019) ........................ 8

*Hilsinger Co. v. Eyeego, LLC*,
   No. 13-cv-10594, 2016 WL 5388944 (D. Mass. Sept. 26, 2016) ............................ 15

*Hilson v. Lopez,*
  No. 12-cv-6016-JD, 2014 WL 4380674 (N.D. Cal. Sept. 4, 2014) ...................................... 14

*Intell. Ventures I LLC v. Cap. One Bank (USA),*
  792 F.3d 1363 (Fed. Cir. 2015) ...................................................................................... 10, 11

*Intell. Ventures I LLC v. Symantec Corp.,*
  838 F.3d 1307 (Fed. Cir. 2016) .............................................................................................. 11

*Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC,*
  No. 2:18-cv-7661, 2019 WL 3064112 (C.D. Cal. May 23, 2019)........................................ 15

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936)................................................................................................................ 14

*Leyva v. Certified Grocers of Cal., Ltd.,*
  593 F.2d 857 (9th Cir. 1979) ................................................................................................. 14

*Maxon, LLC v. Funai Corp., Inc.,*
  726 F. App'x 797 (Fed. Cir. 2018) ........................................................................................ 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012).................................................................................................................... 9

*Open Text S.A. v. Box, Inc.,*
  78 F. Supp. 3d 1043 (N.D. Cal. 2015) ..................................................................................... 1

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,*
  412 F.3d 1284 (Fed. Cir. 2005) ............................................................................................. 15

*RecogniCorp, LLC v. Nintendo Co.,*
  855 F.3d 1322 (Fed. Cir. 2017) ................................................................................... 8, 10, 11

*SAP Am., Inc. v. Investpic, LLC,*
  898 F.3d 1161 (Fed. Cir. 2018) ............................................................................................... 8

*Simio, LLC v. FlexSim Software Prod., Inc.,*
  983 F.3d 1353 (Fed. Cir. 2020) ............................................................................................... 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
  874 F.3d 1329 (Fed. Cir. 2017) .......................................................................................... 9, 11

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ................................................................................................. 8

*Uniloc USA, Inc. v. Amazon.com, Inc.,*
  243 F. Supp. 3d 797 (E.D. Tex. 2017).................................................................................... 9

*Whitaker v. Tesla Motors, Inc.,*
  985 F.3d 1173 (9th Cir. 2021) ................................................................................................. 8

*Yan Sui v. Wells Fargo Bank, N.A.,*
  No. 8:16-cv-223, 2017 WL 5624297 (C.D. Cal. Oct. 5, 2017) ............................................. 14

I.    **INTRODUCTION**

Allowing parties to monopolize abstract ideas and other fundamental building blocks through a patent grant would impede innovation, rather than promote it. Thus, the Supreme Court's two-step *Alice Corp. v. CLS Bank* test distinguishes between patents that claim eligible subject matter, and invalid patents that claim "the building blocks of human ingenuity."[1] Swarm's patent claims here are exactly the type that the Supreme Court sought to protect the public from in *Alice*, and thus should be found invalid.

Swarm's patents all are directed to the abstract idea of retrieving and completing tasks from a task pool—a fundamental organizational concept. They claim that concept as a series of basic steps that humans can, and do, perform. For instance, a project manager can "populate" a "task pool" (e.g., by putting sticky notes on a scrum board), and individual team members can "proactively" retrieve and complete those tasks, as identified in claim 1 of each patent-in-suit. And the claims add nothing inventive to the abstract idea Swarm would take from the public domain; rather, the patents announce that they can be implemented with generic computer components.[2] This Court and others have protected the public time and again from patent claims similarly directed to fundamental organizational concepts, generically implemented with computers.[3]

And the District of Arizona has already protected the public from two of the three patents Swarm asserts here. In *Swarm Technology LLC v. Amazon.com, Inc.*, that court found that all claims of Swarm's '004 and '275 patents were directed to ineligible subject matter and thus invalid.[4] Plaintiffs ask this Court to reach the same result by dismissing Swarm's counterclaims under

---

[1] 573 U.S. 208, 216 (2014).

[2] *E.g.*, '004 patent (Dkt. No. 64-1) at 5:19–23 (The system "may be implemented on a personal computer, smart phone, tablet, or Internet-of-Things device, in which case the CPU 11 may be any personal computer, central processor, or processor cluster, such as an Intel® Pentium®.").

[3] *E.g.*, *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1047 (N.D. Cal. 2015) (Donato, J.) ("A system for groups of people to collaborate and share information without specialized software or expertise is clearly a 'method of organizing human activity,' and thus an unpatentable abstract idea."); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (finding "fundamental economic practice … taught in any introductory finance class" ineligible); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (finding system for distributing and completing tasks using "task engine" ineligible).

[4] *See* D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64. Plaintiffs filed a Notice attaching this decision. *See* Dkt. No. 54. Citations to Dkt. No. #, without more, are to items in the case at bar.

Rule 12(b)(6), and thus return Swarm's claimed abstract idea to its rightful owner: the public.

Absent such dismissal, the Court should at least stay this action pending resolution of Swarm's request for leave to amend its complaint in *Amazon* to assert its related '777 patent (the third patent Swarm is asserting here). If the District of Arizona denies that currently pending request and enters final judgment, collateral estoppel would bar Swarm's counterclaims here. And as such, a stay would conserve resources and promote judicial efficiency.

## II.    FACTUAL BACKGROUND

Juniper commenced this action on May 7, 2020, seeking declaratory judgment of non-infringement of Swarm's '777, '004, and '275 patents.[5] Swarm moved to dismiss, arguing lack of personal jurisdiction. And on December 21, 2021, this Court denied Swarm's motion.[6] Two weeks later, Swarm answered, asserting counterclaims alleging that Juniper and its subsidiary, Apstra (collectively, Plaintiffs), infringe Swarm's U.S. Patent Nos. 9,852,004 ('004 patent); 10,592,275 ('275 patent); and 9,146,777 ('777 patent).[7] Juniper has filed IPR petitions challenging the patents (one of which was denied), but § 101 can't be raised in IPRs.[8]

### A.    THE DISTRICT OF ARIZONA FINDS THE '004 AND '275 PATENTS INVALID.

Ten months ago, Swarm also sued another defendant, Amazon, alleging infringement of the same '004 and '275 patents that Swarm is asserting here. Amazon moved to dismiss under Rule 12(b)(6), arguing that the patents' claims are ineligible under § 101.[9] And on September 20, 2021, the District of Arizona granted that motion.[10]

In doing so, the court applied the two-step *Alice* test. The first *Alice* step asks whether patent claims are directed to an abstract idea, and if so, the second step considers whether they nonetheless include an "inventive concept" rendering them eligible.[11] At step one, the court

---

[5] Dkt. No. 1 at ¶¶ 31–57; *see also* Dkt. No. 38 (amended complaint, also seeking this relief).

[6] Dkt. Nos. 39 & 59; *see also* Dkt. No. 18 (Swarm's earlier, mooted motion to dismiss).

[7] Dkt. No. 64 at ¶¶ 73–337.

[8] *See* Dkt. Nos. 55 & 74; 35 U.S.C. § 311 (IPRs may only raise §§ 102 and 103.).

[9] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 29.

[10] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 (Dkt. 54-1 in case at bar).

[11] *Alice*, 573 U.S. at 217.

found that Swarm's patents "are directed towards the abstract idea of a scrum board," a well-known management technique.[12] The court further explained:

> A scrum board works by first having a project manager list tasks on sticky notes and post them on one side of a board. As the team members collect and perform each task, they individually move the notes from the "incomplete" side of the board to the other side, the "complete" side of the board.[13]

And at *Alice* step two, the court found that Swarm's patents didn't disclose anything sufficient to confer eligibility, as they "describe a computerized scrum board, and simply applying an abstract idea to computers, standing alone, cannot be an innovative concept."[14]

Although Swarm's opposition to Amazon's § 101 motion requested an opportunity to amend, the court stated that it "doubts that Swarm could point to a specific inventive concept."[15] But, quoting Rule 15(a)(2)'s directive to "freely give leave when justice so requires," the court gave Swarm a chance to do so: "If Swarm believes it may amend its pleadings to state a viable claim, then it may file a motion for leave to file a first amended complaint to explain how it could address the deficiencies identified in this Order."[16]

### B. ALL PATENTS-IN-SUIT, AND THE SAME CLAIMS, ALLEGATIONS, AND § 101 ISSUES, ARE NOW PENDING BEFORE THE DISTRICT OF ARIZONA.

On October 20, 2021, Swarm moved for leave to file an amended complaint in *Amazon* asserting the '777 patent, in addition to Swarm's other two patents.[17] But a conflict issue arose, temporarily delaying the ruling on that motion. Specifically, the *Amazon* court notified the parties on December 9, 2021 "of the potential appearance of a conflict," arising from Swarm attaching a declaration from the former Dean of the Sandra Day O'Connor College of Law.[18] The next

---

[12] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 5:18.

[13] *Id*. at 4:28–5:3.

[14] *Id*. at 7:18–19.

[15] *Id*. at 8:22.

[16] *Id*. at 9:21–23.

[17] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 66.

[18] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 71 ("[T]this Court is a graduate of that law school, has served as a Professor [there], … and has a professional and personal relationship with Dr. Sylvester. The parties shall also TAKE NOTICE that the law school is housed in the Beus Center for Law and Society, which is named after Plaintiff's counsel, Leo Beus.").

day, Swarm moved to reassign the case, and the court granted that request.[19] On January 12, the newly assigned U.S. District Judge (Lanza, J.) issued an order indicating that the court currently is considering and "will rule on [Swarm's] pending motion for leave to amend in due course."[20]

Notably, the factual allegations and counterclaims that Swarm asserted here against Plaintiffs mirror the proposed amended complaint that Swarm attached to its earlier-filed motion for leave in *Amazon*. In particular, paragraphs 141–269 of Swarm's counterclaims—which pur-port to describe Swarm's patents, and repeatedly argue that their claims aren't directed to ab-stract ideas[21]—are substantially verbatim copies of paragraphs 124–253 in Swarm's *Amazon* pro-posed amended complaint.[22] That proposed amended complaint also expressly asserts each pa-tent claim that Swarm's counterclaims assert here against Plaintiffs.[23] So the same § 101 issues that are present here, involving the same patents, same asserted claims, and same allegations (of those relating to Swarm patents, not defendants or accused products) are currently pending be-fore the District of Arizona, in connection with Swarm's motion for leave.

## C.   SWARM'S PATENTS-IN-SUIT

All three Swarm patents are related.[24] The more recent '004 and '275 patents (issued in 2017 and 2020, respectively) share the same specification. And both stem from the '777 patent (issued in 2015), which has a similar specification. The main differences are additions to the

---

[19] D. Ariz. Case No. 2:21-cv-438, Dkt. Nos. 73 & 76. The next two assigned judges then also recused themselves. *See* D. Ariz. Case No. 2:21-cv-438, Dkt. Nos. 77 & 78.

[20] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 83 (1-12-22 Text Order).

[21] *E.g.*, Dkt. No. 64 at ¶ 145 ("Even assuming, *arguendo*, that Claim 1 may be directed to an ab-stract idea involving organizing human activities such as a scrum board," it "nonetheless in-cludes inventive concepts that amount to significantly more …."); *id*. at ¶¶ 150, 154, 158, 163, 179, 184, 188, 192, 197, 201, 205, 221, 226, 230, 234, 239, 243, 247, 251, & 255 (similar).

[22] *Compare id*. at ¶¶ 141–269 *with* D. Ariz. Case No. 2:21-cv-438, Dkt. No. 66-1 at ¶¶ 124–253. The 128 above-cited paragraphs in the counterclaims omit a one-sentence paragraph from the proposed amended complaint (i.e., ¶ 150), but otherwise seem identical.

[23] *Compare* Dkt. No. 64 at ¶¶ 315, 323, & 331 (alleging Plaintiffs infringe '004 claims 1–3 & 7–12; '275 claims 1–4, 6–7, & 9–17; and '777 claims 1–10 & 12–14) *with* D. Ariz. Case No. 2:21-cv-438, Dkt. No. 66-1 at ¶¶ 284, 292, & 300 (alleging Amazon infringes '004 claims 1–12, '275 claims 1–17, and '777 claims 1–14). Thus, the counterclaims omit six claims asserted in *Amazon*, though Swarm still included background allegations on them here. *See*, *e.g.*, Dkt. No. 64 at ¶ 268.

[24] More specifically, the '275 patent is a continuation of the applications that issued as the '777 and '004 patents, while the '004 patent is a continuation of the application that issued as the '777 patent. '275 patent (Dkt. No. 64-2) at 1:8–13; '004 patent (Dkt. No. 64-1) at 1:8–10.

'004/'275 specification, which the shorter '777 specification didn't include. For instance, the '777 patent has only two annotated figures. The first two figures in the '275 and '004 patents are identical, but those patents also include four additional figures and related descriptions.[25]

All three patents describe a system with "autonomous co-processors" that "proactively" seek or retrieve "tasks" from a "task pool populated by a central processing unit" or "CPU."[26] And the specifications explain that parallel processing using multiple co-processors is nothing new. For instance, the '004 patent states that "[a] typical multiprocessor system includes a central processing unit ('CPU')" that "distributes the tasks to co-processors."[27] The only purported improvement is that patents collect the necessary tasks in a "task pool," for coprocessors to then autonomously retrieve and complete. The specifications describe this at a high level of generality, using basic steps: (1) a controller or CPR "populate[s]" the task pool, (2) co-processors "proactively" or autonomously retrieve and complete tasks from the pool, and (3) the co-processors indicate completion of the tasks (as shown in Figure 6 of the '004 patent, below).[28]



FIG. 6

---

[25] The specifications also include similar passages describing these figures. *Compare* '777 patent at 2:29 –7:38 *with*, *e.g.*, '275 patent at 4:41–11:6. In addition to including four new figures, the '275 and '004 patents also add many references to the "Internet of Things" or "IoT" devices.

[26] *E.g.*, '004 patent at 1:16–18; '777 patent at 1:11–13, 2:3–4.

[27] '004 patent at 1:56–59; *see also* '777 patent at 1:31–36 (similar).

[28] *See also*, *e.g.*, '004 patent at 2:11–23, 12:25–15:56.

The specifications repeatedly state that the purported inventions don't require any specific or improved computer technology. For instance, the '004/'275 specification states that the system "may be implemented on a personal computer, smart phone, tablet, or Internet-of-Things device," and that the claimed CPU "may be any personal computer, central processor, or processor cluster."[29] Similarly, the '777 specification states:

> The CPU 11 may be any CPU conventionally used to satisfy the computing needs of the environment in which the system 10 is implemented. That is, the system 10 may be implemented on a personal computer, in which case the CPU 11 may be any personal computer central processor or processor cluster, such as an Intel® Pentium® or multi-core processor.[30]

And the specifications further make clear that the purported inventions use generic, off-the-shelf components by stating, for instance, that "the system may be implemented retroactively on any computer or computer network" that is "configured to implement the functionality."[31]

Further, the patents don't require any particular or novel implementation. The '004/'275 specification states that the purported invention doesn't require any "particular manner" for "performing the … processing."[32] The "task pool" can be any object or software that stores tasks.[33] And patents don't further specify what constitutes the "tasks." Rather, they require no particular programming, and can be described at a high "level of abstraction."[34]

The patents' claims are no more specific. There are seven independent claims, reciting generic and functional steps for autonomous co-processors to retrieve and complete tasks from a task pool.[35] In *Amazon*, the court treated claim 1 of the '004 patent (below) as exemplary.[36] There, the defendants argued that this claim "exemplifies the other claims in both" the '004 and

---

[29] '004 patent at 5:17–23; '275 patent at 5:32–37.

[30] '777 patent at 2:66–3:3.

[31] *E.g.*, '004 patent at 5:45–49; *see also id.* at 2:47–50, 5:63–67 (stating that co-processors or "cells" that perform tasks may be any "general purpose … processor"); *id.* at 4:24–25 (stating that system may use "any presently known or later-developed computer architecture").

[32] *E.g.*, *id.* at 5:37–39.

[33] *E.g.*, *id.* at 6:56–57; *see also id.* at 3:14–15 (stating that the "agent" recited in some claims may be any "software module" or "network packet" that co-processors use to access the pool).

[34] *E.g.*, *id.* at at 3:36–38.

[35] '004 patent, claims 1 and 3; '275 patent, claims 1, 6, and 11; '777 patent, claims 1 and 14.

[36] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 6:4–10.

'275 patents, which "Swarm [did] not dispute."[37] The court, "upon its own review," also found

"that all of the Patents' claims are 'substantially similar and linked to the same abstract idea.'"[38]

> 1. A processing system, comprising:
>
> a task pool;
>
> a controller configured to populate the task pool with a plurality of first tasks and a plurality of second tasks;
>
> a first co-processor configured to successively: retrieve a first task from the task pool; deliver the first task to the first coprocessor; process the first task; generate first resulting data; and update the task pool to reflect completion of the first task, all without any communication between the first co-processor and the controller; and
>
> a second co-processor configured to successively: retrieve a second task from the task pool; deliver the second task to the second co-processor; process the second task; generate second resulting data; and update the task pool to reflect completion of the second task, all without any communication between the second co-processor and the controller;
>
> wherein the processing system is configured to dynamically accept the first co-processor, the second co-processor, and an additional coprocessor into the processing system on a plug-and-play basis without any communication with the controller.[39]

The other claims sometimes use different terms to refer to the same cast of characters. For instance, claim 1 of the '777 patent uses "CPU" (rather than controller) and "solidarity cell" (rather than co-processor). But these changes in terminology don't carry with them any significant limitations. Indeed, "solidarity cell" is a Swarm-coined term, defined in the '777 patent as an "autonomous computer processing unit[]."[40]

And the limitations in the other independent or dependent claims all boil down to the same abstract idea, implemented with conventional and generic components, as exemplary claim 1 of the '004 patent. Claim 1 of the '275 patent, for example, is substantially the same, except

---

[37] *Id*. at 6:4–6.

[38] *Id*. at 6:6–8 (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). Although the *Amazon* court considered the '004 and '275 patents, nothing in the '777 patent requires a different conclusion.

[39] '004 patent, claim 1.

[40] '777 patent at 1:59–61; *see also id*. at 1:62–66 (further explaining that "[a] solidarity cell may be a general- or special-purpose processor, and therefore may have the same or different instruction set architecture and microarchitecture compared to the CPU and other solidarity cells")

that it gives the system a label ("collaborative intelligence system") and requires the co-proces-

sors to "work together" to complete a "common objective."[41] As further detailed below, that

doesn't add anything innovative to a scrum board and the ineligible abstract idea that Swarm has

sought to monopolize, at the expense of the plaintiffs and the public.

## III.   LEGAL STANDARDS

### A.   RULE 12

The Supreme Court has held that, to survive a motion to dismiss under Rule 12(b)(6), a

pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"[42] In applying this standard, courts accept well-pleaded factual allegations,

but disregard legal conclusions.[43]

Additionally, the Federal Circuit has explained that subject-matter eligibility under 35

U.S.C. § 101 is a threshold "question of law, based on underlying facts" that courts may and

"frequently" do resolve on Rule 12(b)(6) motions.[44] As that court recently reiterated in *Simio,*

*LLC v. FlexSim Software Products, Inc.*, "[a] patent may be determined ineligible at the Rule

12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eli-

gibility question as a matter of law.'"[45]

---

[41] '275 patent, claim 1 at 14:24, 14:45–49; *see also* '004 patent, claims 2–12; '275 patent, claims 2–17; '777 patent, claims 1–14 (including other limitations inherent in same abstract idea or related to conventional components).

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-6721-JCS, 2019 WL 4071028, at *1 (N.D. Cal. Mar. 5, 2019) (Supreme Court and Ninth Circuit precedent requires applying *Iqbal* to civil actions generally, including patent-related counterclaims.).

[43] *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

[44] *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing examples). The Federal Circuit reviews dismissals for failure to state a claim under the law of the regional circuit. *See*, *e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (applying Ninth Circuit law and affirming Rule 12(b)(6) dismissal based on § 101); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) (same, for Rule 12(c)).

[45] 983 F.3d 1353, 1359 (Fed. Cir. 2020) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018)).

**B.    THE *ALICE* TEST**

First, under *Alice*'s two-step test, courts determine whether the patent's claims are directed to a patent-ineligible concept.[46] Mental processes, fundamental truths, and scientific principles all are patent-ineligible abstract ideas.[47] As the Federal Circuit recently explained, courts at this step should look to whether the claims "focus on a specific means or method," or whether they're "instead directed to a result or effect" and "merely invoke[] generic processes and machinery."[48] If the latter, the claims are directed to an abstract idea.[49]

At step two, courts consider whether "transform the nature of the claim' into a patent-eligible application."[50] The Supreme Court has called this the "search for an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."[51] And "[g]iven the ubiquity of computers," generic computer implementation doesn't qualify.[52]

**IV.    ARGUMENT**

**A.    *ALICE* STEP ONE: SWARM'S CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA.**

As the Federal Circuit has explained, "fundamental economic and conventional business practices" are ineligible abstract ideas.[53] Examples from Supreme Court § 101 jurisprudence include hedging to mitigate risk, or using a third party to mediate settlement.[54] The Federal Circuit has further explained that ideas like these don't "become nonabstract by limiting the invention to

---

[46] *Alice*, 573 U.S. at 218.

[47] *See id.*; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

[48] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

[49] *See id.*; *see also Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797, 803–04 (E.D. Tex. 2017) ("Claims may also be directed to abstract ideas if they do not claim a particular way of programming or designing the software to accomplish the claimed functionality.") (internal marks omitted), *aff'd*, 733 F. App'x 1026 (Fed. Cir. 2018).

[50] *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79).

[51] *Id.* at 217–18 (internal marks omitted).

[52] *Id.* at 223–26; *see also Content Extraction*, 776 F.3d at 1347–48 (For the "role of a computer in a computer-implemented invention to be deemed meaningful …, it must involve more than performance of 'well-understood, routine, [and] conventional activities.'").

[53] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014); *see also* D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 4.

[54] *See Bilski*, 561 U.S. at 611; *Alice*, 573 U.S. at 220.

a particular field of use or technological environment," such as a computer.[55] Indeed, that court

stated in *RecogniCorp, LLC v. Nintendo Co.* that claims simply consisting of "'generalized steps

to be performed on a computer using conventional computer activity' are abstract."[56] And that

court has repeatedly affirmed Rule 12 dismissals where patent claims recite apparently generic

computer-related elements, but the specification and pleadings fails to plausibly suggest that

those components weren't well-understood, routine, or conventional.[57]

       Here, all the asserted claims are directed to the abstract idea of team members retrieving

and completing tasks from a task pool—a basic human organizational concept exemplified by

the scrum board often used as a management tool in software development. For instance, inde-

pendent claim 1 of the '004 patent, which the *Amazon* court found was exemplary of every claim

in both the '004 and '275 patents,[58] recites a generic computer system in which (1) a controller

populates a task pool, (2) individual processors retrieve and complete tasks from the task pool,

and (3) processors can be added or removed.[59] But it doesn't explain how any of these steps are

accomplished. Nor does any other claim in the '004, '275, and '777 patents

       To be sure, Swarm argued in its *Amazon* case that its patent claims "involve a revolution-

ary new chip architecture which improves the operation of the computers and computer networks

themselves."[60] And the District of Arizona acknowledged that software claims may not be ab-

stract when they're "'directed to a specific implementation of a solution to a problem in the soft-

ware arts,' such as an improvement in the functioning of a computer."[61] But here, as that court

found, Swarm's patent claims aren't aimed at any such specific implementation; rather, they all

---

[55] *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

[56] 855 F.3d 1322, 1326 (Fed. Cir. 2017) (internal quotation omitted).

[57] *See, e.g.*, *SAP Am.*, 898 F.3d at 1170; *Content Extraction*, 776 F.3d at 1348; *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018); *Maxon, LLC v. Funai Corp., Inc.*, 726 F. App'x 797, 800 (Fed. Cir. 2018).

[58] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 6:6–8 (finding "all of the Patents' claims are 'substantially similar and linked to the same abstract idea'") (quoting *Content Extraction*, *supra*).

[59] *See* '004 patent, claim 1.

[60] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 5:11–12 (quoting Swarm); *see also id.* at 7:11–20 (addressing similar argument that patents ushered in a "new parallel processing paradigm").

[61] *Id.* at 4:20–25 (quoting *RecogniCorp*, 855 F.3d at 1326).

consist of "generalized steps to be performed on a computer using conventional computer activ-ity," and thus are directed to an ineligible abstract idea.[62]

Swarm also argued in *Amazon* that its system "is more than a scrum board" because it's a "multiprocessor system with the speed of parallel processing."[63] But as the Arizona court found, limiting a scrum board to the computer environment doesn't make the idea non-abstract.[64] Simi-larly unavailing was Swarm's argument "that humans could not feasibly complete the tasks as quickly as a computerized system could."[65] Indeed, the Federal Circuit held in *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*: "[T]hat the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."[66] Here, too, the relative speed of computers doesn't impact the analysis. And Swarm's inability in *Amazon* to point to any claimed advance in its patents, separate from the abstract idea of a scrum board, confirms that all asserted claims fail *Alice* step one.

### B.   *ALICE* STEP TWO: NO INVENTIVE CONCEPT SAVES SWARM'S PATENT CLAIMS.

*Alice* step two asks whether patent claims recite an "inventive concept" that adds "signifi-cantly more" to the abstract idea and transforms it into eligible subject matter.[67] In *Two-Way Me-dia Ltd. v. Comcast Cable Communications, LLC*, the Federal Circuit explained that such an in-ventive concept "must be evident in the claims."[68] And claim elements reciting generic computer components don't suffice. As further explained in that case, "[m]erely reciting the use of a ge-neric computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."[69]

Here, as the District of Arizona found, "it is clear from the specification" of the '004

---

[62] *Id.* at 5:18–23 (quoting *RecogniCorp*, 855 F.3d at 1326).

[63] *Id.* at 5:8–10 (quoting D. Ariz. Case No. 2:21-cv-438, Dkt. No. 36 at 7).

[64] *Id.* at 5:23–25 (citing *Intell. Ventures*, 792 F.3d at 1366).

[65] *Id.* at 5:16–17 (quoting oral argument).

[66] 687 F.3d 1266, 1278 (Fed. Cir. 2012); *see also Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) (finding email screening system abstract, comparing to post office).

[67] *Alice*, 573 U.S. at 217–18.

[68] 874 F.3d 1329, 1338 (Fed. Cir. 2017).

[69] *Id.* (quoting *Alice*, 573 U.S. at 223).

1   and '275 patents that they require "no improved computer resources …, just already available

2   computers, with their already available basic functions."[70] As detailed above, the claimed system

3   can be implemented using "any personal computer," with any "general purpose," off-the-shelf

4   processor, and "any … computer architecture."[71] The "task pool" can be anything storing tasks,

5   including either software or hardware.[72] And the less-detailed '777 specification is similar in all

6   salient respects to the shared '004 and '275 patent that the Arizona court considered.

7        Moreover, Swarm already argued in *Amazon* "that its Patents contain claim elements that,

8   when combined, 'are not well-understood, routine or conventional,'" quoting the Federal Cir-

9   cuit's decision in *Aatrix Software, Inc. v. Green Shades Software, Inc*.[73] But as the Arizona court

10   explained in its lengthy analysis of that case, Swarm never "identified a specific technological

11   improvement comparable to the data file in *Aatrix*."[74]

12        And Swarm still hasn't done so in the 128 paragraphs of background allegations in its

13   counterclaims here that are virtually identical to corresponding paragraphs in Swarm's proposed

14   amended complaint in *Amazon*. Swarm argues that these paragraphs "specifically allege[]" three

15   inventive concepts: (1) a "controller" that populates the "task pool" with tasks or "threads"; (2)

16   "co-processors" or "solidarity cells" that "retrieve" tasks from the task pool (sometimes via an

17   "agent") that they're are able to perform, and (3) additional co-processors "dynamically" added

18   on a "plug-and-play" basis.[75] But rather than allege any facts that might pass muster under *Iq-*

19   *bal*/*Twombley*, Swarm continued to rely on conclusory allegations that these features are "in-

20   ventive," or "'more than well-understood, routine, and conventional.'"[76] The District of Arizona

21

22

23   [70] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 8:22–25 (quoting *SAP Am.*, 898 F.3d at 1169).

   [71] *E.g.*, '004 patent at 5:17–23; *see also* section II.C., *supra*.

24   [72] *E.g.*, '004 patent at 6:56–7:7; *see also* D. Ariz. Case No. 2:21-cv-438, Dkt. No. 66-3 at 188

25   (Ex. R p.443) (Swarm whitepaper, attached to proposed amended complaint in *Amazon*, stating purported invention may use "off-the-shelf components").

26   [73] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 36 at 16 (quoting 882 F.3d at 1128).

27   [74] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 8:20–21 (emphasis omitted).

   [75] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 66 (Swarm's motion for leave) at 7–11.

28   [76] *Id.* (quoting ¶¶ 137, 142, 168, and 218–19 of proposed amended complaint).

already considered such conclusory allegations in Swarm's original *Amazon* complaint, explaining that they cannot supply "an inventive concept" as a matter of law.[77] And Swarm repeating such allegations many times in its counterclaims here, or after quoting each claim element, doesn't change the Rule 12(b)(6) or § 101 analysis.

Indeed, the Federal Circuit held that precisely such allegations in a proposed amended complaint don't preclude finding claims ineligible on a Rule 12(b)(6) motion in *Simio, LLC v. FlexSim Software Prod., Inc.*[78] There, the district court properly "disregard[ed]" assertions in a proposed amended complaint that "a feature 'improves the functioning and operations of the computer,'" because such conclusory statements merely "repackage[d] assertions of nonabstractness … already rejected as a matter of law."[79] Here, too, "[t]his is … not a case in which [a pleading's] allegations 'prevent resolving the eligibility question as a matter of law.'"[80] And other courts have repeatedly reached similar conclusions, including the Federal Circuit in cases applying Ninth Circuit law. For instance, in *Dropbox, Inc. v. Synchronoss Technologies, Inc.*, the complaint alleged that the patents solved "technological problems [in computer encryption], … improved the art, 'represented a significant advance over existing approaches[,] and were not well-known, routine, or conventional in the field' at the time of patenting."[81] But the Federal Circuit found, such allegations are "no more than a series of legal conclusion[s] about the § 101 analysis," and "insufficient to survive a motion to dismiss."[82] And Swarm's counterclaims here, despite their length and repetition, are insufficient for the same reason.

---

[77] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 64 at 6–9.

[78] 983 F.3d 1353 (Fed. Cir. 2020).

[79] 983 F.3d at 1365 (also affirming "futility-based denial" of leave to amend).

[80] *Id.* (quoting *Aatrix*, 882 F.3d at 1125).

[81] 815 F. App'x 529, 538 (Fed. Cir. 2020).

[82] *Id.*; *see also*, *e.g.*, *Cisco Systems, Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498 (Fed. Cir. 2020) (applying 9th Cir. law and holding that allegations that patents weren't "well-understood, routine or conventional" were "not factual," but instead "sweeping conclusory statements" that didn't preclude § 101 dismissal); *Data Scape Ltd. v. W. Digital Corp.*, 816 F. App'x 461, 464–65 (Fed. Cir. 2020) (similar, applying 9th Cir. law and affirming § 101 dismissal and denial of leave to amend); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) (similar, applying 9th Cir. law and affirming § 101 dismissal of amended complaint).

1

**C.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS ACTION PENDING FINAL JUDGMENT OR RESOLUTION OF THE § 101 ISSUES IN THE *AMAZON* CASE.**

2

3        As the Ninth Circuit explained in *Leyva v. Certified Grocers of California, Ltd.*, "[a] trial

4   court may, with propriety, find it is efficient for its own docket and the fairest course for the par-

5   ties to enter a stay of an action before it, pending resolution of independent proceedings which

6   bear upon the case."[83] Given the status of Swarm's *Amazon* action, a stay of this lawsuit between

     Swarm and Plaintiffs would be efficient and fair to all parties.

7        The District of Arizona has already found two of Swarm's patents-in-suit here ineligible

8   under § 101. Now Swarm is seeking leave to amend to assert the third patent-in-suit in *Amazon*,

9   and each specific patent claim that Swarm is also asserting against Plaintiffs here. The defend-

10  ants in *Amazon* are opposing that request, arguing that the '777 patent is "materially the same" as

11  the '004 and '275 patents, making Swarm's amendment futile.[84] And if the court agrees with the

12  *Amazon* defendants, the resulting judgment will preclude Swarm's counterclaims here.

13       Indeed, the *Amazon* court's September 20, 2021 decision would already collaterally estop

14  Swarm, except that it likely isn't final.[85] It also directly involves only the '004 and '275 patents,

15  though the '777 patent raises identical issues. But if the *Amazon* court denies Swarm's motion

16  for leave, this will remove any doubts on preclusion. As the Central District of California stated

17  in *Yan Sui v. Wells Fargo Bank, N.A.*, "a denial on the merits of a request for leave to amend a

18  complaint, such as a denial based upon a determination that adding the proposed claims would be

19  futile, is a final adjudication of the claims alleged in the proposed amended pleading."[86]

20

21  [83] 593 F.2d 857, 863 (9th Cir. 1979); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)
    (Every court has inherent power "to control the disposition of the causes on its docket with econ-
22  omy of time and effort for itself, for counsel, and for litigants.").

23  [84] D. Ariz. Case No. 2:21-cv-438, Dkt. No. 68 at 5.

24  [85] *See Hilson v. Lopez*, No. 12-cv-6016-JD, 2014 WL 4380674, at *2 (N.D. Cal. Sept. 4, 2014)
    (Collateral estoppel bars relitigation when: (1) the issue is identical to one in a prior proceeding;
    (2) the issue was actually litigated and (3) necessarily decided in that proceeding; (4) the deci-
25  sion is final and on the merits; and (5) the precluded party was a party to the prior proceeding.).

26  [86] No. 8:16-cv-223, 2017 WL 5624297, at *7 (C.D. Cal. Oct. 5, 2017), adopted 2017 WL
    5592660 (Nov. 20, 2017); *accord SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327,
27  1344 (11th Cir. 2014) ("A court's determination that a proposed amendment to a complaint
    would be futile operates as a judgment on the merits of the proposed claim."); *Curtis v. Citibank,*
    *N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[D]enial of leave to amend *on the merits* precludes sub-
28  sequent litigation of the claims in the proposed amended complaint.").

Given the above, the relevant factors all confirm that a stay is warranted. As this Court has stated, it considers "three factors when determining whether to grant a stay pending parallel proceedings: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[87] Here, any possible damage to Swarm is de minimis, as it just asserted its counterclaims a month ago, Plaintiffs haven't yet answered, and the parties haven't yet begun discovery. By contrast, going forward may result in hardship or inequity, as Plaintiffs would need to expend unnecessary and significant resources on discovery and answering Swarm's 265-paragraph counterclaims.[88] And as explained above, a stay is likely to simplify this matter, as denial of Swarm's pending amendment in *Amazon* would result in a final judgment precluding Swarm's counterclaims against the plaintiffs here. By the same token, Juniper and Apstra would prevail on their declaratory-judgment claims, resolving this action entirely.[89] And for all the above reasons, at least a stay is warranted here.

## V.   CONCLUSION

Swarm's patents-in-suit claim subject matter that's ineligible under § 101, as the District of Arizona found. This Court should reach a similar conclusion, and dismiss Swarm's counterclaims under Rule 12(b)(6)—thus returning the concepts claimed in Swarm's patents to their rightful owner: the public. Alternatively, this Court should stay this action pending final judgment or resolution of the § 101 issues in that District of Arizona case, as this would be efficient and fair to all parties here.

---

[87] *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 937 (N.D. Cal. 2015) (internal marks omitted).

[88] *See* Dkt. No. 64 at ¶¶ 73–337.

[89] *See Hilsinger Co. v. Eyeego, LLC*, No. 13-cv-10594, 2016 WL 5388944, at *14 (D. Mass. Sept. 26, 2016) ("Because the asserted claims of the Patents-in-Suit are invalid, [plaintiff] is entitled to summary judgment on its non-infringement claims and on … infringement counterclaims.") (quoting *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1291 (Fed. Cir. 2005) (There "can be no ... infringement of invalid patent claims.")); *see also Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. 2:18-cv-7661, 2019 WL 3064112, at *6 (C.D. Cal. May 23, 2019) (holding dismissal of infringement counterclaims with prejudice and covenant not to sue conferred prevailing-party status on declaratory-judgment plaintiff).

1

Dated: February 11, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ R. William Sigler*
Alan M. Fisch (*pro hac vice*)
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: 202.362.3500
Fax: 202.362.3501

Ken K. Fung (SBN: 283854)
*ken.fung@fischllp.com*
FISCH SIGLER LLP
400 Concar Drive
San Mateo, CA 94402
Tel: 650.362.8207
Fax: 202.362.3501

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022, I caused the foregoing document to be served via the Court's CM/ECF system on all counsel of record per Local Rule CV-5(5).

<u>*/s/ R. William Sigler*</u>
R. William Sigler